**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIO EPELBAUM, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>DYNAGAS LNG PARTNERS LP, DYNAGAS GP, LLC, DYNAGAS HOLDING LTD., TONY LAURITZEN, MICHAEL GREGOS and GEORGE J. PROKOPIOU,<br><br>Defendants. | Civil Action No.: 1:19-cv-04512<br><br>Hon. Alison J. Nathan |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF FIRST NEW YORK GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ... 2

FACTUAL BACKGROUND ... 4

ARGUMENT ... 6

A. The PSLRA Standard for Appointing Lead Plaintiff ... 6

B. The First New York Group Is the "Most Adequate Plaintiff" ... 7

1. The First New York Group Has Satisfied the PSLRA's Procedural Requirements ... 7

2. The First New York Group Possesses the Largest Financial Interest in the Relief Sought by the Class ... 8

3. The First New York Group Satisfies Rule 23's Typicality and Adequacy Requirements ... 9

4. The First New York Group Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Enacted the PSLRA ... 11

C. The Court Should Approve the First New York Group's Choice of Lead Counsel ... 14

D. The Court Should Order Consolidation of All Future Related Securities Class Actions ... 16

CONCLUSION ... 16

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Ascendant Solutions, Inc.*,
No. Civ. A. 3:01-CV-0166, 2002 WL 638571 (N.D. Tex. Apr. 17, 2002)............................ 13

*Comrie v. Enterasys Networks, Inc.*,
837 A.2d 1 (Del. Ch. 2003)................................................................................................ 8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .............................................................................................. 12

*In re Coleman Co. Inc. S'holders Litig.*,
750 A.2d 1202 (Del. Ch. 1999)........................................................................................... 8

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ........................................................................................... 9

*In re Flight Safety Techs., Inc. Sec. Litig.*,
231 F.R.D. 124 (D. Conn. 2005)........................................................................................ 13

*In re Galena Biopharma, Inc. Sec. Litig.*,
No. 3:14-cv-00367-SI, 2016 WL 3457165 (D. Or. June 24, 2016)......................................... 8

*In re Oxford Health Plans, Inc., Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................................... 13

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
No. Civ. A. 00-152 (JEI), 2000 WL 486956 (D.N.J. Apr. 24, 2000) .................................... 13

*Levin v. Res. Capital Corp.*,
No. 15 Civ.7081 (LLS), 2015 WL 7769291 (S.D.N.Y. Nov. 24, 2015) ................................. 7

*Maliarov v. Eros Int'l PLC*,
No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) .................... 7, 9, 10, 11

*Micholle v. Ophthotech Corp.*,
No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)............................ 12, 14

*Seinfeld v. Becherer*,
461 F.3d 365 (3d Cir. 2006)................................................................................................ 8

*Springer v. Code Rebel Corp.*,
No. 16-cv-3492 (AJN), 2017 WL 838197 (S.D.N.Y. Mar. 2, 2017)....................................... 6

**Statutes**

15 U.S.C. § 78j(b) ........................................................................................................... 2

15 U.S.C. § 78t(a) ..... 2

15 U.S.C. § 78u-4(a)(3)(A) ..... 7

15 U.S.C. § 78u-4(a)(3)(B) ..... 1, 6

15 U.S.C. § 78u-4(a)(3)(B)(i) ..... 2

15 U.S.C. § 78u-4(a)(3)(B)(iii) ..... 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ..... 2, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) ..... 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ..... 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ..... 2, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ..... 14

15 U.S.C. § 78u-4(a)(3)(B)(v) ..... 14

15 U.S.C. § 78u-4(a)(l) ..... 6

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995),
*as reprinted in* 1995 U.S.C.C.A.N. 730, 737 ..... 12

**Rules**

17 C.F.R. § 240.10b-5 ..... 2

Fed. R. Civ. P. 23 ..... passim

Fed. R. Civ. P. 23(a) ..... 9

Fed. R. Civ. P. 23(a)(3) ..... 9

Fed. R. Civ. P. 23(a)(4) ..... 10

Plaintiff Mario Epelbaum, FNY Partners Fund LP and Scott Dunlop (collectively, the "First New York Group") respectfully submit this memorandum of law in support of their motion[1] for: (1) appointment as Lead Plaintiff, on behalf of a class consisting of all purchasers of the securities of Defendant Dynagas LNG Partners LP ("Dynagas" or the "Company") during the period February 16, 2018 through March 21, 2019, both dates inclusive (the "Class" and "Class Period"), pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approval of the First New York Group's selection of Entwistle & Cappucci LLP ("Entwistle & Cappucci") as Lead Counsel for the putative Class; and (3) consolidation of any subsequently filed, removed or transferred related actions.

