**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIO EPELBAUM, Individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>     v.<br><br>DYNAGAS LNG PARTNERS LP, DYNAGAS GP, LLC, DYNAGAS HOLDING LTD., TONY LAURITZEN, MICHAEL GREGOS and GEORGE J. PROKOPIOU,<br><br>                    Defendants. | Case No.: 1:19-cv-04512-AJN<br><br>CLASS ACTION<br><br>Hon. Alison J. Nathan |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE DYNAGAS INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

    I.       APPOINTMENT OF MOVANT AS LEAD PLAINTIFF IS APPROPRIATE .......... 5

        A.      The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff ............ 5

        B.      Movant Satisfies the Lead Plaintiff Provisions of the PSLRA .............................. 6

           1.      Movant Filed a Timely Motion ....................................................................... 7

           2.      Movant Has the Largest Financial Interest in the Relief Sought By the Class . 7

           3.      Movant Meets Rule 23's Typicality and Adequacy Requirements ................. 8

              (i)  Movant's Claims Are Typical of the Claims of the Class ............................. 9

              (ii) Movant Will Fairly and Adequately Protect the Interests of the Class ........ 10

    II.      APPROVING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE ............. 12

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.,*
  2008 U.S. Dist. LEXIS 106327 (S.D.N.Y. Dec. 29, 2008) .................................................... 9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,*
  252 F.R.D. 188 (S.D.N.Y. 2008) ........................................................................................... 9

*City of Riviera Beach Gen. Emples. Ret. Sys. v. Macquarie Infrastructure Corp.,*
  No. 18-CV-3608 (VSB), 2019 U.S. Dist. LEXIS 14860 (S.D.N.Y. Jan. 30, 2019) ................ 7

*In re Drexel Burnham Lambert Grp., Inc.,*
  960 F.2d 285 (2d Cir. 1992) ................................................................................................... 9

*In re eSpeed, Inc., Sec. Litig.,*
  232 F.R.D. 95 (S.D.N.Y. 2005) ......................................................................................... 1, 8

*Foley v. Transocean Ltd.,*
  272 F.R.D. 126 (S.D.N.Y. 2011) ....................................................................................... 5, 7

*Gen. Tel. Co. of the Southwest v. Falcon,*
  457 U.S. 147 (1982) ............................................................................................................. 10

*In re GE Secs. Litig.,*
  No. 09-Civ.-1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ............... 11

*Kaplan v. Gelfond,*
  240 F.R.D. 88 (S.D.N.Y. 2007) ............................................................................................. 7

*In re Milestone Scientific Sec. Litig.,*
  183 F.R.D. 404 (D.N.J. 1998) ............................................................................................... 11

*In re Orion Sec. Litig.,*
  No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 8, 2008) ................ 10

*In re Oxford Health Plans, Inc. Sec. Litig,*
  182 F.R.D. 42 (S.D.N.Y.) ....................................................................................................... 9

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,*
  275 F.R.D. 187 (S.D.N.Y. 2011) ......................................................................................... 11

*Reimer v. Ambac Fin. Group, Inc.,*
  No. 0-Civ.-411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) ................. 10

*Richman v Goldman Sachs Grp,*
  274 F.R.D. 473 (S.D.N.Y. 2011) ......................................................................................... 10

*Strougo v. Brantley Capital Corp.,*
   243 F.R.D. 100 (S.D.N.Y. 2007) .................................................................................. 9

*Vanamringe v. Royal Grp. Techs., Ltd.,*
   237 F.R.D. 55 (S.D.N.Y. 2006) .................................................................................. 11

*Weiss v. Friedman, Billings, Ramsey Group, Inc.,*
   05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006) ............................. 7

## Statutes

15 U.S.C. § 78j(b) ....................................................................................................... 1

15 U.S.C. § 78t(a) ....................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(A) ........................................................................................... 5, 7

15 U.S.C. § 78u-4(a)(3)(A)(i) ........................................................................................ 6, 7

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................................... passim

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ..................................................................................... 7, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................. 6, 13

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ............................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .............................................................................. 13

15 U.S.C. § 78u-4(a)(3)(B)(v) ....................................................................................... 13

15 U.S.C. § 78u-4(e) ................................................................................................... 8

## Rules

Fed. R. Civ. P. 23(a) ................................................................................................... 2

