**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE DYNAGAS LNG PARTNERS LP SECURITIES LITIGATION | No. 19-cv-04512 (AJN) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, APPROVAL OF FORM OF CLASS NOTICE, AND A HEARING DATE FOR FINAL APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 3

    A.    Summary of Dynagas's Formation and Corporate and Capital Structure ............. 3

    B.    Dynagas's Financial Difficulties From 2017-2019.................................................. 3

    C.    The Dynagas Defendants' Alleged Class Period Misstatements............................ 4

    D.    Economic Loss Incurred by Plaintiffs and the Class ............................................. 5

    E.    Lead Plaintiffs' Investigation and the Procedural History of the Action............... 6

    F.    The Extensive and Hard-Fought Settlement Negotiations...................................... 7

    G.    Summary of Settlement Terms ............................................................................... 8

ARGUMENT ............................................................................................................ 9

I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................. 9

    A.    Standards for Preliminary Approval of a Proposed Class Action Settlement ........ 9

    B.    Rule 23(e)(2)(A): Zealous Representation............................................................ 10

    C.    Rule 23(e)(2)(B): The Settlement is the Product of Good Faith, Informed and
        Arm's-Length Negotiations by Experienced Counsel ........................................... 11

    D.    Rule 23(e)(2)(C): The Settlement Significantly Benefits the Settlement Class ... 12

        1.    Despite Strong Claims, Many Risks to a Recovery Remained ............... 12

        2.    The Claims Processing and Distribution Process is Effective................. 15

        3.    The Settlement Does Not Excessively Compensate Lead Counsel.......... 16

    E.    Rule 23(e) (2)(D): Settlement Class Members Are Treated Equitably................. 16

II.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS ........................ 17

    A.    The Settlement Class Meets the Requirements of Rule 23(a) .............................. 18

        1.    Rule 23(a): Numerosity .......................................................................... 18

        2.    Rule 23(a)(2): Questions of Law or Fact Are Common ........................... 19

        3.    Rule 23(a)(3): Plaintiffs' Claims are Typical ......................................... 19

4.      Rule 23(a)(4): The Class Representatives are Adequate ......................... 20

B.      The Requirements of Rule 23(b)(3) Are Satisfied ................................................ 21

1.      Common Legal and Factual Questions Predominate................................ 21

2.      A Class Action is Superior to Other Methods of Adjudication ............... 22

III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED .......................... 23

CONCLUSION.................................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
 406 U.S. 128 (1972).................................................................................................. 22

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997).................................................................................................. 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013).................................................................................................. 22

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988).................................................................................................. 22

*Consol. Rail Corp. v. Town of Hyde Park*,
 47 F.3d 473 (2d Cir. 1995)........................................................................................ 18

*Erica P. John Fund, Inc.* v. *Halliburton Co.*,
 563 U.S. 804 (2011).................................................................................................. 22

*Granada Invs., Inc. v. DWG Corp.*,
 962 F.2d 1203 (6th Cir. 1992) .................................................................................. 14

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
 271 F. App'x 41 (2d Cir. 2008) ................................................................................ 25

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
 298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................ 11, 13

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................... 13

*In re Citigroup Inc. Bond Litig.*,
 296 F.R.D. 147 (S.D.N.Y. 2013) ................................................................................ 9

*In re Drexel Burnham Lambert Grp., Inc.*,
 960 F.2d 285 (2d Cir. 1992)................................................................................ 20, 21

*In re Glob. Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................. 14

*In re Globalstar Sec. Litig.*,
 No. 01 Civ.1748(PKC), 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ...................... 19

*In re IMAX Sec. Litig.*,
 283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................................. 18

*In re Initial Pub. Offering Sec. Litig.*,
　260 F.R.D. 81 (S.D.N.Y. 2009) ...................................................................... 18

*In re Marsh & McLennan Cos., Sec. Litig.*,
　No. 04 Civ. 8144(CM), 2009 WL 5178546, (S.D.N.Y. Dec. 23, 2009) .......................... 20

*In re Merrill Lynch Tyco Research Sec. Litig.*,
　249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................... 17

*In re Metlife Demutualization Litig.*,
　689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................. 13

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
　310 F.R.D. 230 (S.D.N.Y. 2015) .................................................................... 19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
　187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................... 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
　330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................... 2

*In re Pfizer Inc. Sec. Litig.*,
　282 F.R.D. 38 (S.D.N.Y. 2012) ..................................................................... 19

*In re Platinum & Palladium Commodities Litig.*,
　No. 10 cv 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ....................................... 11

*In re Polaroid ERISA Litig.*,
　240 F.R.D. 65 (S.D.N.Y. 2006) ..................................................................... 21

*In re Priceline.com, Inc. Sec. Litig.*,
　No. 3:00-CV-I884(AVC), 2007 WL 2115592 (D. Conn. July 20, 2007) ........................ 14

*In re Sadia, S.A. Sec. Litig.*,
　269 F.R.D. 298 (S.D.N.Y. 2010) .................................................................... 18

*In re Veeco Instruments, Inc., Sec. Litig.*,
　235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................... 20, 22

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
　No. 15CV1249, 2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018) ........................................ 16

*Lizondro-Garcia v. Kefi LLC*,
　300 F.R.D. 169 (S.D.N.Y. 2014) .................................................................... 11

*Lomeli v. Sec. & Inv. Co. Bahrain*,
　546 F. App'x 37 (2d Cir. 2013) ..................................................................... 24

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)........................................................................................ 23

*Priddy v. Edelman*,
  883 F.2d 438 (6th Cir. 1989) ......................................................................... 14

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)............................................................................ 22

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)............................................................................ 20

