**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE DYNAGAS LNG PARTNERS LP
SECURITIES LITIGATION

No. 19-cv-04512 (AJN)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**
**AND FINAL CERTIFICATION OF THE SETTLEMENT CLASS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT .......................................................................................................4

I.     Public Policy Favors Settlement of This Complex Class Action. .......................4

II.    The Settlement Satisfies the Standard for Final Approval, Set Forth in Fed. R.
       Civ. P. Rule 23(e)(2)....................................................................................5

       A.    The Settlement Class Representatives and Class Counsel Have Adequately
             Represented the Settlement Class. ........................................................6

       B.    The Settlement Was Negotiated at Arm's-Length.................................7

       C.    The Relief Provided to the Class is Adequate, Taking into Account the
             Factors Set Forth in Rule 23(e)(2)(C). .................................................7

             i.    "the costs, risks, and delay of trial and appeal" ........................8

                   a.    Risks Related to Liability.................................................8

                   b.    Risks Related to Loss Causation and Damages............................9

                   c.    Risks Related to Class Certification ..............................10

                   d.    Appellate Risk .........................................................11

                   e.    Risks Related to Damages Calculations.......................................12

                   f.    Risks Related to the Collection of a Judgment............................12

             ii.   "the effectiveness of any proposed method of distributing relief to
                   the class, including the method of processing class-member
                   claims" ...................................................................13

             iii.  "the terms of the proposed award of attorneys' fees . . ."..........................14

             iv.   "any agreement required to be identified . . ." .........................................14

       D.    The Settlement and the Proposed Plan of Allocation Treat Settlement
             Class Members Equitably Relative to Each Other...............................14

III.   The Settlement Has the Support of Lead Plaintiffs and Lead Counsel and Has
       Been Well Received by the Settlement Class. ...............................................16

IV.    Notice to the Class Satisfied the Requirements of Rule 23 and Due Process..................18

V.    Final Certification of the Settlement Class Is Warranted Pursuant to Fed. R. Civ. P. Rules 23(a) and 23(b)(3)...........................................................................................20

CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996)......................................................................................11

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448, (2d Cir. 1974)
   *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)............................................................................................5

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub nom, Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)............................17

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014).....................................................................................6

*In re Apollo Grp., Inc. Sec. Litig.*,
   No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008),
   *rev'd*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010)................................11

*In re Bayer AG Sec. Litig.*,
   No. 03-cv-1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) .......................................9

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..............................................................4, 6, 14, 17

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................17

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
   *aff'd*, 674 F. App'x 37 (2d Cir. 2016) .............................................................................4

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)... 5, 10, 14, 17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011).....................................................................................16

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007).......................................5

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004).......................................................................................4

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012)................................................................14, 15

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................................................8, 14

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .........................20

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010)...................................................................16

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998)...................................................................17

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y 1997),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997) ...............................................................15

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006)......................................................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................7

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................8

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .........................17

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515(WHP), 2009 WL 2025160 (S.D.N.Y. July 10, 2009).......................18

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997).......................................................................11

*Shapiro v. JPMorgan Chase & Co.*,
   11 Civ. 8331(CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014).................................10

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)...............17

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...........................................................11

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003).......................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005)..................................................................................4, 6, 19

*White v. First Am. Registry, Inc.*,
 No. 04 Civ. 1611 (LAK), 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) .............................4

**Statutes**

15 U.S.C. § 78u.................................................................................................................19

**Rules**

Fed. R. Civ. P. 23(c).........................................................................................................20

Fed. R. Civ. P. 23(e)...........................................................................................................7

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed lead plaintiffs and Settlement Class Representatives FNY Partners Fund LP ("FNY"), Mario Epelbaum and Scott Dunlop (collectively, "Lead Plaintiffs"), and plaintiff and Settlement Class Representative Irving Braun (together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class,[1] respectfully submit this memorandum of law in support of their Motion for Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of the Settlement Class (the "Final Approval Motion").  The Final Approval Motion is unopposed by the Defendants,[2] and no objections have been lodged by members of the Settlement Class.

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Plaintiffs and Defendants have agreed to a settlement of the claims in the Action, and the release of all Released Claims, in exchange for a payment of $4,500,000.00 in cash on the terms set forth in the Stipulation (the "Settlement"). This recovery is a favorable result for the Settlement Class, obtaining more than one eighth of the maximum recoverable damages on all asserted claims and more than one third of the maximum recoverable damages on all sustained claims, while avoiding the substantial risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount or nothing at all.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation and Agreement of Settlement, dated May 21, 2021 (the "Stipulation").  The Stipulation, together with its exhibits are being filed contemporaneously herewith.

