**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE DYNAGAS LNG PARTNERS LP SECURITIES LITIGATION | No. 19-cv-04512 (AJN) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND AWARDS PURSUANT TO 15 U.S.C. §78u-4(a)(4)**

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT....................................................................................................................3

I.      A Reasonable Percentage of the Fund Recovered is the Appropriate Method for
        Awarding Attorneys' Fees in Common Fund Cases. .........................................................3

II.     A Fee of 25% is Consistent with Fees Awarded in Comparable Cases. ...........................4

III.    The Requested Fee is Reasonable in Light of the Factors Applied Within this
        Circuit. ..............................................................................................................6

        A.      Plaintiffs' Counsel has Devoted Substantial Time and Labor to the Action..........6

        B.      The Magnitude and Complexity of the Action Support the Requested Fee...........7

        C.      The Risks of the Litigation Support the Requested Fee.......................................7

        D.      The Quality of Representation Supports the Requested Fee. ...............................9

        E.      The Requested Fee is Reasonable in Relation to the Settlement.........................10

        F.      Public Policy Considerations Support the Requested Fee. ..................................10

        G.      The Requested Attorneys' Fees Easily Satisfy a Lodestar Cross-Check. .............11

IV.     Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the
        Benefit Obtained.................................................................................................13

V.      The Reaction of the Settlement Class to Date Supports the Requested Fee....................14

VI.     Application for Awards to Lead Plaintiff and Additional Named Plaintiff.....................15

CONCLUSION.................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ......................................................................8

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ...................................................................................10

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ...................................................................................10

*Bentley v. Legent Corp.*,
    849 F. Supp. 429 (E.D. Va. 1994),
     *aff'd sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) .................8

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .....................................................................................3

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
    No. 1:12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 15, 2015) .......15

*City of Providence v. Aeropostale, Inc.*,
    No. 11- cv-7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
    *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) ...................4, 7, 11

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ...............................................................15

*Enriquez v. Nabriva Therapeutics PLC*,
    No. 19 Civ. 4183 (VM) (S.D.N.Y. May 14, 2021) ........................................5

*Gauquie v. Albany Molecular Rsch., Inc.*,
    No. 14-cv-06637(FB) (SMG) (E.D.N.Y. Oct. 13, 2017) ...................................5

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998) ......................................................................12

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ..........................................................................6

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .........5

*Gwozdzinnsky v. Sandler Assocs.*,
    159 F.3d 1346 (2d Cir. 1998) ......................................................................4

*Hayes v. Harmony Gold Mining Co.*,

No. 08 CIV. 03653 (BSJ)(MHD), 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011),
*aff'd*, 509 F. App'x 21 (2d Cir. 2013) ............................................................................5

*Hicks v. Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................11

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)
*aff'd*, 272 F. App'x 9 (2d Cir. 2008) ............................................................................10

*In re Am. Bank Note Holographics, Inc., Sec. Litig*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................8

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04 Civ. 8141 (DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010)
*aff'd*, 452 F. App'x 75 (2d Cir. 2012) ..........................................................................15

*In re Apple Comput. Sec. Litig.*,
No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .............................9

*In re BankAtlantic Bancorp, Inc.*,
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) *aff'd sub nom.*
*Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) ..........................9

*In re Blech Sec. Litig.*,
No. 94 Civ. 7696(RWS), 2000 WL 661680 (S.D.N.Y. May 19, 2000) .............................4

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895(DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................14

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825(NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..............13

*In re Deutsche Telekom AG Sec. Litig.*,
No. 00-CV-9475 (NRB), 2005 WL 7984326 (S.D.N.Y. June 9, 2005) ..........................13

*In re FLAG Telecom Holdings, Ltd.*,
No. 02-cv 3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...............................passim

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .....................5, 12

*In re IMAX Sec. Litig.*,
No. 06 Civ. 6128 (NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) ...........................4

*In re Marsh & McLennan, Co., Inc. Sec. Litig.*,
No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..........................10

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................13

*In re Telik*, *Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................7, 12

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 1695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ....................10, 15

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..........................................................11

