**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE DYNAGAS LNG PARTNERS LP SECURITIES LITIGATION | No. 19-cv-04512 (AJN) |

**DECLARATION OF ANDREW J. ENTWISTLE IN SUPPORT OF**
**(I) PLAINTIFFS' FINAL APPOVAL MOTION[1] AND (II) LEAD COUNSEL'S MOTION**
**FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION**
**EXPENSES AND AWARDS PURSUANT TO 15 U.S.C. §78u-4(A)(4)**

I, Andrew J. Entwistle, hereby declare as follows:

1.      I am a partner of the law firm of Entwistle & Cappucci LLP ("Entwistle & Cappucci" or "Lead Counsel"), attorneys for Lead Plaintiffs FNY Partners Fund LP ("FNY"), Mario Epelbaum and Scott Dunlop (collectively, "Lead Plaintiffs"), and plaintiff Irving Braun (together with Lead Plaintiffs, "Plaintiffs") and Court-appointed Lead Counsel in this action (the "Action").  I am admitted to practice before this Court and have personal knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Action.

2.      I submit this Declaration in support of: (i) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of the Settlement Class for the Purpose of Entering Judgment (the "Final Approval Motion"), and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Fee and Expense Application").

---

[1] Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of the Settlement Class, filed contemporaneously herewith.

3.    Unless otherwise defined, capitalized terms in this Declaration have the meanings in the Stipulation and Agreement of Settlement, dated and filed on May 21, 2021 (ECF 135, the "Stipulation").  I respectfully refer the Court to my previous Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Approval of Form of Class Notice, and a Hearing Date for Final Approval of Settlement, dated and filed on May 21, 2021 (ECF 135), which I affirm and incorporate by reference.

**Index of Exhibits Hereto**

4.    Submitted as exhibits hereto are true and correct copies of the following:

| | |
|---|---|
| Exhibit 1 | Compendium of Unpublished Opinions Cited in Support of Lead Counsel's Fee and Expense Application |
| Exhibit 2 | Firm Resume of Entwistle & Cappucci LLP |
| Exhibit 3 | Declaration of Curtis V. Trinko in Support of Application for an Award of Attorneys' Fees and Expenses together with Exhibit A thereto (Curtis V. Trinko's resume) |
| Exhibit 4 | Declaration of Gregory M. Nespole on Behalf of Levi & Korsinsky, LLP in Support of Application for an Award Of Attorneys' Fees and Expenses, together with Exhibit A thereto (Levy & Korskinsky's Firm Resume) |
| Exhibit 5 | Declaration of Patty Nogalski Regarding (I) Mailing of Notice and Proof of Claim Form; (II) Publication Of Summary Notice; (III) Call Center Services; (IV) The Settlement Website; and (V) Requests for Exclusion and Objections Received do Date, together with Exhibits A and B thereto (notice packet and summary notice) (herein "Nogalski Decl.") |
| Exhibit 6 | Declaration of Michael A. Marek, CFA Regarding Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, together with Exhibits A thereto (Mr. Marek's *curriculum vitae* and the proposed Plan of Allocation) (herein "Marek Decl.") |
| Exhibit 7 | Declaration of Lead Plaintiff and Settlement Class Representative Mario Epelbaum in Support Approval of Settlement and Award of Compensation for Time Spent in Prosecution of the Action |
| Exhibit 8 | Declaration of Shawn Fischman, on Behalf of Lead Plaintiff and Settlement Class Representative FNY Partners Fund LP, in Support of Approval of Settlement and Award of Compensation for its Time Spent in Prosecution of the Action |

| Exhibit 9 | Declaration of Lead Plaintiff and Settlement Class Representative Scott Dunlop in Support Approval of Settlement and Award of Compensation for Time Spent in Prosecution of the Action |
|---|---|
| Exhibit 10 | Declaration of Named Plaintiff and Settlement Class Representative Irving Braun in Support Approval of Settlement and Award of Compensation for Time Spent in Prosecution of the Action |

**Preliminary Statement**

5.     The proposed Settlement now before the Court provides for the full resolution of the claims for violations of the federal securities laws against Defendant Dynagas LNG Partners LP ("Dynagas") and Defendants Dynagas Holding Ltd., Dynagas GP, LLC, George J. Prokopiou, Tony Lauritzen, Michael Gregos, Evangelos Vlahoulis, Alexios Rodopoulos, Levon A. Dedegian, UBS Securities LLC, Stifel, Nicolaus & Company, Incorporated, Morgan Stanley & Co. LLC and B. Riley FBR, Inc. (collectively with Dynagas, "Defendants") in exchange for a cash payment of $4,500,000.00. As detailed herein, Plaintiffs and Lead Counsel respectfully submit that the Settlement represents a favorable result for the Settlement Class considering the significant risks of continuing to litigate this Action.

6.     Plaintiffs and Lead Counsel are well informed of the strengths and weaknesses of the claims and the defenses to the claims. In choosing to settle, Plaintiffs and Lead Counsel took into consideration the substantial risks associated with advancing the claims alleged in the Action, as well as the duration and complexity of the legal proceedings that remained ahead.  As discussed in detail below, had the Settlement not been reached, there were considerable barriers to obtaining a greater recovery, or any recovery at all.