In support of its Motion, the First New York Group has filed contemporaneously herewith the Declaration of Andrew J. Entwistle[2] (the "Entwistle Decl.") and the Joint Declaration of the First New York Group[3] ("Joint Decl."). The First New York Group also bases its Motion on the Complaint filed May 16, 2019 (ECF No. 1) and other filings and records in the above-captioned action (the "Action") and such other written and oral argument as may be presented to the Court.

---

[1] Motion Of First New York Group For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel. (the "Motion").

[2] Declaration Of Andrew J. Entwistle In Support Of Motion Of First New York Group For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel.

[3] Joint Declaration Of Plaintiff Mario Epelbaum, FNY Partners Fund LP And Scott Dunlop In Support Of Motion Of First New York Group For Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel.

**PRELIMINARY STATEMENT**

This Action arises out of Class Period misstatements and omissions made by Dynagas and two of its senior executives[4] regarding: (1) the terms of two key long-term contracts; (2) the revenue derived from those contracts; and (3) the Company's ability to continue to make substantial distributions to shareholders based on its then-current cash flow profile. The Action asserts claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Plaintiff seeks to recover damages caused by Defendants' wrongful conduct.

Pursuant to the PSLRA, the Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). In selecting the "most adequate plaintiff," the Court is required to determine which movant has the "largest financial interest in the relief sought by the [C]lass" in this Action, and whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only upon proof that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The First New York Group respectfully submits that it should be appointed Lead Plaintiff for the putative Class. As detailed below, the First New York Group is entitled to the presumption that it is the "most adequate plaintiff" as a result of its more than **$627,000.00** in collective losses incurred on its investments in Dynagas securities.[5] Accordingly, the First New York Group has a

[4] These executives are: Defendant Tony Lauritzen ("Lauritzen"), Dynagas' Chief Executive Officer ("CEO") since its initial public offering ("IPO") in 2013; and Defendant Michael Gregos ("Gregos"), Dynagas' Chief Financial Officer ("CFO"). Dynagas, Lauritzen and Gregos, together with alleged control persons Dynagas GP, LLC, Dynagas Holding Ltd. and Dynagas Chairman George J. Prokopiou are, collectively, the "Defendants."

[5] Copies of the Certifications executed by the members of the First New York Group are annexed as Exhibits A, B and C to the Entwistle Declaration. The Certifications set forth all transactions of the First New York Group in

powerful economic interest in directing the litigation and recovering the losses it suffered — an interest believed to be greater than that of any other movant.

The First New York Group also meets the typicality and adequacy requirements of Rule 23 because the claims of its members are typical of absent Class members, and because it will fairly and adequately represent the interests of the Class.  In this regard, members of the First New York Group are the only movants to date that have taken affirmative steps to protect the interests of the Class.  Among other things, one or more members of the First New York Group have:

- Engaged in a months-long investigation of the facts giving rise the claims against Defendants;

- Filed the only complaint to date;

- Served process upon Dynagas and the two other Entity Defendants[6] (pursuant to stipulation) thereby avoiding the costs and delays associated with international service; and

- Conferred with counsel for the Entity Defendants regarding scheduling.

Moreover, the First New York Group is a small, cohesive group composed of a sophisticated institutional investor and two experienced individual investors – precisely the type of plaintiff that Congress intended to lead complex securities class actions.

The First New York Group also respectfully requests that the Court approve its choice of Entwistle & Cappucci as Lead Counsel for the Class.  With its main office in Manhattan, Entwistle & Cappucci is a nationally recognized law firm with extensive experience litigating complex securities class actions that have resulted in the successful recovery of billions of dollars for the benefit of injured investors and is eminently qualified to prosecute the Action.  *See* Entwistle Decl., Ex. H.

---

Dynagas securities during the Class Period.  Additionally, calculation of the financial losses sustained by members of the First New York Group are attached as Exhibits D, E and F to the Entwistle Declaration.