Movants Philip F. Murtaugh and Brian Bober (collectively, the "Dynagas Investor Group" or "Movant"), on behalf of itself and all similarly situated entities and persons, respectfully submits this Memorandum of Law in support of its motion ("Motion") to: (1) appoint Movant as Lead Plaintiff on behalf of all entities or persons who purchased or otherwise acquired Dynagas LNG Partners LP securities ("Dynagas" or the "Company") between February 16, 2018 through March 21, 2019, both dates inclusive (the "Class Period"); (2) approve Movant's selection of the law firms Levi & Korsinsky, LLP ("Levi & Korsinsky") and Bragar Eagel & Squire, P.C. ("BES") as Co-Lead Counsel for the putative class; and (3) grant such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action (the "Action") brought on behalf of all persons who purchased or otherwise acquired Dynagas securities (collectively, the "Class") between February 16, 2018 through March 21, 2019, both dates inclusive (the "Class Period"). Plaintiff in the Action alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) (the "PSLRA"), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation that has also made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re eSpeed, Inc., Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.")

1

(quotations omitted). Movant has lost over $60,457.76 as a result of the alleged fraud during the Class Period.[1] Accordingly, Movant believes it has the largest financial interest in the outcome of this litigation. Moreover, Movant satisfies the requirements of Rule 23 in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class.[2]

For the reasons summarized herein and discussed more fully below, Movant's Motion should be granted in its entirety.

## FACTUAL BACKGROUND

Dynagas is a publicly traded company limited partnership that owns six tanker ships, designed for the transportation of liquified natural gas ("LNG"). These LNG tanker ships are operated by a Dynagas affiliate and are chartered to large energy companies including Statoil (now known as Equinor), Gazprom, and Yamal, typically for periods of eight to ten years. ¶ 2. [3]

Since the completion of its initial public offering in 2013, Dynagas attracted investors in its common stock by paying a substantial quarterly distribution (i.e. dividend). ¶ 3. Dynagas was able to make the distribution consistently in part due to the highly predictable nature of revenue derived from long-term contracts with stable counterparties and routinely touted the Company's long-term charter contracts and reminded investors that these contracts "provide steady, predictable cash flows." *Id.* Prior to 2018, Dynagas had always paid holders of its common stock at least 36.5 cents per quarter per share. *Id.*

---

[1] Certifications identifying Movant's transactions in Dynagas, as required by the PSLRA, as well as a chart identifying its losses, and a joint declaration executed by movants evidencing their intention to pursue the Action in a cohesive and collaborative manner, are attached to the Declaration of Gregory M. Nespole, dated July 16, 2019 ("Nespole Decl."), as Exhibits A, B, and F respectively.

[2] The "Class" is comprised of all persons, other than defendants, who purchased or otherwise acquired Dynagas securities during the Class Period.

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint") filed in the action entitled *Epelbaum v. Dynagas Lng Partners LP, et al.* No. 1:19-cv-04512-AJN (S.D.N.Y.). Unless otherwise defined, capitalized terms shall have the same meaning set forth in the Complaint. The facts set forth in the Complaint are incorporated herein by reference.

In early 2018, it became apparent that Dynagas would need to reduce its quarterly distributions to maintain adequate liquidity to meet debt obligations and continue operations. ¶ 4. The Company's management conducted a review and determined to reduce the quarterly distribution to 25 cents per share. *Id.* However, unknown to investors, Dynagas and its senior management knew that the Company's predictable cash flow did not support even this (reduced) distribution, because Dynagas had already agreed to receive a reduced charter rate for two of its six LNG tanker ships, the *Arctic Aurora* and the *Ob River*. *Id.* The impact of the rate reduction for one third of Dynagas's fleet on the Company's cash flow would extend for years into the future, such that the Company would not be able to support even the 25-cent quarterly distributions, despite repeatedly assuring investors that the new, somewhat lower, dividend was sustainable, and that further reductions would not be needed. *Id.*

On November 15, 2018, an evening press release announced Dynagas's earnings for the third quarter of 2018 and admitted that the *Arctic Aurora* was operating at a reduced charter rate, thus decreasing the Company's revenue and cash flow. ¶ 10. Dynagas announced that it had realized lower earnings than in the previous quarters, lower earnings than the same quarter of 2017, and lower earnings than analysts expected. *Id.* The Company explained that the lower earnings in the third quarter of 2018 were due, in part, to the less favorable terms under which the *Arctic Aurora* and the *Ob River* were now operating. *Id.* Furthermore, the reduction of the charter rate for one third of Dynagas's fleet implicated the Company's ability to generate revenue for years to come, because one of the less favorable contracts runs through the year 2028, and the other runs through at least 2021, and may run through 2023 at the counterparty's option. *Id.*