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014).............. 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................. 23, 24, 25

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)....................................................................... 17, 18

*Yang v. Focus Media Holding Ltd.*,
  No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)................. 9

**Statutes**

15 U.S.C. §78u-4(a)(7)(A)-(F).............................................................................. 24

**Rules**

Fed. R. Civ. P. 23(b)(3)........................................................................................ 23

Fed. R. Civ. P. 23(e)(2)................................................................................... 9, 10

**Other Authorities**

NEWBERG ON CLASS ACTIONS
  §13:12 (5th ed. 2015)...................................................................................... 9

Court-appointed lead plaintiffs FNY Partners Fund LP ("FNY"), Mario Epelbaum and Scott Dunlop (collectively, "Lead Plaintiffs"), and plaintiff Irving Braun (together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class,[1] respectfully submit this Memorandum of Law in support of their motion (the "Motion"), pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" and each a "Rule"), for entry of the [Proposed] Order Preliminarily Approving Settlement, Approving Form of Class Notice and Setting Hearing Date for Final Approval of Settlement (the "Preliminary Approval Order"), attached as Exhibit A to the Motion. The Motion is unopposed by the Defendants.[2]

## PRELIMINARY STATEMENT

On May 21, 2021, Plaintiffs and all Defendants entered into a Stipulation and Agreement of Settlement (ECF No. 135, the "Stipulation"), which, subject to the Court's approval, sets forth the terms and conditions of the resolution of all claims in this Action (the "Settlement").

The Settlement provides a $4.5 million cash recovery to resolve the Action against Defendants – approximately one-third of the maximum recoverable damages based on the remaining claims – providing an immediate benefit to the Settlement Class while avoiding the expense and risk of continued complex international litigation. Plaintiffs respectfully submit that the Settlement warrants preliminary approval given that it is the result of vigorous arm's-length negotiations by experienced counsel, represents a favorable recovery well within the range of reasonableness and is likely to meet all of the approval factors required by Fed. Civ. P. 23(e)

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation and Agreement of Settlement, dated May 21, 2021 (the "Stipulation"). The Stipulation, together with its exhibits are being filed contemporaneously herewith.

[2] "Defendants" are Dynagas LNG Partners LP, Dynagas GP, LLC ("Dynagas GP"), Dynagas Holding Ltd. ("Dynagas Holding"), George J. Prokopiou, Tony Lauritzen, Michael Gregos, Evangelos Vlahoulis, Alexios Rodopoulos, Levon A. Dedegian, UBS Securities LLC ("UBS"), Stifel, Nicolaus & Company, Incorporated ("Stifel"), Morgan Stanley & Co. LLC ("Morgan Stanley"), and B. Riley FBR, Inc. ("B. Riley" and collectively with UBS, Stifel and Morgan Stanley, the "Underwriter Defendants")

and Second Circuit precedent. Preliminary approval is, therefore, appropriate. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

The proposed Preliminary Approval Order,[3] submitted herewith as Exhibit A to the Motion, will preliminarily approve the Settlement and approve the forms and methods for providing notice of the Settlement to potential Settlement Class Members. A Final Approval Hearing will then be held so that the Parties and Settlement Class Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable and adequate.

To facilitate this process, the proposed Preliminary Approval Order will, *inter alia:* (i) preliminarily approve the Settlement on the terms in the Stipulation; (ii) preliminarily certify the Action as a class action and Plaintiffs as class representatives, and preliminarily appoint Lead Counsel as class counsel, for purposes of the Settlement; (iii) approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement and Motion for Attorneys' Fees and Expenses ("Notice"), the Summary Notice and Proof of Claim form ("Claim Form"), attached respectively as Exhibits 1, 2 and 3 to the Preliminary Approval Order; (iv) find that the procedures for distributing the Notice and Claim Form and publishing the Summary Notice, as provided in the Preliminary Approval Order, are the best notice practicable under the circumstances and comply with due process, Rule 23 and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the Final Approval Hearing, at which the Court will consider final approval of the Settlement, the proposed Plan of Allocation for distributing the proceeds of the Settlement and Lead Counsel's application for attorneys' fees

---

[3] [Proposed] Order Preliminarily Approving Settlement, Approving Form of Class Notice, and Setting Hearing Date for Final Approval of Settlement.

and expenses, including reimbursement of costs and expenses to Plaintiffs pursuant to the PSLRA; and (vi) appoint A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### A.    Summary of Dynagas's Formation and Corporate and Capital Structure

Corporate Defendant Dynagas LNG Partners LP ("Dynagas" or the "Company"), the issuer of the securities subject to this Action, is a limited partnership organized under the laws of the Republic of the Marshall Islands. It was founded in 2013 and generates revenue primarily by leasing (chartering) its six liquified natural gas ("LNG") tanker ships to LNG producers such as Gazprom and Equinor.[5] *See* ¶¶ 4, 65. Dynagas purchased each of its vessels from its controlling shareholder, privately held Defendant Dynagas Holding Ltd.  ¶¶ 23, 57. Dynagas obtained the capital for these purchases and its operations by issuing securities, including limited partnership interests, also referred to as "Common Units" or "common stock," which are listed on the New York Stock Exchange under the ticker symbol "DLNG." ¶¶ 36, 61. Dynagas also issued two series of perpetual preferred units ("Series A Preferred Units" and "Series B Preferred Units"), which are listed on the New York Stock Exchange, and bonds that matured in November 2019 (after the Class Period) (the "6.25% Notes"). ¶ 36. Class-Period purchasers of each of these four securities, or "Dynagas Units," are included in the Settlement Class.