[2] "Defendants" are Dynagas LNG Partners LP, Dynagas GP, LLC ("Dynagas GP"), Dynagas Holding Ltd. ("Dynagas Holding"), George J. Prokopiou, Tony Lauritzen, Michael Gregos, Evangelos Vlahoulis, Alexios Rodopoulos, Levon A. Dedegian, UBS Securities LLC ("UBS"), Stifel, Nicolaus & Company, Incorporated ("Stifel"), Morgan Stanley & Co. LLC ("Morgan Stanley"), and B. Riley FBR, Inc. ("B. Riley" and collectively with UBS, Stifel and Morgan Stanley, the "Underwriter Defendants").

As more fully described in the accompanying Entwistle Declaration at ¶¶ 12-19,[3] Lead Counsel engaged in a thorough factual investigation of the claims, defenses and underlying events and transactions that are the subject of the Action. This process included analyzing, among other things, publicly filed documents and records, investigative reports, and news stories; and the responsive pleadings and disclosures obtained in the case. Plaintiffs' thorough understanding of the strengths and weaknesses of the claims was further informed by the extensive briefing on Defendants' motion to dismiss and the Court's opinion and order on that motion.  In addition, Lead Counsel consulted at length with an expert economist regarding measure of damages suffered by the class resulting from the wrongdoing alleged in the Action.

The Settlement is the product of months of arm's-length negotiations between the Parties, which proceeded in parallel with the litigation efforts and which included two full-day mediation sessions under the supervision of Hon. Jose L. Linares (ret.), an experienced mediator and former United States Chief District Judge.  (¶¶ 20-22.)[4]  The vigorous negotiations both within and outside of formal mediation further informed Plaintiffs and Lead Counsel's evaluation of the case, and the robust process demonstrates that the Settlement was negotiated at arms' length and agreed-to only when Plaintiffs were satisfied that it represented the best result for the Settlement Class.

Indeed, the Settlement is a very favorable result in light of the risks of continued litigation. While Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are strong, they recognize that this Action presented a number of substantial risks with respect to class certification, establishing liability, loss causation and damages. (¶¶ 27-35.) A particularly

---

[3] Declaration of Andrew J. Entwistle in Support of: (i) Plaintiffs' Final Approval Motion, and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards Pursuant to 15 U.S.C. §78u-4(a)(4), filed contemporaneously herewith.

[4] "¶ __" herein refers to the Entwistle Declaration.  "Ex. __" herein refers to the exhibits to the Entwistle Declaration.

complicated challenge was the issue of disaggregation, *i.e.,* determining how much of the decline in the price of Dynagas Securities was attributable to the alleged wrongdoing and how much was attributable to factors wholly independent of the alleged wrongdoing. (¶¶ 31-32.) While Plaintiffs were confident in their ability to obtain class certification, they nonetheless recognize the significant risk that their class certification motion might have been denied in whole or in part, or that Defendants would prevail on their "negative causation" defense at that juncture.  Following class certification, if granted, Defendants likely would have continued to press their arguments at summary judgment, at trial, and through appeals.

In addition, there was the practical challenge of taking significant discovery in Monaco and Greece during the COVID-19 pandemic, with no guarantees that nonparty witnesses located there would be willing or allowed to travel or otherwise cooperate and few if any means to cost-effectively compel their compliance. (¶¶ 17, 25.)

Plaintiffs respectfully submit that, the recovery for the Settlement Class, weighed against the risks to continued litigation, renders the Settlement is fair, reasonable, adequate and therefore deserving of final approval by the Court.  Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Settlement Class members. (¶ 10; Ex. 5 at ¶¶ 4-11.)  The Plan of Allocation, which was developed by Lead Counsel with the assistance of its expert economist (*see* ¶ 10; Ex. 6),[5] provides a reasonable and equitable method for allocating the Net Settlement Fund among Settlement Class members who submit valid claims. The Plan of Allocation accounts for Settlement Class members' losses resulting from the alleged misstatements and their out-of-pocket losses, as well as the relative strength of their claims.  It is fair, reasonable, and, like the Settlement overall, should be approved.