*Landy v. Amsterdam*,
    815 F.2d 925 (3d Cir. 1987) ...................................................................8

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..........................................................13

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ..........................................................................12

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................5

*Pearlman v. Cablevision Sys. Corp.*,
    No. CV 10-4992 (JS)(AKT), 2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019) ....................5

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ................................................................8

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) .......................................................15, 16

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
    No. 94-CV-0403(JG), 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) ...........................15

*Stefaniak v. HSBC Bank USA, N.A.*,
    No. 1:05-CV-720 S, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ...........................5

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd*
    No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .........................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..........................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................4, 13

**Statutes**

15 U.S.C. §78u.................................................................................................................15

Court-appointed lead counsel, Entwistle & Cappucci LLP ("Entwistle & Cappucci" or "Lead Counsel"), submits this memorandum of law in support of its motion seeking: (i) an award of attorneys' fees in the amount of $1,125,000.00, which is 25% of the Settlement Amount; reimbursement of $91,820.88 in litigation expenses that it and additional plaintiffs' counsel Levy & Korsinsky LLP and The Law Offices of Curtis V. Trinko (together with Lead Counsel, "Plaintiffs' Counsel") reasonably incurred in prosecuting this securities class action (the "Action"); and awards pursuant to 15 U.S.C. §78u-4(a)(4) to each of Plaintiffs FNY Partners Fund, LP, Mario Epelbaum, Scott Dunlop and Irving Braun of $2,500 each.[1]

## PRELIMINARY STATEMENT

The proposed Settlement now before the Court provides for the full resolution of the claims against Dynagas LNG Partners LP ("Dynagas" or the "Company") and defendants Dynagas Holding Ltd., Dynagas GP, LLC, George J. Prokopiou, Tony Lauritzen, Michael Gregos, Evangelos Vlahoulis, Alexios Rodopoulos, Levon A. Dedegian, UBS Securities LLC, Stifel, Nicolaus & Company, Incorporated, Morgan Stanley & Co. LLC and B. Riley FBR, Inc. (collectively with Dynagas, "Defendants") in this Action, in exchange for a cash payment of $4,500,000.00 on the terms set forth in the Stipulation. For the reasons set forth in Plaintiffs' memorandum of law in support of approval of the Settlement, filed contemporaneously herewith, the Settlement represents a favorable result for the Settlement Class, and Lead Counsel's efforts in obtaining these results warrant the requested fee award.

---

[1] Capitalized terms which are not defined in this memorandum have the same meaning as in the Stipulation and Agreement of Settlement dated and filed on May 21, 2021 (ECF 135, the "Stipulation").

As detailed in the Entwistle Declaration[2] at ¶¶ 12-19, Lead Counsel conducted an extensive investigation in connection with filing the original and amended complaints.  Lead Counsel then vigorously opposed Defendants' motion to dismiss, which involved a total of one hundred pages of briefing plus appendices and dozens of exhibits, resulting in a partial denial.  (¶¶ 15-16.)[3] Lead Counsel fully prepared for oral argument on the motion, which Defendants had requested.  (*Id.*) While the motion to dismiss was pending, Lead Counsel obtained the addresses of the individual defendants, via contested interrogatories, after Defendants' attorneys declined to accept or waive service on their behalf, then oversaw the translation of the Complaint into Greek and service of process upon all but one of the individual defendants, through the Hague Convention and during the COVID-19 pandemic. (¶ 17.)  Following the Court's order denying in part and granting in part Defendants' motion to dismiss, Lead Counsel prepared and exchanged initial disclosures and negotiated a case schedule and protocols for the exchange of electronically stored and confidential information. (¶ 19.)

While the Parties litigated the Action, and without slowing the pace of their efforts in that regard, they began to explore whether it was possible to reach a negotiated resolution. (¶ 20.) These efforts included two full-day video-telephonic mediation sessions before Hon. Jose L. Linares (ret.) and the submission of confidential mediation briefs and damages analyses in connection therewith.  Following the second such mediation session, the Parties all accepted a mediator's proposal to settle this Action for $4,500,000.00. (¶ 22.)