7.     Had the Action not settled, it would proceed through a contested motion for class certification and contested motions for summary judgment before trial and a likely appeal.  All the while, Defendants would have advanced substantial arguments about class certification, liability and damages. Among other things, Defendants were expected to contest: (1) whether, and the extent to which, various statements and/or omissions alleged by Plaintiffs were materially false or misleading or actionable under the securities laws; (2) whether the false or misleading nature of the statements could have been ascertained by Defendants through a reasonable investigation; and

(3) whether, and the extent to which, various statements and/or omissions alleged by Plaintiffs influenced the trading prices of Dynagas Securities during the Class Period.

8. Indeed, Defendants had already obtained dismissal of all Exchange Act Claims by successfully arguing that the allegations in the Complaint did not give rise to a strong inference of an intent to deceive. If Plaintiffs had attempted to re-plead the dismissed causes of action, or any of them, Defendants would likely oppose the amended pleading, and would vigorously test the supporting allegations if amendment were allowed.

9. Accordingly, in the absence of a settlement, there was a very real risk that the Settlement Class could have recovered nothing or an amount significantly less than the negotiated Settlement Amount of $4.5 million.

10. In addition to seeking approval of the Settlement, Lead Plaintiffs seek approval of the proposed Plan of Allocation governing the calculation of claims and the distribution of the Settlement proceeds. As discussed below, the proposed Plan of Allocation was developed with the assistance of Plaintiffs' damages expert, and provides for the distribution of the Net Settlement Fund to Settlement Class members that submit Proof of Claim Forms that are approved for payment based on a function of, *inter alia*, (i) when a Settlement Class member purchased or otherwise acquired Dynagas securities, (ii) whether the Settlement Class member held Dynagas securities through the date of at least one alleged corrective disclosure made by the Company and (iii) whether the Settlement Class member experienced a market loss in connection with investment in Dynagas securities. The Plan of Allocation also accounts for the relatively higher likelihood of success of the Securities Act Claims compared to the Exchange Act Claims (which require proof of scienter and had already been dismissed) by discounting the Recognized Loss for injury associated with Exchanged Act Claims by 25%.

11.     With respect to the Fee and Expense Application, as discussed in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Fee & Expense Brief"), the requested fee of 25% of the Settlement Amount would be fair to the Settlement Class as well as to Lead Counsel and additional plaintiffs' counsel Levi & Korsinsky, LLP and The Law Offices of Curtis V. Trinko (together with Entwistle & Cappucci, "Plaintiffs' Counsel"), and warrants the Court's approval. This fee request is on par with fee percentages frequently awarded in this type of action and, under the facts of this case, is justified in light of the benefits that Plaintiffs' Counsel conferred on the Settlement Class, the risks they undertook, the quality of the representation, the nature and extent of the legal services provided, and the fact that Plaintiffs' Counsel pursued the case at their sole financial risk.  Lead Counsel also seeks reimbursement of $91,820.88 in litigation expenses incurred by Plaintiffs' Counsel in connection with their work, as well as awards pursuant to 15 U.S.C. §78u-4(a)(4) in the amount of $2,500 to each Plaintiff in recognition of their significant efforts and assistance in prosecuting the Action.

### History of the Action

12.     This Action was commenced on May 16, 2019 with the filing of an initial class action complaint in the United States District Court for the Southern District of New York, styled *Mario Epelbaum, on behalf of himself and all others similarly situated v. Dynagas LNG Partners LP, Dynagas GP, LLC, Dynagas Holding Ltd., Tony Lauritzen, Michael Gregos, and George Prokopiou*, 1:19-cv-04512-AJN (S.D.N.Y), alleging claims arising under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (the "SEC") and Section 20(a) of the Exchange Act. Entwistle & Cappucci filed the complaint on behalf of Mr. Epelbaum only after a thorough initial

investigation of the claims and likely defenses.  On July 16, 2019, three motions seeking the appointment of lead plaintiff(s) were filed pursuant to Section 21D of the Exchange Act, in a provision added by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

13.    Pursuant to the PSLRA, on August 12, 2019, the Court entered an Order:  (i) appointing Mario Epelbaum, FNY Partners Fund LP and Scott Dunlop as Lead Plaintiff(s); and (ii) approving Entwistle & Cappucci to serve as Lead Counsel.

14.    Lead Plaintiffs, through Plaintiffs' Counsel, further diligently investigated the claims, defenses, and underlying events and transactions that are the subject of the Action. This process has included analyzing, among other things, publicly filed documents and records, investigative reports, and news stories and reviewing and corroborating the allegations and developments in the case.  In addition to the claims asserted in the initial complaint, Lead Counsel investigated possible Securities Act Claims, after being contacted by Irving Braun ("Braun") about the possibility of asserting such claims.  (Braun, unlike Lead Plaintiffs, had purchased Dynagas Series B Preferred Units in the October 2018 Offering).  In addition, Lead Counsel consulted with an expert regarding damages suffered by Plaintiffs and the class resulting from the claims in the Action.

15.    On September 26, 2019, based on their investigation, Plaintiffs filed the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint").  The Complaint asserts claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC, Sections 20A and 20(a) of the Exchange Act and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") against Dynagas, Dynagas Holdings, Dynagas GP, George Prokopiou, Tony Lauritzen, Michael Gregos, Evangelos Vlahoulis, Alexios Rodopoulos, Levon A. Dedegian, UBS, Stifel, Morgan Stanley and B. Riley.  The claims pursuant

to Section 20A of the Exchange Act were brought only on behalf of Braun and such other Class members whose transactions were contemporaneous with, and directionally opposite to Dynagas's sale of Series B Preferred Units in the October 2018 Offering.   The claims pursuant to the Securities Act were brought only on behalf of Braun and such other Class members that purchased or otherwise acquired Dynagas Series B Preferred Units in or traceable to the October 2018 Offering.   In response, Defendants[2] filed a consolidated motion to dismiss the Complaint on December 5, 2019. (ECF 73.)  In support of their motion, Defendants filed a 40-page brief and twenty-seven contemporaneous documents as exhibits to support their factual contentions.