[6] Dynagas GP, LLC and Dynagas Holding Ltd.

## FACTUAL BACKGROUND

As described more fully in the Complaint[7] filed by First New York Group member Plaintiff Mario Epelbaum, Dynagas is a publicly traded limited partnership that owns six tanker ships designed for the transportation of liquified natural gas ("LNG"). ¶ 2. These LNG tanker ships are operated by a Dynagas affiliate and are chartered to large oil and gas companies typically for periods of up to ten years. *Id.* Since the completion of its IPO in 2013, and until recently, Dynagas attracted investors in its common stock in part by paying a consistent substantial quarterly distribution (*i.e.*, cash dividend). Dynagas was able to sustain this substantial dividend due to the highly predictable nature of revenue derived from long-term contracts with stable counterparties.[8] ¶ 3. Indeed, prior to 2018, Dynagas paid holders of its common stock at least 36.5 cents per quarter per share, without exception. *Id.*

In early 2018, it became apparent that Dynagas would need to reduce its quarterly distributions to maintain adequate liquidity to meet debt obligations and continue operations. ¶ 4. The Company's management conducted a review and determined to reduce the quarterly distribution to 25 cents per share. *Id.* However, unknown to investors, Dynagas and its senior management knew the Company's predictable cash flow did not support even this (reduced) distribution because Dynagas had already agreed to charge a reduced charter rate for two of its six LNG tanker ships, the *Arctic Aurora* and the *Ob River*, beginning in 2018 and continuing for years to come. *Id.* The impact of the rate reduction – which affected one third of Dynagas' fleet – meant the Company would not be able to support even the 25-cent quarterly distributions. *Id.* Rather than disclose these facts to investors, Dynagas and its senior executives repeatedly assured investors that the new, lower dividend was sustainable and that

[7] ECF No. 1. The Complaint is cited herein as "¶ __."

[8] In its press releases and public presentations and on conference calls with investors, Dynagas and its officers routinely touted the Company's long-term charter contracts and reminded investors that these contracts "*provide steady, predictable cash flows*." ¶ 3.

further reductions would not be necessary, in multiple press releases and conference calls from February 15, 2018 through July 27, 2018. ¶¶ 5–9.

In a November 15, 2018 evening press release announcing Dynagas' earnings for the third quarter of 2018, Dynagas and its senior management were finally forced to admit that the *Arctic Aurora* and the *Ob River* were both operating at a reduced charter rate, further decreasing the Company's revenue and cash flow. ¶ 10. Further, and more troubling than the implications for the Company's third quarter earnings, the reduction of the charter rate for one third of Dynagas' fleet implicated the Company's ability to generate revenue for years to come, because one of the less favorable contracts runs through the year 2028, and the other runs through at least 2021, and may run through 2023 at the counterparty's option. *Id.*

Further alarming investors, and in contrast to his prior assurances, CFO Gregos declined to answer a question about the future of the distributions on a public conference call the following morning, November 16, 2018. ¶ 11. Analysts inferred from this non-response that the quarterly distributions were not covered by the Company's cash flow and might be further reduced. *Id.* The magnitude of the fraud was further revealed on January 25, 2019, when Dynagas announced it would pay a reduced quarterly distribution of only 6.25 cents per share of common stock, a reduction of ***75%*** from the prior quarterly distribution of 25 cents per share. ¶ 12. CEO Lauritzen explained in the press release that this drastic reduction was "necessary in order to retain more of the cash generated from the Partnership's long-term contracts to maintain a steady cash balance." *Id*. In other words, Dynagas' prior distribution level was not supported by its cash flow profile, and the Company's prior statements were false when made. *Id*.

Finally, on the morning of March 22, 2019, Dynagas' management was finally forced to explicitly contradict Gregos' prior statements to the effect that the 25-cent quarterly distribution was supported by its current cash flow profile as of summer 2018. ¶ 13. When asked on the conference call what had changed since the distribution had been set to 25 cents per quarter the previous April,

Gregos explained that when he made his prior comments, he and Lauritzen had expected the relevant market to improve, thereby allowing the Company to issue equity to fund future distributions. *Id*. That is, rather than being sustainable for the "foreseeable future" and "supported by the [then-]current cashflow profile," Lauritzen and Gregos admitted they had known since at least April 2018 that the quarterly distribution could only be maintained through the issuance of new equity, and only if certain market conditions improved. *Id*.