Dynagas Chief Financial Officer Michael Gregos ("Gregos") declined to answer a question about the future of the distributions on a public conference call the following morning, November

16, 2018, causing investors and analysts to correctly infer that the quarterly distributions were not covered by the Company's cash flow and might be further reduced. ¶ 11. On November 16, 2018, the price of Dynagas common stock fell 13.7%. *Id.*

The magnitude of the fraud was further revealed on January 25, 2019 when Dynagas announced that it would pay a reduced quarterly distribution of only 6.25 cents per share of common stock, a reduction of 75% from the prior quarterly distribution of 25 cents per share. ¶ 12. Dynagas's Chief Executive Officer, defendant Tony Lauritzen ("Lauritzen") explained in the press release that this drastic reduction was "necessary in order to retain more of the cash generated from the Partnership's long term contracts to maintain a steady cash balance." *Id.* The following trading day, Dynagas's common stock closed at $2.91 per share, down 27.6% from its close on the previous trading day. *Id.*

On the morning of March 22, 2019, Dynagas's management was finally forced to explicitly contradict Gregos's prior statements to the effect that the 25-cent quarterly distribution was supported by its current cash flow profile as of summer 2018. ¶ 13. When asked on the conference call what had changed since the distribution had been set to 25 cents per quarter the previous April, Gregos explained that when he made his prior comments, he and Lauritzen had expected the Master Limited Partnership ("MLP") market to improve, thereby allowing the Company to issue equity to fund future distribution. *Id.* That is, rather than being sustainable for the "foreseeable future" and "supported by the [then-]current cashflow profile," Lauritzen and Gregos had known since at least April 2018 that the quarterly distribution could only be maintained through the issuance of new equity, and only if certain market conditions improved. *Id.* Dynagas stock closed at $2.38 per share on March 22, 2019, down 8.6% from its close on the previous day. *Id.*

4

Dynagas's common stock declined 78.4% from its closing price on February 16, 2018 (the day after Dynagas's post-market-close misstatements about its charter contracts and the ability of the revenue derived therefrom to support its distributions) and its closing price on March 22, 2019 (the day it was fully revealed that the prior statements were false), Series A Preferred Units declined 24.7% during the same period, harming investors and causing Plaintiff and other Class members significant losses and damages. ¶ 14.

**ARGUMENT**

I.     **APPOINTMENT OF MOVANT AS LEAD PLAINTIFF IS APPROPRIATE**

   A.   **The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff**

The PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. §78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a) and (a)(3)(B).

*First,* the PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall cause to be published in a widely circulated national business publication or wire service, a notice advising members of the proposed class of the pendency of the action and their right to move for appointment as lead plaintiff within 60 days of the notice publication. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. §78u-4(a)(3)(A)).

Under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by a purported class member in response to the notice and appoint as lead plaintiff the movant that the court determines to be "most capable

5

of adequately representing the interests of class members." The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

    (aa)    has either filed the complaint or made a motion in response to a notice;

    (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and possesses, to the best of its knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against it. Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Action.

### B. Movant Satisfies the Lead Plaintiff Provisions of the PSLRA

As described in further detail below, Movant should be appointed lead plaintiff because it satisfies all the requirements of the PSLRA. Movant filed a timely motion to be appointed lead plaintiff, holds the largest financial interest in the relief sought by the Class and satisfies the typicality and adequacy requirements of Rule 23.

### 1. Movant Filed a Timely Motion

On May 17, 2019, which was within twenty (20) days of the filing of the first-filed complaint as required by 15 U.S.C. §78u-4(a)(3)(A)(i), plaintiff in the Action published notice through *Business Wire*, a widely circulated national business-oriented wire service. *See* Nespole Decl., Ex. C; *see also City of Riviera Beach Gen. Emples. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2019 U.S. Dist. LEXIS 14860 (S.D.N.Y. Jan. 30, 2019) (noting that *PRNewswire* is "a widely-circulated national business-orientated wire service, fulfilling the PSLRA requirements"). Consequently, any member of the proposed Class was required to seek appointment as lead plaintiff within 60 days after publication of that notice. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on July 16, 2019. Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant herein timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2. Movant Has the Largest Financial Interest in the Relief Sought By the Class

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Nespole Decl., Ex. B. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001); *Foley,* 272 F.R.D. 126, 128 (stating "[a]lthough courts have differed on how much weight to assign to each of the factors, the Second Circuit, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."). *See also Kaplan*, 240 F.R.D. at 93 (same); *Weiss v. Friedman, Billings,*

*Ramsey Group, Inc.,* 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028, *13-14 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period").