### B.    Dynagas's Financial Difficulties From 2017-2019

Dynagas endeavors to keep its fleet employed in multi-year charter contracts with stable counterparties. ¶¶ 5, 60, 65. To this end, in 2016 and 2017, respectively, Dynagas agreed to new long-term charter contracts for two of its vessels, *Ob River* and *Arctic Aurora*, which were then under contract through the first half of 2018. ¶¶ 6, 70. Unfortunately for Dynagas and its

---

[4] The following discussion is drawn from the Complaint and includes allegations Defendants deny in whole or in part.

[5] "¶ __" herein refers to the corresponding paragraph in the Complaint (ECF No. 50).

investors, the new charter contracts provided substantially less revenue to Dynagas than the then-current charter contracts on these two vessels. ¶¶ 7, 70, 77, 82, 113. This decrease in revenue began in 2018 as the new contracts went into effect, and, as its existence and magnitude were revealed to the public in a series of disclosures, resulted in corresponding drops in the market price of Dynagas securities and the cessation of distributions (dividend payments) to holders of its Common Units. ¶¶ 70, 127, 132. Dynagas ultimately was able to refinance its debts and remain solvent, but it is now contractually prohibited from resuming distributions for the next four-and-a-half years and has not been able to implement its previously touted plans to purchase additional vessels and expand its business, and its Common Units now trade at a fraction of their pre-Class Period market price. ¶¶ 140-141.

### C.    The Dynagas Defendants' Alleged Class Period Misstatements

Plaintiffs allege that Dynagas and its senior management made a series of false and misleading statements regarding: (i) the terms of the charter contracts on *Arctic Aurora* and *Ob River*; and (ii) Dynagas's ability to continue to pay distributions to holders of its Common Units. ¶¶ 77, 80, 82, 88, 90, 97, 99, 100, 102, 110, 111, 115, 119, 121. The first alleged misstatements appeared in Dynagas's December 21, 2017 prospectus for a shelf registration of new securities. ¶¶ 7, 76. The prospectus included historical information regarding the revenue from *Ob River* and *Arctic Aurora* but omitted that the contracts had been renewed at lower rates (to take effect over the following nine months). *Id*. Among similar statements, the prospectus also declared: "In December 2017, we entered into a time charter contract with Statoil for the employment of the *Arctic Aurora*. This charter will be in direct continuation of the vessel's current charter with Statoil." *Id*. This statement was false because the new charter was ***not*** a direct continuation of the current contract, but rather an entirely new agreement that provided Dynagas with significantly less revenue than the current contract. *Id*. Over the following months, Dynagas and its senior

management repeated this statement in substance and continued to tout the Company's purported success in obtaining "continued" or "extended" charters on the two vessels, including touting the possible "escalation" of the charter rate on *Arctic Aurora* in the future, while omitting the imminent reduction in rate that had already been agreed. ¶¶ 12, 81, 84, 108. At the same time, management repeatedly assured investors that Dynagas's distributions to holders of Common Units was "supported by our current cash flow profile for quite a long time," and "as for the foreseeable future this distribution, as I mentioned before, is sustainable." ¶¶ 11, 109. The Dynagas Defendants contemporaneously explained that they had excellent visibility into the Company's cash flow and that revenue was predictable because "Long-Term Contracts Provide Stable, Visible Cash Flow." ¶¶ 10, 103. Plaintiffs allege that Defendants knew that the Company's cash flow profile could not sustain the distribution, and that Defendants in fact planned to support the distribution with the proceeds of new investment, akin to a Ponzi scheme. ¶¶ 1, 12, 74, 143. Ultimately, Defendants' allegedly misleading statements regarding the *Arctic Aurora* were repeated in Dynagas's October 2018 final prospectus supplement, pursuant to which the company made an initial public offering of its Series B Preferred Units. ¶¶ 12, 154. The Underwriter Defendants underwrote that offering and may be liable for misstatements therein pursuant to Sections 11 and 12(a)(2) of the Securities Act, subject to several asserted defenses. ¶¶ 48-52, 199, 205, 212.

### D. Economic Loss Incurred by Plaintiffs and the Class

Plaintiffs and other Settlement Class Members suffered economic loss, *i.e.* damages that directly resulted from Defendants' materially false and misleading statements and omissions of material fact, which artificially inflated the price of the Company's securities when the truth was revealed, and/or the risks previously concealed by Defendants' material misstatements and omissions materialized. ¶ 162. Specifically, as a result of the previously misrepresented and

concealed material information and risks that were disclosed and/or realized on November 15, 2018, November 16, 2018, January 25, 2019 and March 21, 2019, and the corresponding substantial declines in the price of Dynagas stock as the market absorbed this information, Plaintiffs and the other Class members suffered economic loss and damages in connection with their respective purchases of the Company's securities, purchases of call options or sales of put options on Dynagas securities during the Class Period. ¶¶ 162, 182.

### E.   Lead Plaintiffs' Investigation and the Procedural History of the Action

This Action was commenced on May 16, 2019, by the timely filing of the initial class action complaint in this Court by Plaintiff Mario Epelbaum. (ECF No. 1). On August 12, 2019, the Court appointed Mario Epelbaum, FNY Partners Fund LP and Scott Dunlop as Lead Plaintiffs, and appointed the law firm of Entwistle & Cappucci LLP as Lead Counsel. (ECF No. 41).