---

[5] Exhibit 6 to the Entwistle Declaration is the Declaration of Michael A. Marek, CFA Regarding Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation.

## ARGUMENT

The proposed Settlement is fair, reasonable, and adequate, and warrants final approval.

## I.   Public Policy Favors Settlement of This Complex Class Action.

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).[6] This policy would be well served by approval of the Settlement of this complex securities class action which, if tried, would consume years of this Court's time.  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).  Additionally, in deciding whether to approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007).  Securities class actions like this one are by their nature complicated, and district courts in this Circuit have long recognized that "[a]s a general rule, securities class actions are 'notably difficult and notoriously uncertain' to litigate." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y.

---

[6] There, the Court opined: "We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context." All internal quotations and citations are omitted unless otherwise stated.

Nov. 8, 2010); *In re Gilat Satellite Networks*, *Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute.").

## II.   The Settlement Satisfies the Standard for Final Approval, Set Forth in Fed. R. Civ. P. Rule 23(e)(2).

Rule 23(e)(2), as amended effective December 2018, provides that a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors.

(A)   whether the class representatives and class counsel have adequately represented the class;

(B)   whether the proposal was negotiated at arm's length;

(C)   whether the relief provided for the class is adequate, taking into account:

   i.   the costs, risks, and delay of trial and appeal;

   ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii.   the terms of any proposed award of attorneys' fees, including timing of payment; and

   iv.   any agreement required to be identified under Rule 23(e)(3); and

(D)   whether the proposal treats class members equitably relative to each other.[7]

---

[7] In evaluating these factors, courts look to the well-developed decisional authority that informed the 2018 amendment to the Federal Rule, and which is therefore overlapping and generally consistent with the relatively new formal framework articulated in the current version of Rule 23(e)(2). In the Second Circuit, the leading case remains *City of Detroit v. Grinnell Corp.*, which articulated the following factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible

For the reasons discussed herein, the proposed Settlement meets these criteria.

**A.      The Settlement Class Representatives and Class Counsel Have Adequately Represented the Settlement Class.**

Plaintiffs and Lead Counsel, who have been appointed Settlement Class Representatives and Class Counsel, respectively, pursuant to the Preliminary Approval Order, have adequately represented the Class.  As set forth in the previously filed motion for preliminary approval of the Settlement, Plaintiffs, like all other members of the Settlement Class, acquired Dynagas Securities during the Class Period, when their value was allegedly artificially inflated by false and misleading statements.  Thus, the claims of the Settlement Class and Plaintiffs would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Plaintiffs and all members of the Settlement Class. *See, e.g., In re Polaroid ERISA Litig*., 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Throughout the Action, Plaintiffs had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases.  Lead Counsel and additional Plaintiffs' Counsel have a long and successful track record in such cases. (*See* Ex. 2; Ex. 3; Ex. 4 (containing Plaintiffs' Counsel's resumes.)

The efforts by Plaintiffs and their counsel on behalf of the Class included a thorough initial and ongoing investigation of the claims, engaging and consulting with an economist regarding the calculation of damages and drafting and filing the initial complaint and the amended complaint.

---

recovery in light of all the attendant risks of litigation." 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  *See also Wal-Mart Stores*, 396 F.3d at 117; *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014); *Bear Stearns*, 909 F. Supp. 2d at 265-66.

Plaintiffs, through Plaintiffs' Counsel, also vigorously opposed Defendants' consolidated motion to dismiss (with its 60 pages of briefing and 29 exhibits in support). While that motion was pending, Plaintiffs effected service of process on five foreign individual defendants through the Hague Convention (after obtaining their addresses from other Defendants via contested interrogatories). Following the Court's order denying in part and granting in part Defendants' motion to dismiss, Plaintiffs and Plaintiffs' Counsel prepared and exchanged initial disclosures, established a case schedule and protocols for the exchange of confidential information and electronically stored information, and ultimately negotiated a Settlement on terms favorable to the Settlement Class. Thus, Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class, and the factor articulated in Rule 23(e)(2)(A) weighs in favor of approving the Settlement.

### B.     The Settlement Was Negotiated at Arm's-Length.

As described at length in the Entwistle Declaration, the Settlement was negotiated at arm's-length between unrelated parties, through adversarial litigation counsel and largely through a experienced mediator. (¶¶ 20-25.) Therefore, the factor articulated in Rule 23(e)(2)(B) weighs in favor of final approval of the Settlement. *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *3–4 (S.D.N.Y. July 21, 2020) (McMahon, C.J.).