---

[2] Declaration of Andrew J. Entwistle in Support of (i) Plaintiffs' Final Approval Motion and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards Pursuant to 15 U.S.C. §78u-4(a)(4), filed contemporaneously herewith.

[3] "¶ __" herein refers to the Entwistle Declaration. "Ex. __" herein refers to the exhibits to the Entwistle Declaration.

Against this backdrop, Lead Counsel requests a fee of 25% of the Settlement Amount ($1,125,000) for itself and other Plaintiffs Counsel (with whom Lead Counsel diligently coordinated to avoid duplication of efforts). The requested fee represents a fractional or "negative" multiplier of 0.35 times Plaintiffs Counsel's aggregate lodestar of $3,216,686. In other words, Lead Counsel seek fees significantly lower than Plaintiffs' Counsel's reasonable fee would be on an hourly basis. As demonstrated below, the request for 25% of the Settlement Amount is well within the range of attorneys' fees typically awarded in securities class actions and is thoroughly supported by both case law and the facts of this case. Lead Counsel also seek reimbursement of their out-of-pocket litigation expenses in the amount of $91,820.88, which are billed at the cost actually incurred and paid by Lead Counsel, and which include expert and mediator fees, as well as fees for electronic research and foreign service of process. Lead Counsel's request pursuant to 15 U.S.C. §78u-4(a)(4) in the amount of $2,500 to each of the four Plaintiffs ($10,000 total) — in recognition of their assistance in prosecuting this Action on behalf of investors similarly situated — is also appropriate and supported by case law. Therefore, and as elaborated below, Lead Counsel respectfully submits that the requested fees, expenses and PSLRA awards should be approved.

## **ARGUMENT**

### I.    **A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases.**

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). Both the services provided and the recovery achieved in this case are substantial.

Additionally, Courts have recognized that, in addition to compensating counsel for services rendered, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale, Inc.*, No. 11- cv-7132 (CM)(GWG), 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015).

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Gwozdzinnsky v. Sandler Assocs.*, 159 F.3d 1346 (2d Cir. 1998). Indeed, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005);[4] *see also In re Blech Sec. Litig.*, No. 94 Civ. 7696(RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) ("This court . . . continues to find that the percentage of the fund method is more appropriate than the lodestar method for determining attorney's fees in common fund cases."); *In re IMAX Sec. Litig.,* No. 06 Civ. 6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012) ("the percentage method continues to be the trend of district courts in the Second Circuit").

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method in determining a reasonable attorneys' fee here.

## II.     A Fee of 25% is Consistent with Fees Awarded in Comparable Cases.

Many courts within the Southern District of New York have previously awarded fees of 25% or more in comparably complex securities class actions. *See, e.g.*, *Mohney v. Shelly's Prime*

---

[4] All internal quotations and citations are omitted unless otherwise stated.

*Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (collecting cases, awarding attorneys' fee of 33% of $2.9 million settlement amount, and finding fee percentage "typical in class action settlements in the Second Circuit"); *Enriquez v. Nabriva Therapeutics PLC*, No. 19 Civ. 4183 (VM) (S.D.N.Y. May 14, 2021) (awarding $33^{1}/3$% of $3,000,000 settlement amount); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *1 (S.D.N.Y. Dec. 18, 2019) (awarding one-third of $7.5 million settlement fund); *Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS)(AKT), 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019) ("it is very common to see 33% contingency fees in cases with funds of less than $10 million"); *Gauquie v. Albany Molecular Rsch., Inc.*, No. 14-cv-06637(FB) (SMG) (E.D.N.Y. Oct. 13, 2017) (approving award of one-third of $2.868 million settlement); *In re Hi-Crush Partners L.P. Sec. Litig.,* No. 12-Civ-8557 (CM), 2014 WL 7323417, at *11-12 (S.D.N.Y. Dec. 19, 2014) (collecting cases and awarding  of one-third of $3.8 million settlement).[5] Accordingly, the 25% fee requested here is consistent with fees awarded this District and the other courts within the Second Circuit.  Lead Counsel's request for a fee of 25% of the Settlement Amount is also in line with fees requested and awarded in securities class actions nationwide.[6]

---

[5] *See also Hayes v. Harmony Gold Mining Co*., No. 08 CIV. 03653 (BSJ)(MHD), 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (approving attorneys' fee of one-third of the $9 million settlement amount). A compendium of unpublished opinions cited herein are attached the Entwistle Declaration as Exhibit 1.