16.    Plaintiffs, largely through Plaintiffs' Counsel, vigorously opposed Defendants' motion to dismiss, including thoroughly researching the factual assertions and legal points raised regarding each of the six counts of the asserted in their amended complaint.  Plaintiffs ultimately submitted a 40-page brief in opposition, together with elaborate appendices including a table of alleged misstatements, a graphical timeline, and an arithmetic rebuttal to Defendants' argument that the charter rates in question were calculable from the public record.  Plaintiffs also submitted nineteen contemporaneous documents as exhibits to rebut Defendants' construction of the factual record beyond the text of the Complaint.  Plaintiffs' Counsel fully prepared for oral argument, which the Dynagas Entity Defendants requested via letter (ECF 76), both in furtherance of the litigation and to inform their approach to the pre-decision mediation session discussed below.

17.    The Entity Defendants accepted service of process through counsel, and one individual defendant ultimately waived service pursuant to Fed. R. Civ. P. 4(d).   However,

---

[2] The motion was filed only by the corporate entity defendants and did not include individual Defendants George Prokopiou, Tony Lauritzen, Michael Gregos, Evangelos Vlahoulis, Alexios Rodopoulos Levon A. Dedegian, who had not been served at the time it was filed (or, in the case of Defendant Dedegian, at all). These individual Defendants subsequently stipulated on December 7, 2020 to be bound by the Court's November 25, 2020 decision on dismissal.

Plaintiffs were required to serve the Complaint on the other individual defendants, all of whom reside overseas, through the Hague Convention, including full translations of the Complaint and Summons, after those defendants declined to waive or accept service through counsel and after Lead Counsel obtained their addresses from the Dynagas Entity Defendants via contested interrogatories.

18.    On November 25, 2020, the Court entered an Order:  (i) granting the motion to dismiss as to Plaintiffs' Exchange Act claims regarding the alleged materially misleading statements or omissions relating to Dynagas' financial condition and charter contract renewals; and (ii) denying the motion to dismiss as to the alleged materially false and misleading statements and omissions related to Plaintiffs' Securities Act claims regarding the allegedly materially misleading statements or omissions contained in the October 2018 Offering materials.  This order meant that the claims asserting fraudulent conduct could not proceed to trial, unless such claims were revived in a second amended complaint or the Court's decision dismissing the claims was overturned on an appeal, which could only happen after the non-fraud claims were resolved.  The non-fraud claims, however, were permitted to proceed.

19.    Defendants filed their answers and affirmative defenses to the Complaint on February 1, 2021, denying that they engaged in any wrongdoing or committed any violation of the securities laws.  The parties negotiated protocols for the exchange of electronically stored and confidential information, as well as a case schedule, and, on February 23, 2021, the Parties exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

## The Settlement

20.    While Defendants' motion to dismiss the Complaint was fully briefed and *sub judice*, and following service on the individual defendants, the Parties explored whether an early-stage resolution was possible. Lead Counsel and Defendants' Counsel discussed the procedural

9

posture of the Action, forthcoming discovery and motions, and the Parties' initial positions concerning the merits and strength of the allegations and contemplated defenses. On November 13, 2020, counsel for the Parties participated in a full-day mediation (via videoconference) before retired federal Chief District Judge Jose L. Linares. Although a settlement was not reached at that mediation, the Parties continued to discuss the possibility of negotiated resolution.

21. Following Judge Nathan's opinion and order denying in part and granting in part the motion to dismiss, the parties continued their informal settlement discussions contemporaneously with litigation activities including setting a case schedule with the assistance of the Court and exchanging initial disclosures. The Parties also submitted position briefs to Judge Linares *in camera*, including their views on liability and provable damages. Counsel for the Parties then participated in a second full-day video-telephonic mediation session before Judge Linares on March 15, 2021. Throughout the mediation process and related discussions, the litigation proceeded apace, including the negotiation of a discovery schedule, confidentiality and ESI protocols, Defendants' answers to the Complaint (ECF 120, 123), and the exchange of initial disclosures.

22. The March 15, 2021, mediation session ended in a mediator's proposal, which Judge Linares gave all parties twenty-four hours to confidentially accept or decline. All parties accepted the mediator's proposal of $4.5 million to fully resolve all claims. The Parties promptly informed the Court of their agreement in principle, while they worked out the non-monetary terms reflected in the Stipulation.

23. The Stipulation, executed on May 21, 2021, sets forth the final terms and conditions of the Settlement, includes, among other things, a release of all claims asserted against Defendants in the Action, and certain related claims, in return for a cash payment by, or on behalf

10

of, the Defendants in the amount of $4,500,000.00 into the Settlement Fund for the benefit of the Settlement Class.

24.     The only settlement-related agreements between Plaintiffs and Lead Counsel, on the one hand, and Defendants or Defendants' Counsel, on the other hand, are the Stipulation, and the confidential Supplemental Agreement, also dated May 21, 2021, concerning the circumstances under which Defendants may terminate the Settlement based on the number of requests for exclusion from the Settlement Class. *See* Stipulation ¶ 37.  It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement was filed under seal at ECF 140 pursuant to the Court's request.