Dynagas' common stock declined 78.4% from February 16, 2018 (the day after Dynagas' post-market-close misstatements about its charter contracts and the ability of the revenue derived therefrom to support its distributions) to March 22, 2019 (the day it was fully revealed that the prior statements were false). Series A Preferred Units declined 24.7% during the same period, and other Dynagas securities suffered substantial price decreases as well.

## ARGUMENT

### A.    The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a Lead Plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).

In adjudicating a Lead Plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons that: (i) has either filed the complaint or made a motion in response to the a notice; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23. *Springer v. Code Rebel Corp.*, No. 16-cv-3492 (AJN), 2017 WL 838197, at *1 (S.D.N.Y. Mar. 2, 2017); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption that the person or group of persons with the largest financial interest in the relief sought (and having requested appointment) is the "most adequate plaintiff"

may be rebutted only upon "proof" that that person or group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). *Springer*, 2017 WL 838197 at *2; *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *2 (S.D.N.Y. Apr. 5, 2016); *See also Levin v. Res. Capital Corp.*, No. 15 Civ. 7081 (LLS), 2015 WL 7769291, at *1 (S.D.N.Y. Nov. 24, 2015) (appointing Lead Plaintiff in class action that suffered highest estimated losses and otherwise satisfied typicality and adequacy requirements).

## B. The First New York Group Is the "Most Adequate Plaintiff"

The First New York Group respectfully submits that it is presumptively the "most adequate plaintiff" because it has complied with the PSLRA's procedural requirements, possesses the largest financial interest of any movant and otherwise satisfies Rule 23's typicality and adequacy requirements.

### 1. The First New York Group Has Satisfied the PSLRA's Procedural Requirements

The Court's selection of the Lead Plaintiff is limited to those members of the Class who filed a complaint or timely filed a motion for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). A member of the First New York Group, Mr. Epelbaum, has filed the only complaint asserting claims against Dynagas to date concerning the subject wrongdoing. The First New York Group has filed its Motion within 60 days of the publication of notice of the Action. *See* 15 U.S.C. § 78u-4(a)(3)(A); Entwistle Decl., Ex. G.[9]

[9] The notice of pendency was published on May 17, 2019, making the deadline for this Motion July 16, 2019.

### 2. The First New York Group Possesses the Largest Financial Interest in the Relief Sought by the Class

The First New York Group should be appointed Lead Plaintiff because it has the largest financial interest in the relief sought by the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). During the Class Period, the First New York Group suffered substantial losses of **$627,006.15** from its transactions in Dynagas securities. Specifically:

- Plaintiff Mario Epelbaum incurred an overall loss of **$122,987.36** on his investments in Dynagas securities (116,801.12 on common stock and $6,186.24 on preferred stock). *See* Loss Analysis, Entwistle Decl., Ex. D.
- FNY Partners Fund LP incurred a loss of **$302,856.24** on its investments in Dynagas securities. *See* Loss Analysis, Entwistle Decl., Ex. E.
- Scott Dunlop incurred a loss of **$201,162.55** on his investments in Dynagas securities ($97,743.51 on common stock, $3,058.04 on preferred stock and $100,361 in derivative securities[10]). *See* Loss Analysis, Entwistle Decl., Ex. F.

To the best of the First New York Group's knowledge, there are no other movants that have sought, or are seeking, Lead Plaintiff appointment that have a larger financial interest arising from transactions in Dynagas securities. Accordingly, the First New York Group has the largest financial interest of any movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