Under the PSLRA, damages on shares retained through the end of the class period are calculated based on: (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. §78u-4(e).

Within the Class Period, Movant purchased Dynagas securities in reliance upon the materially false and misleading statements issued by Defendants and was injured thereby. Movant suffered substantial losses of approximately $60,457.76 under a last-in-first-out ("LIFO") analysis, with a *Dura* adjustment. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 101 (noting that courts prefer losses to be calculated under LIFO); *see also* Nespole Decl., Ex. B (Loss Chart). Movant, thus, has a significant financial interest in the outcome of this case. To the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3.  Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four

requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See In re Oxford Health Plans, Inc. Sec. Litig*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). *See also Strougo v. Brantley Capital Corp.,* 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,* 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### (i)     Movant's Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the plaintiff has: (a) suffered the same injuries as the absent class members; (b) the injuries are a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability. *See In re Drexel Burnham Lambert Grp., Inc*., 960 F.2d 285, 291 (2d Cir. 1992); *see also In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.,* 2008 U.S. Dist. LEXIS

106327, at *29 (S.D.N.Y. Dec. 29, 2008) ("However, the claims of the class representative need not be identical to those of all members of the class."); *In re Orion Sec. Litig*., No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 8, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (quotations omitted).[4]

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete, nor conflict with the claims of the other Class members. *See Richman v. Goldman Sachs Grp*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("The typicality requirement is satisfied when the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise.") (quotations omitted). Movant, like the other members of the Class, acquired Dynagas securities during the Class Period at prices artificially inflated by the Defendants' materially false and misleading statements, and was damaged thereby. Thus, the claims of Movant are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses resulted from the Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Reimer v. Ambac Fin. Group, Inc.,* 2008 U.S. Dist. LEXIS 38729, *12 (S.D.N.Y. May 9, 2008) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

### (ii)   Movant Will Fairly and Adequately Protect the Interests of the Class

---

[4] Further, though irrelevant to the instant motion, a finding of typicality frequently supports a finding of commonality and *vice versa*. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

Movant is also an adequate representative for the Class. Under Rule 23(a)(4), representative parties must also "fairly and adequately protect the interests of the class." Adequate representation will be found if the representative has: (a) retained able and experienced counsel; and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re Dynagas Secs. Litig.*, 2009 U.S. Dist. LEXIS 69133, at *15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel."). The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B).

Movant has met both of the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative class. Not only is there no evidence of conflict between Movant's interests and those of the other members of the putative Class, but the Dynagas Investor Group has a significant financial interest at stake and will vigorously litigate this action to recover its losses. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (Plaintiff's "financial stake in the litigation provides an adequate incentive for [Plaintiff] to vigorously prosecute the action."). Moreover, Movant has retained counsel who, as shown below, are

experienced in litigating lawsuits such as the Action and Movant will submit its choice of counsel to the Court for approval. Therefore, Movant is an adequate representative for the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, it is the presumptive lead plaintiff in accordance with §78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead this Action.

## II.     APPROVING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected and retained Levi & Korsinsky and BES as proposed Co-Lead Counsel for the Class.

As set forth in the accompanying firm résumés (Nespole Decl. Ex. D), Levi & Korsinsky and BES are highly accomplished firms which have recovered many multi-million dollar recoveries for investors. As a result, the members of Levi & Korsinsky and BES have extensive experience in successfully prosecuting complex securities class actions such as these and are well-qualified to represent the Class. Thus, this Court may be assured that in the event that the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) appoint the Dynagas Investor Group as Lead Plaintiff on behalf the Class; (2) approve the Dynagas Investor

Group's selection of counsel—Levi & Korsinsky and BES as Co-Lead Counsel; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: July 16, 2019                           Respectfully Submitted,

                                               **LEVI & KORSINSKY, LLP**

                                               By:  /s/ Gregory M. Nespole
                                               Gregory M. Nespole (GN-6820)
                                               55 Broadway, 10th Floor
                                               New York, NY 10006
                                               Tel: (212) 363-7500
                                               Fax: (212) 363-7171
                                               Email: gnespole@zlk.com

                                               **BRAGAR EAGEL & SQUIRE, P.C.**
                                               Melissa A. Fortunato
                                               885 Third Avenue, Suite 3040
                                               New York, NY 10022
                                               Tel.: (212) 308-1869
                                               Fax: (212) 214-0506
                                               fortunato@bespc.com

                                               *Lead Counsel for Movant and [Proposed]*
                                               *Co-Lead Counsel for the Class*