On September 26, 2019, Plaintiffs (*i.e.* Lead Plaintiffs, together with additional Plaintiff Irving Braun) filed the Amended Complaint (ECF No. 50) (the "Complaint") which includes claims under (i) Section 10(b) of the Exchange Act and Rule 10b-5 against Defendants Dynagas, Lauritzen and Gregos; and (ii) Section 20(a) of the Exchange Act against Defendants Dynagas GP, Dynagas Holding and Prokopiou; (iii) Section 20A of the Exchange Act against Dynagas; (iv) Section 11 of the Securities Act against Defendants Dynagas, Prokopiou, Lauritzen, Gregos, Vlahoulis, Rodopoulos and Dedegian and the Underwriter Defendants; (v) Section 12(a)(2) of the Securities Act against Dynagas and the Underwriter Defendants; and (vi) Section 15 of the Securities Act against Defendants Dynagas GP, Dynagas Holding, Prokopiou, Lauritzen, Gregos, Vlahoulis, Rodopoulos and Dedegian. The Complaint alleges fraudulent conduct arising from alleged material misrepresentations and omissions during the Class Period that, among other things, artificially inflated the prices of Dynagas securities and (when it was revealed that the

*Arctic Aurora* and the *Ob River* were operating under new extended charter contracts which were at lower rates compared to the previous charter contracts) undermined the Company's ability to make future distributions. The Complaint also alleges that the material misstatements and omissions induced Plaintiffs and the other Class members to purchase or otherwise acquired the Series B Preferred Units in or traceable to Dynagas's October 2018 offering. During late May 2020, Plaintiffs served Defendants Gregos, Lauritzen, Prokopiou, Vlahoulis and Rodopoulos in Greece.[6]

On December 5, 2019, Dynagas, Dynagas GP, Dynagas Holding and the Underwriter Defendants jointly filed their Motion to Dismiss (ECF No. 73). Plaintiffs opposed the motion on February 10, 2020 (ECF No. 92). On November 25, 2020, the Court granted Defendants' motion with regard to the Exchange Act claims and denied the motion as to Plaintiffs' Securities Act claims (ECF No. 102).

Formal discovery in the case commenced in January 2021 after the Court entered the Civil Case Management Plan and Scheduling Order (ECF No. 117). The Parties exchanged initial disclosures in February and began locating and collecting the categories of documents listed in their disclosures. The parties agreed to maintain the confidentiality of commercially sensitive information exchanged in discovery; that agreement has not reduced to a formal stipulation.

## F.    The Extensive and Hard-Fought Settlement Negotiations

On November 13, 2020, while Defendants' Motion to Dismiss was pending, counsel for the Parties and relevant insurance carriers participated in a full-day mediation session before retired United Stated District Court Chief Judge Jose L. Linares. The Parties submitted

---

[6] Defendants Gregos, Lauritzen and Prokopiou were served on May 21, 2020. Defendant Vlahoulis was served on May 25, 2020, and Defendant Rodoupolis was served on May 26, 2020. Plaintiffs filed notice of service at ECF Nos. 111-115.  Defendant Dedegian agreed to waive service of process.

confidential statements regarding their views on liability and damages and worked in good faith to reach a resolution. While the settlement negotiations were ongoing, on November 25, 2020, the Court issued its Order dismissing the Exchange Act claims and allowing the Securities Act claims to proceed (ECF No. 102).

The Parties continued to discuss settlement in parallel with their efforts to litigate the claims in preparation for trial, culminating in a second full-day mediation session before Judge Linares on March 15, 2021. Shortly after the mediation session, the Parties all accepted Judge Linares's mediator's proposal that all claims settle for $4.5 million in cash.

### G.     Summary of Settlement Terms

Under the terms of the Settlement, Defendants will pay, or cause to be paid, $4.5 million in cash into an escrow account for the benefit of the Settlement Class within 30 business days of the Court's entry of the Preliminary Approval Order. In exchange for this cash payment, Plaintiffs and the Class will release all claims against Defendants arising from their transactions in Dynagas securities during the Class Period, including the dismissed Exchange Act Claims.[7]

Assuming the Court grants Lead Counsel's anticipated motion for an award of attorneys' fees and reimbursement of litigation expenses that will accompany Lead Plaintiffs' motion for final approval and judgment, the Settlement Class's recovery will be subject to: (i) reimbursement of litigation expenses of up to $150,000; (ii) an award of attorneys' fees to Plaintiffs' Counsel of up to 25% of the Settlement Amount; and (iii) payments of the costs of

---

[7] These include any and all Claims, including Unknown Claims, that have been or could have been asserted by or on behalf of Plaintiffs or any member of the Settlement Class in the Action, in any capacity, which arise out of, are based upon, or relate in any way to the purchase or acquisition of Dynagas securities (i) during the Class Period or (ii) in, contemporaneous with, or traceable to the Offering, including but not limited to any claims alleged in the Action, and any claims related to the allegations, transactions, facts, events, matters, occurrences, acts, disclosures, representations, statements, omissions, failures to act, or any other matter whatsoever involved, set forth, referred to, or otherwise related, directly or indirectly, to the allegations in the Action or the disclosures made in connection therewith (including the adequacy and completeness of such disclosures). Stipulation ¶ 1(dd).

notice and administration, which are estimated to be approximately $ 115,000.[8]

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.    Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of class action litigation. *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements") (All internal quotations and citations in this Memorandum are omitted unless otherwise noted).

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013). District Court review of a class action settlement proposal is a two-step process. NEWBERG ON CLASS ACTIONS §13:12 (5th ed. 2015). The first step is a preliminary, pre-notification determination of whether "notice of the proposed settlement should be sent to the class." *Id.* at §13:13.

Rule 23(e) was recently amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement, after considering the required factors enumerated in Rule 23(e)(2), and certify the class. Rule 23(e)(l)(B). Rule 23 was previously silent as to how courts were to evaluate whether a proposed settlement was fair, adequate and reasonable, but with the recent amendment, Rule 23(e)(2) now provides that the

---

[8]  The initial costs of notice and administration through the initial distribution have been contractually capped by agreement at $ 195,000 with the proposed Claims Administrator, excluding broker fulfilment costs and extraordinary circumstances (*e.g.*, Court-ordered re-noticing of the Class). Entwistle Decl. ¶ 9.