### C.     The Relief Provided to the Class is Adequate, Taking into Account the Factors Set Forth in Rule 23(e)(2)(C).

The Settlement provides adequate relief to the Settlement Class, "taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

i.    "the costs, risks, and delay of trial and appeal"

Prosecuting this complex international litigation through trial and appeals would have been costly and time consuming and would carry significant risk of recovering less for the class, or nothing at all.   Among other things, trying this Action would have required extensive expert testimony on several contested issues, including falsity, loss causation, damages and market efficiency.   Courts routinely observe that these sorts of disputes – requiring dueling testimony from experts – are particularly difficult for plaintiffs to litigate.   *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited").   As discussed below in Subpoints 1-6, and in the Entwistle Declaration at ¶¶ 27-35, this case involved complicated and intricate issues related to falsity, scienter, loss causation and damages, each of which increased Plaintiffs' cost and risk.   *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable").

### a.   *Risks Related to Liability*

Plaintiffs faced significant hurdles in proving their case on liability.   Litigation of the claims alleged in this case was expected to raise complex questions concerning falsity, scienter, and loss causation that would require substantial efforts by Plaintiffs, Plaintiffs' Counsel, and Plaintiffs' experts.   Indeed, Defendants have already vigorously contested the allegations that their statements were false or misleading in connection with their motion to dismiss – submitting nearly two dozen exhibits not incorporated in the Complaint.   (¶ 29.)   The Court correctly rejected these factual arguments as premature, but Defendants would undoubtedly press them in discovery and on an anticipated motion for summary judgment. (*Id*.)   Assuming the claims survived Defendants'

motion for summary judgment, a jury trial would have required substantial factual and expert testimony, which is always uncertain. Whatever the outcome at trial, it was likely that an appeal would have been taken. All the foregoing would have posed considerable expense to the Parties and would have delayed any potential recovery for several years.  (¶¶ 27-35.)  A major challenge to prosecuting this case through motions for summary judgment and then through trial would have been the issue of disaggregation, *i.e.*, determining how much of the decline in the price of Dynagas Securities was attributable to the alleged misstatements and how much was attributable to other factors, which were either entirely distinct or arguably – but not indisputably – related. (*Id.* ¶ 32.)

Thus, there were very significant risks, had the case not settled, and no guarantee that Defendants' liability could be established. *See In re Bayer AG Sec. Litig.*, No. 03-cv-1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting "the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards."). Establishing liability would have been further complicated by the challenge of taking significant discovery in Monaco and Greece during the pandemic.  Non-parties located overseas might be unwilling or forbidden to cooperate or travel, and Plaintiffs had limited options for compelling them to do so.  (¶ 25.)  Indeed, Plaintiffs incurred nearly ten thousand dollars in expenses just to serve the Complaint upon the several foreign individual defendants who did not waive service (*id.* ¶ 67), presaging a protracted "war of attrition" through the intricacies of international law and procedure.

### b.  Risks Related to Loss Causation and Damages

Plaintiffs' allegations of loss causation, damages and market efficiency were all denied by Defendants, would be vigorously challenged in discovery, and would continue to require a significant amount of effort on the part of Plaintiffs' Counsel through trial and appeals.  "Proof of damages in complex class actions is always complex and difficult and often subject to expert

testimony." *Shapiro v. JPMorgan Chase & Co.*, 11 Civ. 8331(CM), 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014).

As to loss causation, Lead Counsel anticipates that Defendants would have argued that Lead Plaintiffs' event study is insufficient to disaggregate for only misstatement-related (actionable) inflation. Defendants would have argued, as they did on their motion to dismiss, that causation was speculative because Plaintiffs' damages model did not account for Dynagas' inability to refinance its debt on favorable terms during the relevant period, or for other operational developments. (¶ 31.)

In order for the Settlement Class to recover damages at the maximum level estimated by Lead Plaintiffs' damages expert, it would need to prevail on each and every one of the claims alleged and establish loss causation related to the alleged disclosures. The damage assessments of the Parties' trial experts would be sure to vary substantially, and expert discovery and trial would become a "battle of experts" requiring significant work on the part of Plaintiffs' Counsel. *See, e.g., FLAG Telecom*, 2010 WL 4537550, at *28 (burden in proving the extent of the class's damages weighed in favor of approving fee request).