[6] Lynn A. Baker, Michael A. Perino & Charles Silver, IS THE PRICE RIGHT? AN EMPIRICAL STUDY OF FEE-SETTING IN SECURITIES CLASS ACTIONS, 115 Colum. L. Rev. 1371, at 1394-95 (2015).

III.    **The Requested Fee is Reasonable in Light of the Factors Applied Within this Circuit.**

The Second Circuit has set forth the following criteria that district courts should consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage common fund approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). As discussed below, these factors support Lead Counsel's requested fee.

A.    **Plaintiffs' Counsel has Devoted Substantial Time and Labor to the Action.**

As set forth in greater detail in the Entwistle Declaration at ¶ 12-19, Plaintiffs' Counsel thoroughly investigated the facts by scouring the public record, including six years of SEC filings, press releases and earnings calls and published interviews.  Plaintiffs' Counsel then vigorously opposed Defendants' motion to dismiss, with partial success, after which Plaintiffs' Counsel prepared an aggressive discovery plan that accounted for the realities that much of the relevant information remained overseas and the COVID-19 pandemic would complicate its retrieval and presentation to the Court.  Plaintiffs' Counsel also expended significant time engaging in settlement discussions, including preparing for and attending two video-telephonic mediation sessions.  (¶¶ 20-22)

In connection with this work, Plaintiffs' Counsel spent a total of 3,227 hours with a lodestar value of $3,216,686. (¶ 58.)  At all times, Lead Counsel took care to staff the matter efficiently and avoided duplication of effort, both internally and in coordination with additional Plaintiffs' Counsel. (¶¶ 54, 59.) Accordingly, it is respectfully submitted that the time and labor dedicated to the litigation support the fee request.

**B.      The Magnitude and Complexity of the Action Support the Requested Fee.**

Courts routinely recognize that securities class action litigation is "notably difficult and notoriously uncertain." *City of Providence,* 2014 WL 1883494, at *5; *In re FLAG Telecom Holdings, Ltd.*, No. 02-cv 3400, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010).  As discussed in the Entwistle Declaration, this Action involved difficult, complex and hotly disputed issues relating to loss causation, damages and disaggregation. Prosecuting the claims of the Settlement Class required skill and dedication.  Indeed, Defendants implicitly recognized this complexity by collectively retaining both WilmerHale and Skadden as litigation counsel, two of the country's preeminent law firms, both of which have extensive specialized expertise in the relevant areas of law.  Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

**C.      The Risks of the Litigation Support the Requested Fee.**

 "Courts have repeatedly recognized that 'the risk of litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008).  While Lead Counsel is confident in its ability to prove Plaintiffs' sustained claims and to effectively rebut Defendants' defenses and remains optimistic about its ability to re-plead and ultimately prove the dismissed claims, Lead Counsel recognizes that proving liability and damages for the Class was far from certain. The likelihood of a recovery was further complicated because the Company's primary operations, assets, documents and witnesses are located overseas.  The primary risks are discussed below. For a more detailed discussion, the Court is respectfully referred to the Entwistle Declaration at ¶¶ 27-35 and the contemporaneously filed Memorandum of Law in Support of Plaintiffs' Motion for

Final Approval of Class Action Settlement and Plan of Allocation at Point II(C).  In sum, Lead Counsel spent significant time and funds prosecuting an action for which it might recover very little, or nothing at all, due to circumstances beyond its ability to control or predict.

Despite the uncertainties concerning the outcome of the case, Plaintiffs' Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield little or no recovery and leave Plaintiffs' Counsel uncompensated for their significant investment of time and expenses.  Courts within the Second Circuit recognize that such risk favors an award of attorneys' fees. *See, e.g.*, *In re Am. Bank Note Holographics, Inc., Sec. Litig*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award").