25.     In light of the significant risks of proceeding with further litigation, including the risks that Defendants would be successful in defeating a motion for class certification or dismissing the action at summary judgment, and the challenges with respect to damages and causation issues, uncertainty surrounding the collection of a judgment from the foreign defendants, and issues surrounding discovery to be taken abroad during a pandemic, Plaintiffs and Lead Counsel determined that the proposed Settlement represents the best possible result for the Settlement Class.

26.     Accordingly, Lead Plaintiffs moved for preliminary approval of the contemplated Settlement on May 21, 2021 (ECF 136) and the Court subsequently issued its Order Granting Preliminary Approval of Settlement on June 10, 2021 (ECF 142, the "Preliminary Approval Order").

### Risks of Continued Litigation

27.     Based on their experience and close knowledge of the facts of the case and law governing the claims, Lead Counsel determined that settlement at this juncture is in the best

interests of the Settlement Class. As described herein, at the time the Settlement was reached, there were sizable risks facing Plaintiffs with respect to class certification, establishing liability, loss causation and damages. Further, there were significant concerns relating to the complexity of the debate inherent in a securities action as described in detail below.

### A.  Risks Related to Proving Liability and Damages

28.     Lead Plaintiffs would have faced significant hurdles in proving their case on liability. Litigation of the claims alleged in this case was expected to raise several complex questions concerning falsity, scienter, loss causation and damages that would require substantial efforts by Lead Plaintiff and Lead Counsel.  Assuming the claims survived a motion for summary judgment, a jury trial (which Plaintiffs and Defendants separately demanded and were indisputably entitled to) would have required substantial factual and expert testimony, which is always uncertain. Whatever the outcome at trial, it was virtually certain that an appeal would have been taken.  And significant collection was not guaranteed even if Plaintiffs were successful at trial and on appeal – the individual defendants and the Dynagas Entity Defendants are foreign, and Plaintiffs' investigation did not locate significant assets within the United States belonging to any of them.  All the foregoing would have posed considerable expense to the Parties and would have delayed any potential recovery for several years.

29.     On their motion to dismiss, Defendants argued that the alleged misstatements were not misstatements at all.  As to the alleged misstatements at the heart of the sustained claims, Defendants argued that their claim to have entered into a continuation or "direct continuation" or "extended charter" of previous contracts simply referred to the absence of "down-time" in between the old contract and the new.  Plaintiffs believe they have a strong argument that these statements implied that the charter rates were substantially unchanged (and therefore were false and misleading) based on the context surrounding the statements.  However, Plaintiffs are clear-eyed

12

about the challenges of presenting their case for falsity to a jury, where the alleged misstatement, in a vacuum, is open to a literally true interpretation.  Defendants further advanced a truth-on-the-market argument:  that investors could (and some analysts did) derive the reduced charter rates by parsing Dynagas's SEC filings over the prior five years, an argument the Court rejected at the pleading stage, but which Defendants would likely seek to develop with affirmative proof and perhaps the testimony of an expert accountant.

30.     Likewise, Defendants attacked alleged misstatements central to the Exchange Act claim on the grounds that they were supposedly not false.  For example, Defendants argued that statements that the Company was able to pay distributions "for the foreseeable future" and "for quite a long time" only meant distributions would be paid in the coming quarters, not years.  Again, Plaintiffs have a strong argument, based on context and analyst and market interpretation, that the statements were misleading, but are attuned to the risk that a jury would credit Defendants' *post hoc* explication of their own statements.  And, with these claims, Plaintiffs would need to prove that Defendants intended to mislead investors, an inference that, on the pleading, this Court found less compelling than the inference that Defendants "perhaps irrationally" expected to maintain their distributions.  ECF 102 at 45.  Because these claims were dismissed, Plaintiffs lacked the ability to demand discovery that might rebut the non-fraudulent inference that the Court found more compelling.

31.     Lead Plaintiffs also faced serious risks in ultimately proving loss causation and damages at trial. Indeed, if Lead Plaintiffs did not meet their burden to establish causation by a preponderance of evidence, then the class would have recovered nothing.  Plaintiffs anticipate that Defendants would have argued that their expert was unable to disaggregate damage related to the alleged misstatements from other setbacks Dynagas faced which were unrelated to any alleged

wrongdoing.  Defendants would have argued that the allegations of loss causation were speculative because Plaintiffs' damages model did not account for the effect of the maturing of Dynagas's senior debt and re-financing on less favorable terms, for the renegotiation of Dynagas's other charter contracts, its failure to obtain favorable terms in the spot market, and even climate change.[3]

32.     Plaintiffs' expert economist has calculated the largest aggregate recovery that Plaintiffs could realistically hope to obtain at trial on all claims alleged, including the Exchange Act claims that have been dismissed, was $33.85 million. This figure does not take into account the exclusion of gains on pre-Class Period purchases or the "parsing out" or disaggregation of the impact of non-misstatement related, company-specific information from the alleged securities price declines in reaction to the corrective disclosures. Accordingly, based on the highest defensible damages estimate by Plaintiffs' expert, the Settlement represents approximately 13.3% of aggregate damages potentially recoverable at trial, assuming that the dismissed claims were successfully re-pled, that all claims were proven at trial, that Plaintiffs' methodology was accepted, and that Plaintiffs were able to collect in full. *See* Exhibit 6 hereto.