[10] This figure treats the exercise of put options against Mr. Dunlop as losses equal to the difference between the strike price and the price at market close. The First New York Group may offer an alternative approach to calculating recoverable damages derived from the sale of put options at a later stage of the litigation. As numerous courts have recognized, there are various methodologies for calculating losses on derivative securities. With respect to options damages, losses could be calculated using the Black-Scholes method, which uses a mathematical formula to take into account "the value of the security underlying the options, the exercise price, the time to maturity of the options, and interest rate and the volatility of the stock price." *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 18 (Del. Ch. 2003); *see also Seinfeld v. Becherer*, 461 F.3d 365, 373 (3d Cir. 2006) (recognizing that "Black–Scholes is one of several well-established and reliable methods used to value options"); *In re Coleman Co. Inc. S'holders Litig.*, 750 A.2d 1202, 1208 (Del. Ch. 1999) (recognizing Black-Scholes as "the leading option pricing model"). Alternatively, a number of courts have adopted the intrinsic value method, which "takes the prevailing stock price on the valuation date less the exercise [] price of the option, multiplied by the number of options being valued." *In re Galena Biopharma, Inc. Sec. Litig.*, No. 3:14-cv-00367-SI, 2016 WL 3457165 (D. Or. June 24, 2016).

### 3. The First New York Group Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) requires, among other things, that a proposed Lead Plaintiff: (i) has claims that are typical of those of the class; and (ii) will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). At the Lead Plaintiff selection stage, all that is required is a preliminary showing that the Lead Plaintiff's claims are typical and adequate. *See Maliarov*, 2016 WL 1367246, at *5; *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 288 F.R.D. 26, 37 (S.D.N.Y. 2012) ("In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.") (citation omitted). As detailed below, the First New York Group plainly satisfies the typicality and adequacy requirements of Rule 23. As such, the First New York Group is qualified to serve as Lead Plaintiff.

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. The typicality requirement is satisfied as long as claims arise from a similar course of conduct and share the same legal theory, even when there are factual differences. *Facebook*, 288 F.R.D. at 37 ("However, the claims of the class representative need not be identical to those of all members of the class . . . [t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (citation omitted).

The typicality requirement is satisfied here because the First New York Group is not subject to any unique or special defense and seeks the same relief and advances the same legal theories as other Class members. Like the other members of the Class, the First New York Group purchased

Dynagas securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and omissions and suffered damages as a result.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when:

> (1) [proposed] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.

*Maliarov*, 2016 WL 1367246, at *6.

The First New York Group satisfies these elements because its sophistication and substantial financial stake in the litigation provide the ability and incentive to vigorously represent the Class' claims. Indeed, its interests are perfectly aligned with those of the other Class members and are not antagonistic in any way to those interests. There are no facts to suggest any actual or potential conflict of interest or other antagonism between the First New York Group and other Class members. To the contrary, a member of the First New York Group filed the only complaint in this Action and, with the assistance of counsel, has affected service of process on three defendants by agreement, thereby saving the Class the costs and delay of international service. *See* ECF No. 9.

Finally, the First New York Group has demonstrated its adequacy through its selection of Entwistle & Cappucci as Lead Counsel to represent the Class. As discussed more fully below, Entwistle & Cappucci is highly qualified and experienced in securities class action litigation, having repeatedly demonstrated an ability to conduct complex securities class action litigation effectively, particularly in securities matters involving energy company defendants. Entwistle & Cappucci's investigation into this matter led to its filing of the Complaint.

### 4. The First New York Group Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Enacted the PSLRA

In addition to satisfying the requirements of Rule 23, the members of the First New York Group – a sophisticated institutional investor experienced in acting as a fiduciary and two experienced individual investors – are precisely the type of investors Congress sought to encourage to assume a more prominent role in securities litigation when it enacted the PSLRA. The institutional member of the First New York Group (FNY Partners Fund LP, the "Fund") is particularly well-qualified to lead this litigation and effectively supervise class counsel. The Fund is advised by FNY Investment Advisers, LLC, an investment adviser registered with the SEC and responsible for exercising investment discretion over almost $3 billion in regulatory assets under management. The Fund and its affiliates have over three decades of experience in equity investing across all platforms. One of the Fund's affiliates, First New York Securities LLC, previously served as a Lead Plaintiff in another class action based upon violations of the federal securities laws, captioned *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389 (S.D.N.Y.). Accordingly, the Fund possesses the experience, resources and personnel necessary to ensure that the interests of Class members are adequately protected. Additionally, the individual members of the First New York Group each has over two decades of professional experience investing in equity-based securities. Joint Decl. ¶¶ 2, 4.