Court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A)   class representatives and counsel have adequately represented the class;

> (B)   the proposal was negotiated at arm's length;

> (C)   the relief provided for the class is adequate, [considering]:

>> (i)   the costs, risks, and delay of trial and appeal;

>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

>> (iv)  any agreement required to be identified under Rule 23(e)(3); and

> (D)   the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2). While the 2018 amendment to Rule 23 codified a framework for evaluating a class-action settlement, it did not change the standard, *i.e.,* whether it is fundamentally fair, adequate, and reasonable.

### B.      Rule 23(e)(2)(A): Zealous Representation

Plaintiffs and Lead Counsel have zealously prosecuted this Action on behalf of the Class since early 2019, including investigating the claims and potential damages, filing the initial complaint in this Action, consulting with an expert economist and additional counsel, filing an amended complaint following the appointment of Lead Plaintiffs, serving several foreign individual defendants overseas through the Hague Convention despite an ongoing pandemic, extensively briefing and preparing to argue a motion to dismiss, locating and reviewing documents, serving initial disclosures, preparing discovery requests and engaging in hard-fought settlement negotiations over the course of several months including two all-day mediation

sessions and multiple submissions to the mediator.[9]

### C.     Rule 23(e)(2)(B): The Settlement is the Product of Good Faith, Informed and Arm's-Length Negotiations by Experienced Counsel

The extensive, hard-fought negotiations over several months evidences the fairness of the Settlement. In considering preliminary approval, courts look to both the "negotiating process leading up to the settlement, *i.e.,* procedural fairness, as well as the settlement's substantive terms, *i.e.,* substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10 cv 3617, 2014 WL 3500655, at* 11 (S.D.N.Y. July 15, 2014). Thus, "[p]reliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014).

Here, a strong presumption of fairness attaches because the settlement was "reached by experienced counsel after arm's-length negotiations." *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014). Plaintiffs are represented by Entwistle & Cappucci LLP, an experienced firm skilled in securities litigation with a long and successful track record in such cases. *See* Firm Resume, ECF No. 30-8.[10]  Both sides were knowledgeable about the strengths and weaknesses of the case during their arm's-length negations and prior to finalizing the Stipulation. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight . . . to the recommendations of counsel[.]"). Plaintiffs and Lead Counsel only agreed to the Settlement after multiple discussions between Lead Counsel and Defendants' Counsel about their respective positions and Lead Counsel's rigorous investigation of the merits and risks to the Action, which included consultation with an expert economist.

---

[9] *See* Stipulation at WHEREAS clauses D and G; Declaration of Andrew J. Entwistle In Support of Plaintiffs' Motion for Preliminary Approval of Settlement, Approval of Form of Class Notice, and a Hearing Date for Final Approval of Settlement, filed herewith ("Entwistle Decl.") ¶ 3.

[10] Defendants are represented by sophisticated counsel variously at WilmerHale and Skadden.

Entwistle Decl. ¶¶ 4, 6, Ex. A. Plaintiffs and Lead Counsel entered into the Settlement after engaging in multiple days of mediation and upon the recommendation of a retired federal judge and highly regarded mediator experienced in securities class actions. *Id.* ¶ 3. Apprised of the strengths and weaknesses of the action and having observed Defendants' willingness to mount and sustain a vigorous defense, Lead Counsel believes that the achieved Settlement is an excellent result for the Class given the attendant risks in the ongoing litigation and recommends that the Settlement be preliminarily approved. *Id*. Thus, the procedurally fair manner by which this Settlement was reached weighs strongly in favor of granting approval.

> **D.      Rule 23(e)(2)(C): The Settlement Significantly Benefits the Settlement Class**
>
> **1.      Despite Strong Claims, Many Risks to a Recovery Remained**

To determine whether a proposed settlement is fair, reasonable and adequate, courts balance the continuing risks of litigation against the benefits to class members and the immediacy and certainty of a substantial recovery. Although Plaintiffs and Lead Counsel believe the claims are strong, they acknowledge that Defendants have advanced, and will continue to advance substantial arguments about liability and damages. Indeed, Defendants have already prevailed on their motion to dismiss with respect to Plaintiffs' Exchange Act claims; Plaintiffs recognize that these claims might not be revived via amendment or appeal and, even then, substantial challenges of proof with respect to scienter and other elements would remain.[11] Although the Settlement Class's Securities Act claims survived Defendants' motion to dismiss, litigating them through a contested motion for class certification, summary judgment, trial, and appeals would still pose significant challenges and uncertainty. It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to

---

[11] The proposed Plan of Allocation accounts for this additional impediment to recovery on the Exchange act claims by multiplying all Exchange Act recognized losses by 0.75 (*i.e*., discounts them by 25%). Securities Act recognized losses are not subject to a discount under the proposed Plan of Allocation.

meet." *Advanced Battery,* 298 F.R.D. at 177.

Indeed, litigation of the claims alleged in this case was expected to raise complex questions of falsity, loss causation, and damages that would require substantial efforts by Plaintiffs and Lead Counsel. Assuming the claims survived a motion for summary judgment, a jury trial would have required substantial factual testimony, including testimony from fact witnesses who reside overseas and may not be subject to the Court's subpoena power. And disputed expert testimony will undoubtedly introduce substantial uncertainty at trial. *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."). Whatever the outcome at trial, it was virtually certain that an appeal would have been taken. The foregoing would have posed considerable expense to the Parties and would have delayed any potential recovery for several years.