### c.      *Risks Related to Class Certification*

Defendants would undoubtedly have raised vigorous challenges to class certification, and such disputes could well devolve into yet another battle of the experts. Additionally, class certification can be reviewed and modified at any time by the Court before final judgment and may be subject to interlocutory appellate review. Although Lead Counsel believes there are strong grounds for certifying a litigation class, as discussed in the Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (ECF 137) at 17-23, Defendants were likely to vigorously contest class certification in the absence of the Settlement. (¶ 35.) Among other things, Defendants would likely argue that certain price

declines occurred so long after the alleged corrective disclosures that either: (1) the market for the relevant Dynagas Securities was not efficient (defeating predominance); or (2) those price declines were caused by unrelated factors (dramatically slashing Plaintiffs' maximum recoverable damages). (*Id.*)  The Settlement avoids the uncertainty with respect to class certification and the risks of maintaining certification of the class through trial and on appeal.

### d.    *Appellate Risk*

Of course, even if Plaintiffs had prevailed at trial, Defendants would likely take appeals, which would have, at best, substantially delayed any recovery for the Settlement Class. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").  At worst, there is always a risk that the verdict could be reversed by the trial court or on appeal.  *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *cf. In re Apollo Grp., Inc. Sec. Litig.*, No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) (trial court overturned unanimous verdict for plaintiffs, which was later reinstated by the Ninth Circuit Court of Appeals, and judgment re-entered after denial of *certiorari* by the Supreme Court).

### e.    *Risks Related to Damages Calculations*

Although Plaintiffs would argue, in the first instance, that class-wide damages on all claims (including the Exchange Act Claims dismissed by the Court[8]) total $33.85 million, this amount represents the highest defensible estimate of damages: (1) based on market assumptions favorable to Plaintiffs; (2) without parsing out other company-specific factors contributing to the decline in the price of Dynagas Securities; and (3) without offsetting market gains for sales prior the first alleged initial disclosure. (¶ 32.)  Weighed against the costs and risks of continued litigation, the immediate recovery of $4.5 million — 13.3% of Plaintiffs' best-case scenario — is adequate. Indeed, the recovery of 13.3% of simplified tiered damages in a case with both Exchange Act Section 10(b) and Securities Act Section 11 and Section 12(a)(2) is more than double the median recovery of 5.8% in such cases found by Cornerstone Research's 2020 analysis.[9]

### f.    *Risks Related to the Collection of a Judgment*

Plaintiffs' ability to recover was also negatively colored by the fact that the Dynagas Defendants are foreign and do not maintain significant assets in the United States.  Indeed, Dynagas has repeatedly disclosed as a risk factor the possibility that investors would be unable to collect any judgment they might obtain against it.[10]

---

[8] Plaintiffs estimate that the maximum recoverable class-wide damages resulting only from the sustained claims would be $13.4 million, or $8.9 million if aftermarket purchases were excluded. (¶ 33.)

[9] *See* LAARNI T. BULAN & LAURA E. SIMMONS, SECURITIES CLASS ACTION SETTLEMENTS - 2019 REVIEW AND ANALYSIS at 7 (Cornerstone Research 2020 and Calculation of Simple Tiered Damages (previously filed in connection with Plaintiffs' motion for preliminary approval at ECF 138-2 and ECF 138-3).  Simplified tiered damages are often used as a proxy for recoverable damages where plaintiffs' damages allegations have not been subjected to adversary rebuttal or adjudication.  *Id*.

[10] Although the Underwriter Defendants are institutions with domestic assets well in excess of the damages alleged, these Defendants would only be liable for the Securities Act claims, leaving millions of dollars in potential Exchange Act recovery out of Plaintiffs' reach.