Unlike counsel for defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expenses and would have received no compensation had this case not achieved a recovery.  From the outset, Plaintiff's Counsel understood that they were embarking on a complex, expensive, and lengthy endeavor with no guarantee of ever being compensated. In undertaking that responsibility, Plaintiffs' Counsel were obligated to ensure that sufficient attorney and professional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the costs entailed.  Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingent basis, expended thousands of hours and millions of dollars in expenses and time and received nothing for their efforts.[7] This case could

---

[7] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp*., 849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom. Herman v. Legent Corp*., 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of

have been dismissed like so many others on summary judgment, or if class certification were denied, resulting in no recovery for the class, no fee for Plaintiffs' Counsel and no reimbursement of litigation expenses advanced. Accordingly, the contingency risk in this case supports the requested attorneys' fee.

### D.        The Quality of Representation Supports the Requested Fee.

The high quality of the representation Plaintiffs' Counsel provided also supports the reasonableness of the requested fee. Since the passage of the PSLRA, Lead Counsel Entwistle & Cappucci and additional plaintiffs' counsel Levi & Korsinsky have each been approved by courts to serve as lead counsel in numerous notable securities class actions throughout the United States. *See* Ex. 2; Ex. 4 at Ex. A thereto.  Additional Plaintiffs' Counsel Curtis V. Trinko has been actively engaged in complex commercial and shareholder litigation for thirty-eight years, recovering millions of dollars for shareholders, including as co-lead counsel for a shareholder class that recovered $9.2 million for breach of fiduciary duty in *In re Revlon, Inc. Shareholders Litigation*, Case No. 4578-VCL (Del. Ch.) (2013). (Ex. 3 at Ex. A thereto.)  Plaintiffs' Counsel brought to bear their many years of collective experience for the benefit of the Settlement Class in this Action.

Plaintiffs' Counsel's ability to obtain a favorable result against skilled adversaries also evidences the high quality of their work. *See FLAG Telecom*, 2010 WL 4537550, at *28; *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *20 (S.D.N.Y. May 14, 2004).  Defendants are represented by Wilmer Cutler Pickering Hale and Dorr LLP and Skadden, Arps, Slate, Meagher & Flom LLP, first rate firms highly skilled in securities litigation

---

litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298, at *1- 2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motion); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following jury verdict for plaintiffs), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

and with significant resources.  Faced with this formidable opposition, Plaintiffs' Counsel were nevertheless able to develop Plaintiffs' case and resolve the Action on terms favorable to the Settlement Class. *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).

**E.    The Requested Fee is Reasonable in Relation to the Settlement.**

"In determining whether the Fee Application is reasonable in relation to the settlement amount, the Court compares the Fee Application to fees awarded in similar securities class-action settlements of comparable value." *In re Marsh & McLennan*, *Co., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009); *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695(CM), 2007 WL 4115808, at *4 (S.D.N.Y. Nov. 7, 2007) (noting that the fee awarded is "consistent with fees awarded in a similar class actions settlements of comparable value"). As discussed above, the fees requested here are well within the range of percentage fee awards in comparable securities class action cases. *See* Point II, *supra*, collecting similar cases awarding fees of more than 25% of the class recovery.

**F.    Public Policy Considerations Support the Requested Fee.**

The federal securities laws are remedial in nature and, to effectuate their purpose of protecting investors, it is respectfully submitted that courts should encourage meritorious private lawsuits such as this one. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).  The Supreme Court has emphasized that private securities actions provide "a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).

Courts within the Second Circuit have reasoned that if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *FLAG Telecom*, 2010 WL 4537550, at *29. Specifically, "[i]n order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005)); *see also Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

It is respectfully submitted that lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved.  Public policy therefore supports awarding Lead Counsel's fee request.