33.     If the dismissed Exchange Act claims could not be revived on re-pleading or appeal, the maximum recovery on the sustained claims (the Securities Act claims) was $8.9 million or $13.4 million (depending upon whether after-market purchases of Series B Preferred Units are entitled to recover).[4]  The Settlement Amount is therefore between 33.5% (assuming after-market

---

[3] Various adverse economic effects of climate change and responsive regulations are discussed in Dynagas's public filings, *e.g.* Form 20-F for year ending December 31, 2020, including severe weather, attempts to regulate the emissions of its vessels or tax their fossil fuel payloads, etc.  *See also* Dimitris Papavasileiou, *The Northern Sea Route: Will the LNG shipping industry follow Dynagas's lead?*, HBS DIGITAL INITIATIVE (Nov. 4, 2016), https://digital.hbs.edu/platform-rctom/submission/the-northern-sea-route-will-the-lng-shipping-industry-follow-dynagass-lead/ (predicting that revenues from Dynagas's ice-class vessels will decline as polar ice melts).

[4] Declaration of Michael A. Marek, CFA Regarding Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Marek Decl."), Exhibit 6 hereto. *See*

purchasers are entitled to recover) and 50.6% (assuming only direct purchasers in the October 2018 Offering are entitled to recover) of the maximum possible recovery on the sustained claims, an excellent result and a figure that Plaintiffs could not expect to obtain in this case without a trial but for the specter of possibly resurrecting their Exchange Act claims. (Defendants naturally insisted all claims be released as part of any negotiated resolution).

34.     As the case continued, the Parties' respective damages experts would strongly disagree with each other's assumptions and their respective methodologies. The risk that the Court or a jury would credit Defendants' expert's anticipated damages positions over those of Plaintiffs would have considerable consequences in terms of the amount of recovery for the Settlement Class, assuming that liability was proven.

### B. Risks Related to Class Certification

35.     Class certification had not yet been briefed in this case, and class certification is sought at this juncture for the purposes of settlement only. But for the Settlement, Defendants would undoubtedly have raised vigorous challenges to class certification, and such disputes could well devolve into yet another battle of the experts. Additionally, class certification can be reviewed and modified at any time by the Court before final judgment. Furthermore, Plaintiffs' Counsel notes that defendants in class actions, particularly securities class actions, now routinely use class certification to indirectly argue the merits of a case, effectively re-asserting failed motion-to-dismiss arguments and/or pre-arguing motions for summary judgment before the factual record is complete, thereby compounding the plaintiffs' litigation risk. Although Lead Counsel believes there are strong grounds for certifying a litigation class, the Settlement avoids any uncertainty with

---

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995).

respect to class certification and risks of maintaining certification of the class through trial and on appeal.

**Lead Plaintiffs' Compliance with Preliminary**
**Approval Order and Reaction of the Settlement Class to Date**

36.     Pursuant to the Preliminary Approval Order, the Court approved the appointment of A.B. Data Ltd. ("A.B. Data") as Claims Administrator in the Action and instructed A.B. Data to disseminate copies of the Notice and Proof of Claim Form by first class mail; to publish the Summary Notice on a national wire service; and to post the Stipulation, Notice, Summary Notice and Proof of Claim Form on the Claim Administrator's website. The Claims Administrator has confirmed the feasibility of implementing the proposed Plan of Allocation based on the information required by the Proof of Claim form.

37.     The Notice and Summary Notice have provided potential Settlement Class members with information about the terms of the Settlement and contain, among other things: (i) a description of the Action and the Settlement; (ii) the terms of the proposed Plan of Allocation for calculating claims; (iii) an explanation of Settlement Class members' right to participate in the Settlement; an explanation of Settlement Class members' rights to object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, or exclude themselves from the Settlement Class; and (v) the manner for submitting a Proof of Claim Form in order to be eligible for a payment from the net proceeds of the Settlement.

38.     The Notice also informs Settlement Class members of Lead Counsel's intention to apply for an award of attorneys' fees on behalf of itself and Plaintiffs' Counsel in an amount not to exceed 25% of the Settlement Amount and for reimbursement of litigation expenses in an amount not to exceed $150,000 for the expenses that Lead Counsel and Plaintiffs' Counsel have incurred in prosecuting the Action.

16

39.    The Notice also informs the Settlement Class that the Fee and Expense Application may include an application pursuant to the PSLRA for the reasonable costs and expenses of Plaintiffs (including their time) directly related to their litigation efforts, to be paid from the Settlement Fund. Copies of the Notice and Summary Notice are attached respectively as Exhibit A and Exhibit B to the accompanying Declaration of Patty Nogalski Regarding (I) Mailing of Notice and Proof of Claim Form; (II) Publication of Summary Notice; (III) Call Center Services; (IV) The Settlement Website; and (V) Requests for Exclusion and Objections Received to Date (the "Nogalski Decl.," Exhibit 5 hereto).