In addition to satisfying the requirements of Rule 23, the First New York Group has also demonstrated its commitment to working cohesively in the joint prosecution of this Action. *See Maliarov*, 2016 WL 1367246, at *5 (discussing factors considered in appointing lead plaintiff group). In this regard, each member of the First New York Group individually determined to jointly seek appointment as Lead Plaintiff and litigate this Action in the best interests of all Class members. The First New York Group has already taken measures to ensure the vigorous prosecution of this

Action. Specifically, Plaintiff Mario Epelbaum filed a detailed and comprehensive complaint based upon the results of an extensive investigation in this matter. Mr. Epelbaum also actively assembled the First New York Group by directly contacting inhouse counsel for the FNY Partners Fund LP, with whom he has a long-standing professional relationship. Joint Decl. ¶ 6.

In addition, all three members of the First New York Group held a telephonic conference with each other and with proposed Lead Counsel concerning: (i) the allegations in the litigation; (ii) the merits of the claims against Defendants and potential recoverable losses; (iii) the PSLRA's Lead Plaintiff appointment process; (iv) the benefits of a co-leadership structure; and (v) the manner in which the group members plan on working together and making joint decisions. Joint Decl. ¶¶ 7–9. Accordingly, the First New York Group has established its ongoing commitment to zealously and efficiently represent the interests of the Class as members of a cohesive Lead Plaintiff group. *Id*. ¶¶ 14–15.

Congress explained in its PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff []," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 737); *see also Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018) ("By enacting the PSLRA . . . Congress sought to increase the likelihood that institutional investors will step forward as the ideal lead plaintiffs in private securities litigation.") (citation omitted).

Moreover, courts in this Circuit and elsewhere have recognized the propriety of appointing both an individual investor and an institution as co-lead plaintiffs to ensure adequate protection of each absent class member's interests. In this regard, courts have frequently appointed both

institutional and individual investors as co-lead plaintiffs to ensure adequate representation of the class. *See In re Oxford Health Plans, Inc., Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (appointing individual investor and institutional investor as co-lead plaintiffs to ensure diverse representation); *In re Flight Safety Techs., Inc. Sec. Litig.*, 231 F.R.D. 124, 131 (D. Conn. 2005) ("Although there is no apparent preexisting relationship between them outside of the fact that they both were members of the Ozkan Group, the Court exercises its discretion and, acting in the best interests of the purported class members, appoints Pathway Investments as a co-lead plaintiff."); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. Civ. A. 00-152 (JEI), 2000 WL 486956 (D.N.J. Apr. 24, 2000) (noting that it is "desirable to have both an institutional investor [] and individual investors [] included as lead plaintiffs since each may bring a unique perspective to the litigation."); *Bell v. Ascendant Solutions, Inc.*, No. Civ.A. 3:01-CV-0166, 2002 WL 638571 (N.D. Tex. Apr. 17, 2002) (appointing an institution and two individuals as Lead Plaintiff "improves diversity of experience"). The *Oxford* court stated as follows:

> Allowing for diverse representation, including in this case a state pension fund, significant *individual* investors and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.

182 F.R.D. at 49 (emphasis added).

The First New York Group is composed of a sophisticated institutional investor and experienced individual investors with substantial financial stakes in this litigation that have every incentive to vigorously pursue this case and obtain the best possible recovery for the Class. Appointing the First New York Group would thus advance the PSLRA's aim by providing the Class with sophisticated, motivated institutional and individual representatives.

### C. The Court Should Approve the First New York Group's Choice of Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to "select and retain lead counsel," subject to this Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Micholle,* 2018 WL 1307285, at *10.[11] Here, the First New York Group has chosen Lead Counsel with extensive experience and a demonstrated history of success in numerous important actions on behalf of injured investors. Its selection of counsel should be approved.

Entwistle & Cappucci is among the preeminent securities class action law firms in the country, with its main office in New York City. *See* Entwistle Decl., Ex. H. The Firm has extensive experience successfully prosecuting some of the largest and most complex class actions in history and has distinguished itself as one of the nation's premier complex litigation firms, regularly pursuing multi-jurisdictional cases against well-funded opponents, including large corporations and financial institutions. The Firm has served in a leadership capacity in some of the highest-profile securities litigation matters in recent years, recovering over $4 billion for its clients and other investors.