As a practical matter, a major challenge in establishing liability in this case is that the Dynagas Entity Defendants are incorporated in the Marshall Islands and their offices are located in Monaco, while the individual defendants reside in Greece. Prosecuting this Action would have required significant discovery from both locations during the pandemic, with no guarantees that third parties located there would be willing or allowed to cooperate or travel. Nor can Plaintiffs cost-effectively compel such compliance from overseas nonparties, which include the counterparties to the charter contracts at the center of Plaintiffs' claims. Complaint ¶¶ 76, 104. And, although the Securities Act Defendants include large domestic banks, all of the Exchange Act Defendants are foreign persons and entities whose assets are comprised largely of vessels

moving unpredictably through foreign and international waters. This might frustrate, and would at least complicate, the prospect of executing a favorable judgment on the Exchange Act Claims. Indeed, Dynagas has repeatedly disclosed this very risk to investors in its filings with the SEC. *See, e.g.,* Dynagas's November 14, 2013 IPO Prospectus at 20.[12] *C.f. In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (finding settlement reasonable where the main available source for funding the settlement would likely be consumed by the defense costs if litigation continued); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-l884(AVC), 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (finding settlement reasonable considering prospect that defendants would be unable to satisfy a significantly larger judgment).

Thus, the arguable possibility that the Settlement Class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (quoting *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989). If this Action was fully litigated, Settlement Class members might have received substantially less than the proposed Settlement, or even nothing at all.

Through the Settlement, Plaintiffs have achieved a significant and real recovery for the Settlement Class at an early stage of litigation. The proposed $4,500,000 cash payment amount is well within the range of approval in light of the significant risks that Plaintiffs and the Settlement Class would face in establishing liability and damages. The Settlement represents a recovery of 13.3% of simplified tiered damages, considerably more than the 5.8% median settlement as a

---

[12] "We are organized under the laws of the Marshall Islands, and substantially all of our assets are located outside of the United States. In addition, our directors and officers generally are or will be non-residents of the United States, and all or a substantial portion of the assets of these non-residents are located outside the United States. As a result, it may be difficult or impossible for you to bring an action against us or against these individuals in the United States if you believe that your rights have been infringed under securities laws or otherwise. Even if you are successful in bringing an action of this kind, the laws of the Marshall Islands and of other jurisdictions may prevent or restrict you from enforcing a judgment against our assets or the assets of our directors or officers."

percentage of simplified tiered damages over the past decade for cases involving both 10(b) claims and Section 11/Section 12(a)(2) claims. *See* LAARNI T. BULAN & LAURA E. SIMMONS, SECURITIES CLASS ACTION SETTLEMENTS - 2019 REVIEW AND ANALYSIS at 7 (Cornerstone Research 2020), Entwistle Decl. Ex. B; Calculation of Simple Tiered Damages (Entwistle Decl. Ex. C).

### 2.      The Claims Processing and Distribution Process is Effective

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced Claims Administrator, A.B. Data. The Claims Administrator will employ the simple and well-established methodology for the processing of claims in a securities class action such as in this Action. Namely, potential class members will submit the Court-approved Claim Form that provides simple and specific instructions concerning the necessary information they must present to the Claims Administrator to process their claim and the deadline by which they must do so. Based on the information provided by the Settlement Class Members, the Claims Administrator will confirm each Settlement Class Member's eligibility to participate in the recovery by calculating their respective "Recognized Claim" based on the Court-approved Plan of Allocation, and ultimately determine each Class Member's *pro rata* portion of the Net Settlement Fund. *See* Stipulation ¶ 22, Notice ¶¶ 8, 24.

After receiving final approval of the Settlement, the passing of all applicable deadlines, and Court approval to begin the distribution process, the Authorized Claimants will be issued their checks based on their *pro rata* allocation of the Net Settlement Fund based on their Recognized Claims. If after the initial distribution unclaimed funds remain in the Net Settlement Fund and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of the remaining funds (less the estimated expenses for the additional distribution). Additional distributions will proceed in the same

manner until it is no longer feasible or economical to conduct further distributions. In such an event, the remainder of the Net Settlement Fund will be issued to a Court-approved non-sectarian, §501(c)(3) non-profit organization as a *cy pres* recipient. Preliminary Approval Order Ex. A-1 (Notice) at p. 25.

### 3.    The Settlement Does Not Excessively Compensate Lead Counsel

The reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and expenses, Plaintiffs note that the proposed Settlement does not grant excessive compensation to Lead Counsel. Indeed, the Settlement itself does not contemplate any specific award to Plaintiffs' Counsel and is not dependent on the Court's award of any fees or expenses. Lead Counsel will seek compensation for all Plaintiffs' counsel out of the Settlement Fund under the common fund doctrine, in an amount not to exceed $1.15 million (25% of the Settlement Amount). The Notice explains that Lead Counsel will seek no more than 25% of the Settlement Amount as fees and no more than $150,000 in Litigation Expenses, including awards to Plaintiffs pursuant to the PSLRA. A 25% fee award would be well within the percentages that courts in the Second Circuit approve in securities class actions with comparable recoveries. *See, e.g., In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15CV1249, 2018 WL 6333657, at *4 (S.D.N.Y. Dec. 4, 2018) (awarding attorney's fees equal to 25% of a $ 5.5 million settlement fund).