### ii.    "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"

Plaintiffs have proposed a methodology for *pro-rata* distribution of the Settlement Fund to Settlement Class members based on an arithmetic formula that measures their investment losses related to the alleged wrongdoing via the Plan of Allocation.[11]  The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants based on a function of: (i) when a Settlement Class member purchased or otherwise acquired Dynagas securities; (ii) whether and when the Settlement Class member sold or transferred his, her or its Dynagas securities; (iii) the number and type of Dynagas securities purchased/acquired and sold/transferred; (iv) the type(s) of Dynagas securities the Settlement Class member purchased or otherwise acquired during the Class Period; and (v) the market loss actually experienced by the Settlement Class member.  The Claims Administrator has confirmed the feasibility of implementing the Proposed Plan of Allocation based solely on the information Claimants are requested to provide in the Court-approved Proof of Claim Form (which was included in the mailed Notice Packets and available electronically and in hardcopy via the website maintained by the Claims Administrator). (¶ 36.)  The Claims Administrator has also agreed that the cost of administration, including the cost of effecting wire transfers or mailing paper checks to authorized claimants shall not exceed $195,000.00, excluding extraordinary unforeseen circumstances.  (ECF 138 at ¶ 9.)  Therefore, the proposed method of distribution is effective (the fairness of the proposed Plan of Allocation is discussed in Subsection D, *infra*).

---

[11] *See* Ex. 5 at Ex. A (Notice), p. 13-17 (the proposed Plan of Allocation, as mailed to Settlement Class members).

### iii.    "the terms of the proposed award of attorneys' fees . . ."

This factor of Rule 23(e)(2)(C) is discussed in Lead Counsel's contemporaneously filed Fee and Expense Application and supporting memorandum.[12]  Notably, the Settlement is in no way contingent upon any fees that may be awarded by the Court.

### iv.    "any agreement required to be identified . . ."

The only agreements made by the Parties in connection with the Settlement are the Stipulation and the confidential Supplemental Agreement concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests as set forth in the Stipulation at ¶ 37 and filed under seal at ECF 140.[13]  The Supplemental Agreement has been filed under seal at ECF 140.

### D.    The Settlement and the Proposed Plan of Allocation Treat Settlement Class Members Equitably Relative to Each Other.

Rule 23(e)(2)(D) is satisfied because the Settlement treats the Settlement Class members equitably relative to one another, distributing the Net Settlement Fund according to a proposed Plan of Allocation developed in consultation with an expert economist. (Ex. 6.)   A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *Bear Stearns*, 909 F. Supp. 2d at 270.  A plan of allocation with a "rational basis" satisfies this requirement. *FLAG Telecom*, 2010 WL 4537550, at *21; *Initial Pub. Offering*, 671 F. Supp. 2d at 497. A plan of allocation that reimburses class members based on the relative strength and value of their claims

---

[12] Lead Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards Pursuant to 15 U.S.C. §78u-4(A)(4).

[13] It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class.

is reasonable. *See IMAX*, 283 F.R.D. at 192. However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  The proposed Plan of Allocation, which was developed by Lead Counsel with the assistance of a damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class members that submit valid Proof of Claim Forms. The Plan of Allocation is set forth in full in the Notice. (*See* Ex. 5 at Ex. A p. 13-19.) The Plan of Allocation takes into account the amount of alleged artificial inflation in the various Dynagas Securities at the times when the Settlement Class members purchased and sold those Securities, as estimated by Lead Counsel's damages expert based on the application of a commonly accepted methodology to the allegations contained in the Complaint and publicly available market data. (*See* Ex. 6 at ¶¶ 6-10.)  The Plan of Allocation also considers the actual market losses experienced by Settlement Class members by capping recognized losses (which are otherwise inflation based) at the actual out-of-pocket losses experienced, preventing some Settlement Class members from experiencing a windfall at the expense of others.

The Plan of Allocation also appropriately calculates losses related to purchases of Dynagas Series B Preferred Units, which are subject to both Securities Act claims and Exchange Act claims, based on the ***greater*** of their market loss (Securities Act) and that their inflation-based loss (Exchange Act), subject to out-of-pocket loss limitations.  Finally, the Plan of Allocation appropriately adjusts the inflation-based recognized loss relating to Exchange Act claims downward by 25%, to account for the fact that these claims have previously been dismissed by the Court.  In Lead Counsel's judgment, the anticipated challenges involved in re-pleading and ultimately proving these claims, which require proof of an intent to deceive, rendered these claims less likely to result in recovery following trial than the Securities Act claims, which survived the

motion to dismiss and do not require proof of intentional deception.  In other words, Lead Counsel determined that this adjustment is equitable because it recognizes the relatively stronger litigation position with respect to the Securities Act claims and avoids undue dilution of recovery on these claims.  Lead Counsel notes that the Plan of Allocation and the 25% discount to Exchange Act Claims was explicitly approved by all Plaintiffs, including a Plaintiff that only purchased the Series B Preferred Units (the subject of the Securities Act Claims) (Mr. Braun), and two Plaintiffs that did not incur losses on Series B Preferred Units (and can only recover based on Exchange Act claims) (FNY and Mr. Dunlop).  Accordingly, the proposed Plan of Allocation fairly and rationally allocates the proceeds of this Settlement among the Settlement Class.