### G.    The Requested Attorneys' Fees Easily Satisfy a Lodestar Cross-Check.

To ensure the reasonableness of a fee awarded under the percentage method, the Second Circuit encourages a "crosscheck" against counsel's lodestar. *See City of Providence*, 2014 WL 1883494, at *13.  Under the lodestar method, a court engages in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each timekeeper spent on the case by each person's reasonable hourly rate, and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the

result obtained, and the quality of the attorney's work. *See, e.g., FLAG Telecom*, 2010 WL 4537550, at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagements, the skill of the attorneys, and other factors"). Performing the lodestar cross-check here results in a *negative* multiplier, and therefore confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Plaintiffs' Counsel has expended a total of 3,227 hours in the prosecution of this Action for a lodestar of $3,216,686 at current hourly rates. (*See* ¶ 58.)[8] The hourly rates of Plaintiffs' Counsel here range from $850 to $1,575 for partners, $500 to $750 for other attorneys, and $145 to $425 for professional staff. (¶ 55; Ex. 3; Ex. 4). "In determining the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have continually held that the standard is the rate charged in the community where the services were performed for the type of services performed by counsel." *Telik,* 576 F. Supp. 2d at 589. In fact, "[p]erhaps the best indicator of the 'market rate' in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *Id*. It is respectfully submitted that the hourly rates for attorneys and professional staff above are reasonable and customary within the securities class action bar.

Whereas courts in the Second Circuit routinely award fees several times *more* than plaintiffs' counsel's lodestar (*FLAG Telecom*, 2010 WL 4537550, at *26), here, the requested fee award is less than Plaintiffs' Counsel's lodestar, resulting in a multiplier that is less than one, or

---

[8] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *Hi-Crush*, 2014 WL 7323417, at *15 (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *see also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (similar); *Telik,* 576 F. Supp. 2d at 589 n.10 (similar).

"negative." Thus, the amount of attorneys' fees requested by Lead Counsel on behalf of Plaintiffs' Counsel ($1,125,000) represents a fractional "negative" multiplier of 0.35 times (35% of) their lodestar. Such a multiplier is, of course, well within the parameters used throughout district courts in the Second Circuit and constitutes additional evidence that the requested fee is reasonable. Indeed, awards of *several times more* than counsel's lodestar are commonly awarded within the Second Circuit. *See, e.g., Wal-Mart Stores*, 396 F. 3d at 123 (affirming a multiplier of 3.5); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825(NGG)(RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) (approving fee of 25% of a $165 million settlement, resulting in a 2.78 multiplier); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 359 (E.D.N.Y. 2010) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *In re Deutsche Telekom AG Sec. Litig.,* No. 00-CV-9475 (NRB), 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (approving a fee of 28% of $120 million settlement, resulting in a 3.96 multiplier); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee of one-third of cash-and-securities settlement, valued at approximately $11.5 million, resulting in an estimated 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

Accordingly, it is respectfully submitted that the requested fee would be reasonable, whether calculated as a percentage-of-the-fund or in relation to Plaintiffs' Counsel's lodestar.

## IV.   Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained.

Lead Counsel's fee application includes a request for reimbursement of litigation expenses to Plaintiffs' Counsel, which were reasonably incurred and necessary to prosecute the Action and are billed at the actual out-of-pocket cost expended by Plaintiffs' Counel. Plaintiffs' Counsel incurred a total of $ 91,820.88 in litigation expenses as set forth in the Entwistle Declaration.

(¶ 67.)   This amount is comfortably below the $150,000 maximum expenses that the Notice informed potential Settlement Class Members that Lead Counsel may apply for, and to which to date there have been no objections.  (¶ 70; Ex. 5 at Exhibit A thereto at p. 4.)  Of the total amount of requested expenses, over one third was expended on expert and consultant fees whose assistance was critical in addressing the complex issues of damages, market efficiency and disaggregation which led to the Parties agreeing to the proposed Settlement.  The other expenses for which Plaintiffs' Counsel seek payment are expenses that were necessarily incurred in this securities class action litigation, such electronic research ($15,550.00), mediation fees ($28,148.38), and process server's fees ($10,287.29, including certified translations and international service). (¶ 67.)  These expenses are properly recoverable by counsel.  *See In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation…'"). Plaintiffs' Counsel do not seek reimbursement for routine overhead expenses such as photocopying and telephone calls.  (¶ 67.)