40.    As set forth in the Nogalski Decl., A.B. Data has complied with its obligations pursuant to the Preliminary Approval Order by mailing the Notice and Proof of Claim Form to the Company's stockholders of record as well as persons identified by banks, brokerage firms and other third-party nominees as possible Settlement Class members. Nogalski Decl. ¶¶ 8-9.   In total, A.B. Data mailed these materials to 20,783 potential Settlement Class members as of September 29, 2021. *Id*. ¶ 10.   A.B. Data published the Summary Notice via *PR Newswire*, a national wire service and in the *Wall Street Journal*. *Id*. ¶ 12.   A.B. Data also maintains a toll-free telephone line with pre- recorded information available 24 hours a day, seven days a week. *Id.* ¶ 14.   A.B. Data further maintains and posts information regarding the Settlement on its website, www.DynagasSecuritiesLitigation.com, to provide Settlement Class members with information concerning the Settlement, as well as downloadable copies of the Notice, Summary Notice, Proof of Claim Form, the Stipulation, the Preliminary Approval Order, and other important documents related to the Settlement. *Id.*

41.    Pursuant to the Preliminary Approval Order at ¶ 14, the deadline for Settlement Class members to submit objections to the Settlement, the Plan of Allocation and/or the Fee and

Expense Application, or to request exclusion from the Settlement Class, is October 15, 2021., as of September 29, 2021, only one request for exclusion and no objections to the Settlement, the Plan of Allocation, or the Fee and Expense Application have been received (nor has Lead Counsel received any objections). Nogalski Decl. ¶¶ 17-20.  A.B. Data will submit a supplemental declaration after the October 15, 2021 deadline, addressing any further requests for exclusion received or any objections.  Should any objections be received, Lead Counsel will address them in reply papers.

### The Plan of Allocation for Distribution of Settlement Payments

42.	Pursuant to ¶ 11 of the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Proof of Claim Form, including all required information, postmarked no later than November 5, 2021. As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, notice and administration costs, and all applicable taxes, the balance of the Settlement Fund (the "Net Settlement Fund") will be distributed according to the plan of allocation approved by the Court.

43.	The proposed Plan of Allocation, which is set forth in full in the Notice (Exhibit A to the Nogalski Decl.), was designed to achieve an equitable and rational distribution of the Net Settlement Fund. Lead Counsel developed the Plan of Allocation with the assistance of its damages expert and believes that the plan provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants.

44.	The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants based on a function of:  (i) when a Settlement Class member purchased or otherwise acquired Dynagas Securities; (ii) whether the Settlement Class member held his, her or its Dynagas Securities through the date of at least one corrective disclosure made by the Company;

(iii) whether the Settlement Class member held his, her or its Dynagas Securities during the statutory 90-day look-back period (for securities subject to Exchange Act Claims, *see* 15 U.S.C. § 78u-4(e)) or through the filing of the Amended Complaint (for losses related to Securities Act Claims, *see* 15 U.S. Code § 77k(e)); (iv) the per share amount of artificial inflation in the price of the Company's stock; and (v) the market loss, if any, actually experienced by the Settlement Class member.

45.     Authorized Claimants will have their Exchange Act Recognized Loss calculated based on a formula that considers the amount of alleged artificial inflation in the prices of the Company's stock, as estimated by Plaintiffs' expert economist.  This formula is consistent with Plaintiffs' theory of liability and damages.  For Dynagas Securities other than Series B Preferred Units, the Exchange Act Recognized Loss will be the Recognized Loss.  However, for Dynagas Preferred B Units – which are the subject of the Securities Act Claims including claims pursuant to Section 11 – the Recognized Loss will be the greater of the Exchange Act Recognized Loss or the Securities Act Recognized Loss.  The Securities Act Recognized Loss on Preferred B Units will be calculated as the difference between the price at which the Authorized Claimant purchased the units and either the price at which the Authorized Claimant sold those units prior to the filing of the Amended Complaint or $19.70, if the Authorized Claimant held the units through the filing of the Amended Complaint.

46.     As stated above (¶ 10), the Exchange Act Recognized Loss on all Dynagas securities will be reduced by 25% to account for the additional difficulty Plaintiffs would face in re-pleading and ultimately proving the dismissed Exchange Act Claims, which require Defendants' intent to deceive.

47.      Each Authorized Claimant will receive a distribution from the Net Settlement Fund *pro rata* according to his, her or its total Recognized Loss across all Dynagas securities (the "Recognized Claim").    The Court-approved Claims Administrator, under Lead Counsel's direction, will calculate claimants' Recognized Claim using the transactional information provided in their Proof of Claim Forms. Claims may be submitted to the Claims Administrator through the mail or online using the settlement website. Neither the Parties nor the Claims Administrator independently have claimants' transactional information. Plaintiffs' losses will be calculated in the same manner.

48.      Once the Claims Administrator has processed all submitted claims and provided claimants with an opportunity to cure deficiencies or challenge rejection determinations, payment distributions will be made to eligible Authorized Claimants using checks. After an initial distribution, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of distribution of the Settlement Fund, the Claims Administrator will, if logistically feasible and economically justifiable, make a further distribution of such balance among Authorized Claimants in an equitable fashion.   After any reallocation, or if a reallocation is not undertaken, any balance that remains in the Settlement Fund shall be donated to a non-sectarian §50l(c)(3) non-profit charitable organization.

49.      Lead Counsel has received no objections to the Plan of Allocation to date.

50.      In sum, the proposed Plan of Allocation, developed in consultation with Plaintiffs' expert economist, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants.  Accordingly, Lead Counsel respectfully submits that the proposed Plan of Allocation is fair, reasonable and adequate and should be approved.