Entwistle & Cappucci is especially qualified for a leadership position in this matter in light of its recent prosecution of securities claims against oil and gas company Cobalt International Energy, Inc. in the Southern District of Texas. In that case, Entwistle & Cappucci served as co-lead counsel and recovered $169.35 million in cash, in addition to $220 million payable from director and officer liability policies on behalf of a class of investors. *See In re Cobalt International Energy, Inc. Securities Litigation*, No. 14-cv-3428 (S.D. Tex.) (Atlas, J.).

[11] Courts should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Other significant cases in which Entwistle & Cappucci served in a leadership capacity and obtained significant recoveries on behalf of the respective classes include:

(1) *In re MF Global Holdings Ltd. Investment Litigation*, No. 12-md-2338-VM (S.D.N.Y.), in which Entwistle & Cappucci — appointed Co-Lead Counsel for the worldwide class of commodities investors — worked with the trustee appointed under the Securities Investor Protection Act ("SIPA") to recover all $1.6 billion in net equity lost by commodity customers after the collapse of MF Global;

(2) *In re Royal Ahold Securities Litigation,* No. 03-md-01539-CCB (D. Md.), in which Entwistle & Cappucci served as Lead Counsel representing the Public Employees' Retirement Association of Colorado as Lead Plaintiff, recovering a $1.1 billion partial settlement of the action, representing approximately 40% of estimated provable damages;

(3) *In re Tremont Securities Law, State Law, & Insurance Litigation*, No. 08-cv-11117-TPG (S.D.N.Y.), where Entwistle & Cappucci — again collaborating with the SIPA trustee — worked to structure and negotiate the resolution of the litigation, securing a $2.9 billion bankruptcy claim, and an additional $100 million settlement;

(4) *In re Allergan, Inc. Proxy Violation Derivatives Litigation*, No. 17-cv-04776 DOC(KESx) (C.D. Cal.), where Entwistle & Cappucci, as Co-Lead Counsel on behalf of investors in derivative securities of Allergan, Inc., negotiated a $40 million settlement of claims that Valeant Pharmaceuticals International, Inc. ("Valeant") and certain officers shared material non-public information with Pershing Square Capital Management, L.P. and certain affiliated individuals and entities concerning Valeant's plan to take over Allergan, Inc. in exchange for Pershing Square's support for the takeover; and

(5) *Shapiro v. JPMorgan Chase, et al.*, No. 11-cv-8331 (S.D.N.Y.), where Entwistle & Cappucci — collaborating with the liquidation trustee for Bernard L. Madoff Investment Securities and the United States Attorneys' Office — worked to structure and negotiate the resolution of claims against JPMorgan Chase & Co. for failure to disclose or report to investors facts related to the Madoff Ponzi scheme, resulting in contemporaneous and related settlements totaling $2.243 billion.

Entwistle & Cappucci was also appointed class counsel for minority investors of Clear Channel Outdoor Holdings, Inc. ("CCOH") in CCOH's separation from controlling stockholder iHeartCommunications, Inc. in connection with the iHeartMedia, Inc. bankruptcy in the Southern District of Texas. A settlement of the CCOH/iHeart matter was recently approved by both Bankruptcy Judge Marvin Isgur and Chief District Judge Lee Rosenthal, who was enlisted to

review the Rule 23 aspects of the settlement. The Firm was also appointed as defense liaison counsel in connection with the Tribune Company bankruptcy and related litigation in the Southern District of New York.

### D. The Court Should Order Consolidation of All Future Related Securities Class Actions

The First New York Group respectfully requests that the Court order any subsequently filed or transferred actions related to the claims asserted in the above-captioned Action brought on behalf of investors in Dynagas securities be consolidated with this Action pursuant to Rule 42(a).

## CONCLUSION

For the foregoing reasons, the First New York Group respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff in the Action; (2) approve its selection of Entwistle & Cappucci as Lead Counsel for the Class; (3) consolidate for all purposes any subsequently filed, removed or transferred actions that are related to the claims asserted in the above-captioned Action pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and (4) grant any such further relief as the Court may deem just and proper.

DATED: July 16, 2019

Respectfully submitted,

*/s/ Andrew J. Entwistle*

Andrew J. Entwistle
Robert N. Cappucci
Brendan J. Brodeur
Sean M. Riegert
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, New York 10171
Telephone: (212) 894-7200

*Counsel for Plaintiff Mario Epelbaum, FNY Partners Fund LP and Scott Dunlop and Proposed Lead Counsel for the Class*