### E.    Rule 23(e) (2)(D): Settlement Class Members Are Treated Equitably

The Settlement does not improperly grant preferential treatment to either Plaintiffs or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court. The proposed Settlement fairly and reasonably allocates benefits amongst the Class Members, including appropriately discounting recognized losses

arising from the Exchange Act claims by 25% to account for the reality that those claims have been dismissed by the Court. *See Weinberger v. Kendrick*, 698 F.2d 61, 78 (2d Cir. 1982) (fair and reasonable for plan of allocation to discount claims that were less likely to succeed). All Settlement Class members that were allegedly harmed as a result of the alleged misstatements, and that have an eligible claim pursuant to the Plan of Allocation, will receive their p*ro rata* shares of the Net Settlement Fund based on their "Recognized Claims" under the plan. Notice at 9-16. *See, e.g., In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").[13]

## II.      PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

In seeking preliminary approval, Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Parties for the purposes of settlement only, consists of:

> all Persons who, during the Class Period, purchased or otherwise acquired Dynagas securities, purchased or otherwise acquired call options on Dynagas securities or sold or otherwise transferred put options on Dynagas securities. Excluded from the Settlement Class are Defendants, the Officers and directors of Dynagas at all relevant times, their Immediate Family Members and their legal representatives, heirs, successors or assigns, the corporate parents and/or affiliates and any entity in which any of the above have or had a controlling interest, provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class, and any Person who submits a request for exclusion to the Claims Administrator by the

---

[13] Respecting Rule 23(e)(2)(C)(iv), the only settlement-related agreements between Plaintiffs and Lead Counsel, on the one hand, and Defendants or Defendants' Counsel, on the other hand, are the Stipulation and the confidential Supplemental Agreement, dated May 21, 2021, concerning the circumstances under which Defendants may terminate the Settlement based on the amount of requests for exclusion from the Settlement Class. *See* Stipulation ¶ 37. It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided to the Court *in camera* or under seal.

opt-out deadline that satisfies the requirements set forth in the Notice
and that is accepted by the Court.

Stipulation ¶ 1(jj).

The Second Circuit has long acknowledged the propriety of certifying settlement classes. *See, e.g., Weinberger*, 698 F.2d at 72-73 ("The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies."). "Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'" *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012). As demonstrated below, the proposed Settlement Class satisfies Rule 23(a) and 23(b)(3).

### A.      The Settlement Class Meets the Requirements of Rule 23(a)

Pursuant to Rule 23(a), parties seeking certification must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. As discussed below, Plaintiffs and the Class meet these requirements.

### 1.      Rule 23(a): Numerosity

Numerosity is presumed when a class includes 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995); *accord, In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009). Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, the

Settlement Class satisfies numerosity as it likely consists of thousands of investors as Dynagas securities publicly traded at all relevant times. Therefore, Rule 23(a)(l) is satisfied.

### 2.      Rule 23(a)(2): Questions of Law or Fact Are Common

Courts consistently find that securities fraud cases alleging "putative class members have been injured by similar material misrepresentations and omissions" satisfy commonality. *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also In re Globalstar Sec. Litig.*, No. 01 Civ.1748(PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues.").

Here, the allegations present several questions of law and fact common to all members of the Settlement Class, including: (a) whether Defendants' alleged conduct violated the federal securities laws; (b) whether the Defendants' public statements during the Class Period contained material misstatements; (c) whether Defendants acted with scienter with respect to the Exchange Act claims; (d) whether and to what extent the market price of Dynagas securities was artificially inflated during the Class Period; and (e) whether the members of the Settlement Class sustained damages as a result of the conduct complained of, and, if so, the proper measure of damages. Courts in this district have routinely found that these types of common questions satisfy Rule 23(a)(2). *See, e.g., In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015). The commonality requirement is thus met.

### 3.      Rule 23(a)(3): Plaintiffs' Claims are Typical

The requirement of Rule 23(a)(3) that the claims of the class representatives be "typical" of the claims of the class is established where, as here, "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the

defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "Typical" does not mean "identical." *In re Marsh & McLennan Cos., Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). The critical question is whether the proposed class representatives and the class can point to a common "course of conduct" by defendants to support a claim for relief. *Id.; see also Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

The same conduct by Defendants injured Plaintiffs and the other Settlement Class Members in the same way. The same legal theories apply equally to both. Essentially, Plaintiffs allege that they and the entire Class were damaged because Defendants made false and misleading statements during the Class Period, artificially inflating the value of Dynagas securities. Accordingly, Plaintiffs "have the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions," satisfying the typicality requirement. *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006).

### 4.    Rule 23(a)(4): The Class Representatives are Adequate

In determining whether "the representative parties will fairly and adequately protect the interests of the class," pursuant to Rule 23(a)(4), courts consider: (i) whether the interests of the proposed class representatives are antagonistic to those of other class members; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See Drexel*, 960 F.2d at 291; *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014).

First, no antagonism of interests exists between Plaintiffs and the proposed Settlement Class. All Settlement Class Members, including Plaintiffs, acquired Dynagas securities during the Class Period, when their price is alleged to have been artificially inflated by false and misleading statements. Thus, the claims of the Settlement Class would prevail or fail in unison, and the common objective of maximizing recovery aligns the interests of Plaintiffs and all members of the Settlement Class. *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members." (citing *Drexel,* 960 F.2d at 291)).

Second, Plaintiffs have retained qualified counsel. Lead Counsel is amply qualified and experienced and has conducted the Action effectively on behalf of Plaintiffs and the Settlement Class. Lead Counsel is an experienced law firm in representing plaintiffs in securities class actions in courts throughout the nation. *See* ECF No. 30-8, Lead Counsel's Firm Resume. Accordingly, Plaintiffs are adequate class representatives and Rule 23(a)(4) is satisfied.