For these reasons, Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (same).  Moreover, as of September 29, 2021, 20,783 copies of the Notice, which, as noted above, contains the Plan of Allocation and advises Settlement Class members of their right to object to the proposed plan, have been sent to potential Settlement Class members and their nominees and no objections and just one request for exclusion have been received. (¶ 41; Ex. 5 at ¶¶ 18, 20.)

## III.   The Settlement Has the Support of Lead Plaintiffs and Lead Counsel and Has Been Well Received by the Settlement Class.

In the judgment of Lead Counsel, the Settlement, which provides a certain and immediate cash benefit of several million dollars, is in the best interests of the Settlement Class.  Such judgment by a law firm highly experienced in securities class action litigation is entitled to "great weight." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL

1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom, Arbuthnot v. Pierson*, 607 F. App'x 73 (2d

Cir. 2015); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666,

at *2 (S.D.N.Y. Mar. 24, 2014); *accord, In re NASDAQ Market-Makers Antitrust Litig.*, 187

F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . . to the

recommendations of counsel, who are most closely acquainted with the facts of the underlying

litigation"). Plaintiffs took an active role in supervising this litigation, as envisioned by the

PSLRA, and endorses the Settlement. *See* Ex. 7, Ex. 8, Ex. 9 and Ex. 10 (Plaintiffs' declarations).

A settlement reached with the support of appropriately selected lead plaintiffs "is entitled to an

even greater presumption of reasonableness." *In re EVCI Career Colleges Holding Corp. Sec.*

*Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Courts in the Second Circuit also consider the reaction of settlement class members in

response to an approved notice program. *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 266-67; *FLAG*

*Telecom*, 2010 WL 4537550, at *16; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL

01695(CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007). Here, the settlement has been well

received by the Settlement Class. Pursuant to the Preliminary Approval Order the Court-appointed

Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), has mailed copies of the Notice and Proof

of Claim form to potential Settlement Class members and beneficial purchasers holding Dynagas

securities in street name on behalf of potential Settlement Class members. (Ex. 5 at ¶¶ 5-6.)[14] As

of September 29, 2021, A.B. Data has mailed 20,783 copies of the Notice and Proof of Claim Form

to potential Settlement Class members. (Ex. 5 at ¶ 9.) In addition, on July 15, 2021, A.B. Data

published the Summary Notice in *The Wall Street Journal* and submitted it to *PR Newswire*, a

---

[14] Exhibit 5 to the Entwistle Declaration is the Declaration of Patty Nogalski Regarding (I) Mailing
of Notice and Proof of Claim Form; (II) Publication of Summary Notice; (III) Call Center Services;
(IV) The Settlement Website; and (V) Requests for Exclusion and Objections Received to Date.

nationwide wire service which published it electronically on July 16, 2021. (Ex. 5 at ¶ 12.) The Notice and other documents are also posted on a website maintained by A.B. Data dedicated to this Action (www.DynagasSecuritiesLitigation.com) to assist potential Settlement Class members, which will continue to be maintained and updated as appropriate. (Ex. 5 at ¶¶ 15-16.) A.B. Data also maintains a toll-free telephone number allowing Settlement Class members to call and speak with a live operator regarding the status of the Settlement and/or obtain answers to any questions they may have. (Ex. 5 at ¶¶ 13-14.)

The Notice set out the essential terms of the Settlement, Lead Counsel's Fee and Expense Application, and the proposed Plan of Allocation and informed potential Settlement Class members of, among other things, their right to object to any aspect of the Settlement, as well as the procedure for submitting Proof of Claim Forms, and for requesting exclusion from the Settlement Class. While the deadline set by the Court for Settlement Class members to object or request exclusion (October 15, 2021) has not yet passed, to date, no objections have been received and there have been only one request for exclusion. (¶ 41; Ex. 5 at ¶¶ 18, 20.) These further supports granting final approval of the proposed Settlement. *See, e.g., In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2009 WL 2025160, at *2 (S.D.N.Y. July 10, 2009) (no objections by class members following preliminary approval supports granting final approval). Lead Counsel will respond to any objections hereafter received in reply papers.