## V.     The Reaction of the Settlement Class to Date Supports the Requested Fee.

The reaction of the Settlement Class to date also supports the fee request. Through September 29, 2021, the Claims Administrator has mailed 20,783 Notices (including Proof of Claim Forms) to potential Settlement Class members or their nominees informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and up to $150,000 in expenses. (Ex. 5 at Exhibits A and  B thereto.)  While the time to object to the fee and expense application does not expire until October 15, 2021, to date no objections have been received. (¶ 70.) If any objections should be timely submitted, Lead Counsel will address them in reply papers.

**VI.      Application for Awards to Lead Plaintiff and Additional Named Plaintiff.**

Lead Counsel also moves for modest awards of $2,500 to each of the four Plaintiffs for the time they spent representing the class and assisting in the prosecution of this Action. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

"Such awards are not uncommon and can serve an important function in promoting class action settlements." *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-CV-0403(JG), 2002 WL 2003206, at *5 (E.D.N.Y. Aug. 1, 2002). These awards are "meant to compensate the named plaintiff for . . . any additional effort expended by the individual for the benefit of the lawsuit." *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001). *See also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 187-188 (S.D.N.Y. 1997) (approving PSLRA award for class plaintiff who "provided valuable assistance to counsel in prosecuting the litigation"). *See also City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 15, 2015) (awarding $16,800.11 to lead plaintiff and additional named plaintiffs "to compensate them for their reasonable costs and expenses directly relating to their representation of the Class"); *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"), *aff'd*, 452 F. App'x 75 (2d Cir. 2012); *FLAG Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to lead plaintiff for time spent in the litigation); *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "routine[]" in this Circuit).

Here, Plaintiffs actively participated in litigating the Action by, among other things, (i) regularly communicating with counsel concerning the Action; (ii) remaining fully informed about

developments in the case; (iii) reviewing pleadings and materials filed with the Court, asking questions and providing comment; (iv) monitoring the progress of the case and staying informed about case developments; (v) actively participating in the settlement discussions via telephone. *See* Ex. 7, Ex. 8, Ex. 9 and Ex. 10 (Plaintiffs' declarations). Plaintiffs collectively spent approximately 147 hours assisting with the prosecution of this Action which they would have otherwise spent on other activities. *Id*.

In light of the foregoing, Lead Counsel respectfully submits that a $2,500 PSLRA award to each Plaintiff is reasonable under the circumstances. *See Roberts*, 979 F. Supp. at 188 (awarding between $2,500 and $85,000 to plaintiffs, depending on extent of participation in the action).

## <u>CONCLUSION</u>

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 25% of the Settlement Amount ($1,125,000) and $91,820.88 in litigation expenses; award each Plaintiff $2,500 under 15 U.S.C. §78u-4(a)(4); and grant such other and further relief as the Court deems just and proper.   A proposed order is being contemporaneously submitted as an exhibit to the Notice of Lead Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards Pursuant to 15 U.S.C. §78u-4(a)(4).

DATED:  October 1, 2021                    Respectfully Submitted,

                                           */s/ Andrew J. Entwistle*
                                           Andrew J. Entwistle
                                           **ENTWISTLE & CAPPUCCI LLP**
                                           Frost Bank Tower
                                           401 Congress Avenue, Suite 1170
                                           Austin, Texas 78701
                                           Telephone:  (512) 710-5960
                                           Facsimile: (212) 894-7272
                                           aentwistle@entwistle-law.com

                                           -and-

                                           Robert N. Cappucci
                                           Brendan J. Brodeur
                                           230 Park Avenue, 3rd Floor
                                           New York, NY 10169
                                           Telephone:  (212) 894-7200
                                           Facsimile:  (212) 894-7272
                                           rcappucci@entwistle-law.com
                                           bbrodeur@entwistle-law.com

                                           *Counsel for Plaintiffs FNY Partners Fund
                                           LP, Mario Epelbaum, Scott Dunlop and
                                           Irving Braun and Lead Counsel for the
                                           Class*