**Lead Counsel's Application for Attorneys' Fees and Expenses**

51.       Consistent with the Notice to the Settlement Class, Lead Counsel, on behalf of itself and all Plaintiffs' Counsel, seeks a fee award of 25% of the Settlement Amount, or $1,125,000. No other attorneys will share the awarded attorneys' fees. Lead Counsel also requests reimbursement of litigation expenses in connection with the prosecution of the Action from the Settlement Fund in the amount of $91,820.88, which were necessarily incurred in the prosecution and are being billed at the actual cost expended by Plaintiffs' Counsel.  Lead Counsel submits that, for the reasons discussed below and in the memorandum in support of the Fee and Expense Application, such awards would be reasonable and appropriate under the circumstances.

### A.  The Time and Labor of Plaintiffs' Counsel

52.       The investigation, prosecution, and settlement of the claims asserted in the Action required diligent efforts by Plaintiffs' Counsel. Many tasks undertaken by Plaintiffs' Counsel, are detailed above.

53.       Plaintiffs' Counsel conducted an investigation in connection with the preparation of the initial complaint and the amended complaint, vigorously opposed a fulsome motion to dismiss, effected international service of process upon reluctant recipients and engaged in a vigorous settlement process with experienced defense counsel. At all times throughout the pendency of the Action, the efforts of Plaintiffs' Counsel were driven and focused on advancing the litigation to bring about the most successful outcome for the Settlement Class, whether through settlement or trial.

54.       The following table summarizes Lead Counsel's time records. The table reports the amount of time spent by Entwistle & Cappucci's attorneys and professional support staff and the "lodestar" calculations, *i.e.*, their hours multiplied by their reasonable current hourly rates. These figures were prepared from daily time records regularly prepared and maintained by Lead

Counsel, which are available at the request of the Court, and reflect time from inception of this action through September 24, 2021 and therefore exclude time spent responding to any objections to the settlement or fee request, preparing for and appearing at the Final Approval Hearing and other tasks subsequent to the briefing of the Final Approval Motion including supervision of the claims and distribution process. Lead Counsel took care to staff the matter efficiently and to avoid the duplication of efforts.

| Name | Position | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Andrew Entwistle | Managing Partner | $1,575 | 265.0 | $ 417,375.00 |
| Vincent Cappucci | Senior Partner | $1,575 | 47.0 | $ 74,025.00 |
| Arthur Nealon | Partner | $1,350 | 31.0 | $ 41,850.00 |
| Brendan Brodeur | Partner | $1,250 | 879.5 | $ 1,099,375.00 |
| Robert Cappucci | Partner | $1,250 | 500.7 | $ 625,875.00 |
| Rebecca Arnall | Associate | $750 | 550.2 | $ 412,650.00 |
| Sean Riegert | Associate | $750 | 252.0 | $ 189,000.00 |
| Neave Casey | Senior Litigation Paralegal | $425 | 204.1 | $ 86,742.00 |
| Faith Fleming | Paralegal | $375 | 156.0 | $ 58,500.00 |
| Hiliana Sarita | Paralegal | $325 | 58.6 | $ 19,045.00 |
| Eduardo Hernandez | Tech. Assistant | $145 | 40.9 | $ 5,930.50 |
|  |  | TOTAL: | 3,010.8 | $ 3,030,367.50 |

55.    The hourly rates of Lead Counsel here were $1,250 - $1,575 for partners, $750 for associates, and $145 - $425 for professional staff. I respectfully submit that the hourly rates for attorneys and professional support staff included in this table are reasonable and customary within the securities class action bar.

56.    As set forth in Exhibit 3 hereto (the "Trinko Decl."),[5] The Law Offices of Curtis V. Trinko has expended over 151 hours prosecuting this Action for a lodestar of $131,631.00.

---

[5] Declaration of Curtis V. Trinko in Support of Application for an Award of Attorneys' Fees and Expenses

57.    As set forth in Exhibit 4 hereto (the Nespole Decl.,"),[6] Levy & Korsinsky, LLP has expended over 66 hours prosecuting this Action for a lodestar of $54,687.50.

58.    Thus, Lead Counsel and the other Plaintiffs' Counsel have together spent over 3,227 hours litigating this case for a total lodestar of $3,216,686. The requested fee of $1,125,000 (25% of the Settlement Amount) therefore results in a fractional or "negative" multiplier of 0.35 (*i.e.*, the fee requested is *less* than Plaintiffs' Counsel's lodestar).

**B.    The Standing and Expertise of Lead Counsel and Plaintiffs' Counsel**

59.    The experience and expertise of Entwistle & Cappucci's attorneys is described in the firm resume attached as Exhibit 2 hereto. As set forth therein, the firm has served as lead counsel in a number of high-profile matters and is highly experienced and skilled in securities litigation. The experience and expertise of Law Offices of Curtis V. Trinko and Levy & Korsinsky the are set forth in the Trinko Decl. (Exhibit 3 hereto) and Nespole Decl. (Exhibit 4 hereto), respectively.  Lead Counsel worked diligently to assure that there was no duplication of effort between it and additional Plaintiffs' Counsel at The Law Offices of Curtis V. Trinko and Levy & Korsinsky.

**C.    Standing and Expertise of Opposing Counsel**

60.    The quality of the work performed by Plaintiffs' Counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel. Here, Defendants were represented by WilmerHale and Skadden, first-rate firms with highly skilled and experienced securities attorneys with significant resources.  In the face of this knowledgeable and formidable

---

[6] Declaration of Greg Nespole on Behalf of Levy & Korsinsky, LLP in Support of Application for an Award of Attorneys' Fees and Expenses.

23

defense, Plaintiffs' Counsel were nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that are favorable to the Settlement Class.