### B.     The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets this standard.

### 1.     Common Legal and Factual Questions Predominate

Rule 23(b)(3) does not require "an absence of individual issues," but instead that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon*

*Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *Veeco*, 235 F.R.D. at 240. The Supreme Court has stated that this requirement is "readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged false and misleading statements and omissions affected all Settlement Class members in the same manner *(i.e.,* through public statements made to the market and documents publicly filed with the SEC). Materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," thus "can be proved through evidence common to the class" and "is a common question for Rule 23(b)(3) purposes." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013). The same is the case for loss causation, scienter, and falsity. *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 563 U.S. 804, 812 (2011) (loss causation "requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss," but need not be shown at the class certification stage).

Plaintiffs have pled that, to the extent their claims require such a showing, reliance is established in this Action through the application of the "fraud-on-the-market" presumption of reliance detailed in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) or under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Application of *Basic* or *Affiliated Ute* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants" alleged misstatements and/or omissions. *See Basic*, 485 U.S. at 241-42.

## 2. A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets the following non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests

in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Each of the applicable factors supports certification. As to the first two factors, there is no evidence that numerous putative class members have the desire or the ability to bring separate individual actions under the federal securities laws. With respect to the third factor, several facts make it desirable to concentrate the claims in this Court, including that: (i) Dynagas securities traded on the New York Stock Exchange during the Class Period; and (ii) this Court is already familiar with the factual and legal issues in the case. Thus, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. For these reasons, the Court should preliminarily certify the Settlement Class.

## III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached respectively as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order, satisfy due process, the Federal Rules of Civil Procedure and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).

Collectively, the proposed forms of notice describe: (i) the terms of the Settlement and

the recovery; (ii) the considerations that caused Plaintiffs and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable to all Settlement Class Members; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a claim; (vi) the proposed Plan of Allocation for distributing the Settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Final Approval Hearing. The Notice also satisfies the PSLRA's requirements, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the maximum amount of such fees and expenses on an average per share basis); (iv) the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. §78u-4(a)(7)(A)-(F). Thus, the proposed Notice contains all the information required by the PSLRA and "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Lomeli v. Sec. & Inv. Co. Bahrain*, 546 F. App'x 37, 41 (2d Cir. 2013) (citing *Wal-Mart Stores*, 396 F.3d at 114).

The proposed notice program uses the "gold standard" method in securities cases for notifying class members: individual notification by mail (or by electronic communications from their brokers if they have consented), publication notice, and dissemination over the Internet using a wire service. Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice to all Settlement Class members who can be identified and located through reasonable effort, using information provided by Dynagas's transfer agent, as well as information provided by third-party banks, brokers, and other nominees about their customers who may have

24

eligible purchases.[14] Lead Counsel will also cause the Summary Notice to be published in *The Wall Street Journal* and to be disseminated electronically over a national wire service, such as Globe Newswire. In addition, the Notice and Claim Form will be made available for viewing and downloading on the settlement website to be created by the Claims Administrator. The manner of providing notice, *i.e.,* individual notice by mail supplemented by additional publication notice, represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process. *See, e.g., In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) (notice satisfied due process where notice was "provided through individually mailed notice to all known and reasonably identified class members, publication in several major newspapers, and entered on the district court's docket sheet"); *Wal-Mart Stores*, 396 F.3d at 106, 114-16 (affirming reasonableness of notice mailed to class members and published in widely distributed publications).

Plaintiffs also request that the Court appoint A.B. Data as the Claims Administrator to provide all Court-approved notices to Class Members, to process Claim Forms, and to administer the Settlement. A.B. Data is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements. *See* Entwistle Decl. ¶¶ 7-8, Ex. D. For these reasons, the Court should approve the Notice program.

Finally, Plaintiffs respectfully submit that the Preliminary Approval Order sets a reasonable and appropriate schedule for the Notice program and the related submission of claims, any requests for exclusion, and briefing on any objections. The key deadlines and events set by the Preliminary Approval Order are summarized in the Motion.

---

[14] Consistent with the 2018 amendment to Fed. R. Civ. P. 23(c)(2), the proposed order allows brokers and other nominees to use electronic methods to provide the Notice to beneficial owners (rather than paper mail), if those beneficial owners have consented to receiving information about their investments in Dynagas securities by such methods.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed

Preliminary Approval Order in its entirety.

DATED:  May 21, 2021                                  Respectfully Submitted,

                                                     */s/ Andrew J. Entwistle*
                                                     Andrew J. Entwistle
                                                     **ENTWISTLE & CAPPUCCI LLP**
                                                     Frost Bank Tower
                                                     401 Congress Avenue, Suite 1170
                                                     Austin, Texas 78701
                                                     Telephone:  (512) 710-5960
                                                     Facsimile: (212) 894-7272
                                                     aentwistle@entwistle-law.com

                                                     -and-

                                                     Robert N. Cappucci
                                                     Brendan J. Brodeur
                                                     230 Park Avenue, 3rd Floor
                                                     New York, NY 10169
                                                     Telephone:  (212) 894-7200
                                                     Facsimile:  (212) 894-7272
                                                     rcappucci@entwistle-law.com
                                                     bbrodeur@entwistle-law.com

                                                     *Counsel for Plaintiffs FNY Partners Fund
                                                     LP, Mario Epelbaum, Scott Dunlop and
                                                     Irving Braun and Lead Counsel for the
                                                     Class*

                                                     Curtis V. Trinko
                                                     **LAW OFFICES OF CURTIS V. TRINKO**
                                                     39 Sintsink Drive West
                                                     First Floor
                                                     Port Washington, New York 11050
                                                     Telephone: (212) 490-9550
                                                     Facsimile: (212) 986-0158
                                                     ctrinko@trinko.com

                                                     *Additional Counsel for Plaintiff Irving
                                                     Braun*