## IV.  Notice to the Class Satisfied the Requirements of Rule 23 and Due Process.

Lead Plaintiffs have provided the Settlement Class with notice of the proposed Settlement that satisfied all the requirements of Rule 23(e) and due process, which require that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with

the proceedings." *Wal-Mart Stores*, 396 F.3d at 114. Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfied these standards.

The Notice provided all information necessary for Settlement Class members to make an informed decision regarding the Settlement, the Fee and Expense Application and the Plan of Allocation. The Notice informed Settlement Class members of, among other things: (1) the amount of the Settlement; (2) the reasons why the Parties are proposing the Settlement; (3) the estimated average recovery per Dynagas security; (4) the maximum amount of attorneys' fees and expenses that will be sought and the possibility that Plaintiffs would seek reimbursement for their time and expenses in connection with their representation of the proposed class in accordance with the PSLRA; (5) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from Settlement Class members concerning matters contained in the Notice; (6) the right of Settlement Class members to object to the Settlement; (7) the binding effect of a judgment on Settlement Class members; and (8) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. § 78u-4(a)(7). The Notice also contained the Plan of Allocation and provided Settlement Class members with information about how to submit a Proof of Claim form in order to be eligible to receive a distribution from the Net Settlement Fund.

A.B. Data has mailed more than twenty thousand Notices (including Proof of Claim Forms) to potential Settlement Class members or their nominees. (Ex. 5 at ¶ 10.) These potential Settlement Class members were identified by the Company's transfer agent as well as brokerage firms, banks, institutions and other third-party nominees holding Dynagas securities in street name. (Ex. 5 at ¶¶ 5-8.) The Court-approved summary notice was also published on *PR Newswire*, a national wire service, and in *The Wall Street Journal*. (Ex. 5 at ¶ 12.)  A.B. Data maintains a toll-free telephone number allowing Settlement Class members to call and speak with a live operator regarding the status of the Settlement and/or obtain answers to any questions they may have. (Ex. 5

at ¶¶ 13-14.)  Finally, A.B. Data maintains a website dedicated to this Action (www.Dynagas SecuritiesLitigation.com) to assist potential Settlement Class members containing the Notice, summary notice and other important documents related to the Action and the proposed Settlement. (Ex. 5 at ¶¶ 15-16.)

This combination of individual first-class mail to those who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmitted over a newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

**V.    Final Certification of the Settlement Class Is Warranted Pursuant to Fed. R. Civ. P. Rules 23(a) and 23(b)(3).**

Plaintiffs incorporate by reference their arguments in support of certification of a Settlement Class stated in their Memorandum in Support of Preliminary Approval. ECF 137 at 17-23.  Plaintiffs further note the lack of any objection or opposition to final certification of a Settlement Class following a robust notice program and the fact that only one recipient of notice has asked to be excluded from the Settlement Class.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate; approve the Plan of Allocation as fair, reasonable, and adequate; and grant such other and further relief as the Court deems just and proper.  A proposed Final Judgment and Order of Dismissal with Prejudice, substantially in the form of Exhibit B to the Stipulation, and a separate proposed order approving the Plan of Allocation will be submitted prior to the Settlement Hearing.

DATED:  October 1, 2021

Respectfully Submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
**ENTWISTLE & CAPPUCCI LLP**
Frost Bank Tower
401 Congress Avenue, Suite 1170
Austin, Texas 78701
Telephone:  (512) 710-5960
Facsimile: (212) 894-7272
aentwistle@entwistle-law.com

-and-

Robert N. Cappucci
Brendan J. Brodeur
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272
rcappucci@entwistle-law.com
bbrodeur@entwistle-law.com

*Counsel for Plaintiffs FNY Partners Fund
LP, Mario Epelbaum, Scott Dunlop and
Irving Braun and Lead Counsel for the
Class*

Curtis V. Trinko
**LAW OFFICES OF CURTIS V. TRINKO**
39 Sintsink Drive West
First Floor
Port Washington, New York 11050
Telephone: (212) 490-9550
Facsimile: (212) 986-0158
ctrinko@trinko.com

*Additional Counsel for Plaintiff Irving
Braun*