### D.  The Contingency Risk Faced by Lead Counsel

61.    From the outset, Lead Counsel understood that they were embarking on a complex, expensive and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable costs that a case such as this requires. With an average time of several years for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Plaintiffs' Counsel received no compensation during the course of the Action but incurred more than three thousand hours of time for a total lodestar of over three million dollars, as well as significant out-of-pocket expenses in prosecuting the Action for the benefit of the Settlement Class.

62.    Lead Counsel knows from experience that the commencement of a class action does not guarantee a recovery.  To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and win at trial, or to convince sophisticated defendants to engage in serious settlement negotiations at meaningful levels.  Lead Counsel is aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case or an unfavorable decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.

63.    Surviving a motion to dismiss is no guarantee of ultimate success on the merits. While only a few securities class actions have been tried before a jury, several have been lost there

in their entirety. Even plaintiffs that succeed at trial may find their verdict overturned by a post-trial motion for a directed verdict or on appeal. And the path to maintaining a favorable jury verdict can be arduous and time consuming.

64.    As discussed in greater detail above, Plaintiffs' success was by no means assured. Defendants would have disputed whether Plaintiffs could establish falsity, scienter and loss causation. In addition, Defendants would no doubt have contended, as the case proceeded to summary judgment, that even if liability existed, the amount of damages was substantially lower than Plaintiffs alleged, even assuming that all dismissed claims were re-pled and proven, and would contest that all Company-specific investment losses following the alleged corrective disclosures were caused by the alleged misconduct.  Were this Settlement not achieved, Plaintiffs' Counsel faced potentially years of costly and risky trial and appellate litigation against Defendants, with ultimate success far from certain and a significant prospect of no recovery.

**E.  Request for Reimbursement of Litigation Expenses**

65.    Lead Counsel, on behalf of all Plaintiffs' Counsel, also seeks reimbursement from the Settlement Fund of litigation expenses reasonably and necessarily incurred in connection with commencing and prosecuting the claims against Defendants.

66.    From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses, and, at the very least, would not recover anything until the Action was successfully resolved. Thus, Lead Counsel was motivated to take steps to manage expenses without jeopardizing the vigorous and efficient prosecution of the case.

67.    The following summary table prepared from Lead Counsel's check records and other reliable source materials reflects that Lead Counsel's litigation expenses in connection with the prosecution of the Action totaled $91,820.88, excluding routine overhead expenses such as photocopying and telephone calls:

| Category | Total Amount |
|---|---|
| Research | $ 15,550.00 |
| Service of Process and Language Translation Services Required by Int'l Law | $ 10,287.29 |
| Mediation | $ 28,148.38 |
| Outside Expert Fees | $ 34,400.00 |
| Filing Fees | $ 500.00 |
| FedEx, Messengers and Postage | $ 405.37 |
| Misc. Disbursements | $ 2,529.84 |
| **TOTAL:** | **$ 91,820.88** |

68.     The foregoing expenses for which Lead Counsel seeks reimbursement are the types of expenses that are necessarily incurred in securities class action litigation.  All expenses reflected in the foregoing are reported at the actual cost incurred and expended by Lead Counsel.

69.     (Neither the Law Offices of Curtis V. Trinko nor Levy & Korsinsky are seeking reimbursement for any out-of-pocket expenses they may have incurred).

**F.  The Reaction of the Settlement Class to the Fee and Expense Application**

70.     Consistent with the Preliminary Approval Order, a total of 20,783 Notices have been mailed to potential Settlement Class members, in addition to the publication of the Notice on the Claim Administrator's website. Nogalski Decl. ¶¶ 15-16. Consistent with the Preliminary Approval Order, the Summary Notice has been published on a national news wire and the *Wall Street Journal*. *Id.* ¶ 12. These materials inform potential Settlement Class members that Lead Counsel would seek an award of attorneys' fees of up to 25% of the Settlement Amount, and reimbursement of litigation expenses in an amount not to exceed $150,000.  These materials also inform the Settlement Class that the Fee and Expense Application may include an application pursuant to the PSLRA for the reasonable costs and expenses of Plaintiffs (including compensation

26

for their time) directly related to their litigation efforts, to be paid from the Settlement Fund.[7] While the deadline set by the Court for Settlement Class members to object to the requested fees and expenses has not yet passed, to date no objections have been received, and only one prospective class member has requested exclusion ("opted out"). *Id*. at ¶¶ 18, 20. Lead Counsel will respond to any objections received in reply papers.

## Conclusion

71.     In view of the favorable recovery for the Settlement Class and the substantial risks of this litigation, as described above and in the accompanying memoranda of law, I submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should likewise be approved as fair, reasonable, and adequate. In view of the recovery in the face of substantial risks, the quality of work performed, the contingent nature of the fee, and the standing and experience of Lead Counsel and additional Plaintiffs' Counsel, I respectfully submit that a fee in the amount of 25% of the Settlement Fund should be awarded and that litigation expenses in the amount of $ $91,820.88 be reimbursed in full.  In light of their significant assistance in the prosecution of this Action and the reasons set forth in their respective declarations, I respectfully submit that an award of $2,500 for each of Lead Plaintiffs First New York, Mario Epelbaum and Scott Dunlop and an award of $2,500 for named plaintiff Irving Braun should also be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of October 2021 in Austin, Texas.

/s/ *Andrew J. Entwistle*
Andrew J. Entwistle

---

[7] Lead Plaintiffs' Final Approval Motion and Lead Counsel's Fee and Expense Application will also be posted on the Settlement website promptly after filing.