# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE DYNAGAS LNG PARTNERS LP
SECURITIES LITIGATION

No. 19-cv-04512 (AJN)

**DECLARATION OF MICHAEL A. MAREK, CFA REGARDING LEAD PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN**
**OF ALLOCATION**

I, Michael A. Marek, declare as follows:

1.      I submit this declaration in support of Plaintiffs' Motion for Final Approval of Class

Action Settlement and Plan of Allocation.  I have personal knowledge of the facts set forth herein.

I.      **Summary of Engagement**

2.      I am a founding member of Financial Markets Analysis, LLC ("FMA"), a securities

analysis firm located in Newtown, Pennsylvania.  A summary of my employment background,

experience, and qualifications is set forth in Exhibit A.   I was retained by Plaintiffs to consult on

matters in this litigation including the materiality of information allegedly misstated and/or omitted

by Defendants, the causation of damages to members of the Settlement Class (as defined in the

Stipulation and Agreement of Settlement (the "Stipulation," ECF No. 135)[1] and the quantification

of those damages.  I also assisted in formulating the Plan of Allocation (the "Plan") which Plaintiffs

and Lead Counsel propose be used in order to distribute the Net Settlement Fund (as defined in

the Stipulation) to Settlement Class members in this matter.  This declaration is submitted to

describe my work in formulating the Plan and to provide bases for my conclusion that the Plan is

fair, reasonable and adequate to the Settlement Class.

3.      In preparing my analyses, I reviewed:

    A.      Daily price and trading volume data for (1) Dynagas LNG Partners LP
            ("Dynagas" or the "Company") common units representing limited

---

[1] Unless otherwise described, all capitalized terms have the meanings ascribed to them in the Stipulation.

partnership interests (NYSE DLNG) (CINS: Y2188B108) ("common units"); (2) Dynagas Series A Fixed to Floating Rate Cumulative Redeemable Perpetual Preferred Units (NYSE DLNG PR A) (CINS: Y2188B116) ("Series A Preferred Units"); (3) Dynagas Series B Fixed to Floating Rate Cumulative Redeemable Perpetual Preferred Units (NYSE DLNG PR B) (CINS: Y2188B124) ("Series B Preferred Units"); (4) Dynagas 6.25% senior unsecured notes matured October 2019 (CUSIP No. 26780TAA5) ("6.25% Notes"); and (5) Dynagas common unit call and put options, as well as daily open interest figures for these options;

B.    Historical data for several general equity market and transportation industry indices, including, but not limited to, the Russell 3000 Index and the Yorkville MLP Marine Transportation Price Index;

C.    Filings made by Dynagas with the Securities and Exchange Commission ("SEC") before, during and after the Class Period, including Forms 20-F, Forms 6-K and Registration Statements;

D.    Press releases issued by Dynagas before, during and after the Class Period;

E.    News articles about Dynagas published in the general and financial press before, during and after the Class Period;

F.    Transcripts of Dynagas conference calls before, during and after the Class Period;

G.    Filings made in connection with this matter, including, among others, the Complaint (ECF No. 50).

## II.    The Plan of Allocation Is Based Upon Evidence Regarding Loss Causation and an Empirical Event Study Methodology

4.    In summary, Plaintiffs in this consolidated class action have, variously, claimed that during the Class Period in this matter (December 21, 2017 through March 21, 2019, both dates inclusive), Dynagas issued statements relating to its operations and finances which were materially false and misleading because of the failure to disclose, and/or misrepresentation of, adverse facts regarding (i) the amount of revenue that Dynagas was entitled to receive from two of its long-term charter contracts; and (ii) the Company's ability to continue to pay substantial distributions to holders of its common units.

2

5.      Under a reasonable reading of loss and/or damage causation related to Plaintiffs' allegations in this matter, there were three potentially relevant announcements which constituted corrective disclosure of information alleged by Plaintiffs to have been previously misstated and/or omitted:

| Effective Disclosure Date | Alleged Corrective Event/Disclosure |
|---|---|
| 11/16/2018 | Dynagas's LNG Tanker Ships, *Arctic Aurora* and *Ob River*, were employed at substantially lower rates than they had been under their prior contract. |
| 01/28/2019 | Further disclosure of the financial impact of the reduced charter rates, and the fact that distributions to holders of common units would be reduced. |
| 03/22/2019 | Further disclosure of the financial impact of the reduced charter rates, including financial results from the first quarter in which both *Arctic Aurora* and *Ob River* were employed at reduced rates. |

6.      To arrive at a reliable measure of artificial price inflation in a security, it is generally necessary to generate empirical, statistical evidence of the materiality of the statements and disclosures that relate to plaintiffs' allegations.  To estimate the financial effects of these statements and disclosures, both defendants' and plaintiffs' damages experts often employ a generally accepted methodology commonly referred to as an event study (or market model).  This is an empirical technique, which is supported by published literature, employs procedures based on objective standards and has a known rate of error.  It is a standard research method that provides a statistical measure of whether a particular event (or disclosure) caused a significant change in the total mix of information which determines the price of a security.

7.      Generally, the first step of an event study involves identification of the events of interest and definition of the event window.  In this matter, I first retrieved and reviewed databases of publicly available information regarding Dynagas.  These events included disclosures made

directly by Dynagas as well as other Company-specific events including significant analyst commentary and/or notable media coverage.  I used a one-day window to measure significance.  For example, if the Company issued a press release during or before market hours (an event date), the measure of significance was the difference between the previous trading date's closing price and the event date's closing price.  If a press release or other information became available only after the close of trading, the next trading date is the "Effective Disclosure Date".

8.    The next step involves assessment of the Company's securities to market-wide and industry factors during the Class Period in this matter.  Simply put, this is the creation of a market model which quantifies the mathematical and statistical relationships between changes in the price of Dynagas securities and changes in the general securities markets and/or securities of companies whose primary business is related.  I estimated various market models during the Class Period – using different combinations of market and industry indices.  I compared these models' statistical properties and the extent to which they captured the effect of general market and industry forces on the price of Dynagas securities.  For purposes of establishing artificial inflation estimates for common units  under the Plan of Allocation, I employed a model which included daily returns on the following independent variables:  (1) the Russell 3000 Index, representing approximately 98% of the investable U.S. equity market; and (2) the Yorkville MLP Marine Transportation Price Index, comprised of MLPs engaged in the seaborne transportation of liquified natural gas, crude oil, refined petroleum products, other chemicals, dry bulk shipping and other marine transportation services.

9.    Next, an event study involves prediction of a normal return during the event window in the absence of the event and estimation of the "residual" or "abnormal" return within the event window, where the abnormal return is defined as the difference between the actual and predicted returns.  A market model such as the one that I employed in this matter is a generally

4

accepted, widely used method to obtain estimates of abnormal returns. The approach of this methodology is to use the statistical method of linear regression to extract market-wide and industry effects from overall company-specific effects of events, for example, the disclosure of information. I employed standard statistical tests to test for significant Company-specific price changes (commonly referred to as "residuals") on a daily basis. Finally, statistical testing is performed in order to determine whether the abnormal return is statistically different from zero.

10.    Using regression equations described above, I calculated daily predicted and abnormal (residual) returns for Dynagas securities. For the purpose of estimating damages in this matter, I measured actual and abnormal returns of Dynagas securities associated with alleged effective corrective disclosure dates identified above, namely: November 16, 2018; January 28, 2019; and March 22, 2019. Those actual and abnormal figures serve as the bases for the Plan of Allocation artificial price inflation estimates used to determine Settlement Class member Recognized Losses described below.

## III.    **Description of the Plan of Allocation**

11.    Recognized Losses related to Exchange Act claims on other securities were based on the following traditional artificial price inflation model. Based on event study results and the premise that Plaintiffs would prove the disclosures described above were corrective of prior misstated or omitted information, it is reasonable to estimate that the following artificial inflation per share existed in the price of Dynagas securities during the following transaction subperiods:

5

| Purchase or Sale Transaction Date | Artificial Inflation Per Common Unit | Artificial Inflation Per Series A Preferred Unit | Artificial Inflation Per Series B Preferred Unit | Artificial Inflation Per $1,000 6.25% Note |
|---|---|---|---|---|
| December 21, 2017 - November 15, 2018 | $ 2.32 | $ 4.00 | $ 2.98 | $ 33.26 |
| November 16, 2018 - January 25, 2019 | $ 1.24 | $ 3.61 | $ 2.30 | $ 22.73 |
| January 26, 2019 - March 21, 2019 | $ 0.28 | $ 1.12 | $ 0.39 | $ 4.29 |

12.     Because Plaintiffs allege that artificial stock price inflation was partially removed on November 15, 2018 (post-market); January 25, 2019 (post-market); and March 21, 2019 (post-market) due to corrective disclosures, Recognized Losses for Settlement Class members depend upon specific dates of purchase and/or sale.  As is customary and fair under a Plan of Allocation, Recognized Losses for Settlement Class members that purchased securities during the Class Period and still held those securities at the end of the Class Period are equal to the estimated artificial inflation per share present on the date of purchase, as shown in the table above.

13.     As is also customary and fair under a Plan of Allocation, Recognized Losses for Class members that both purchased and sold securities during the Class Period are equal to the difference between estimated artificial inflation per share present on the date of purchase and estimated artificial inflation per share present on the date of sale.  As a result, Settlement Class members that purchased and sold securities prior to November 16, 2018 or purchased and sold securities between alleged corrective disclosures have no Recognized Losses on those specific transactions.

14.     Settlement Class members that purchased call options on Dynagas common units to initiate or increase a long position in those options during the Class Period will be treated in the same manner as other Dynagas securities.  Similarly, Settlement Class members that sold put options on Dynagas common units to initiate or increase a short position in those options during

the Class Period will be treated in the same manner as other Dynagas securities. The Recognized Losses of Settlement Class Members in either of these scenarios will be calculated based on the price changes of their respective options, if any, measured solely on the effective disclosure dates listed above.

15. The Plan of Allocation calculates the Recognized Loss related to a Securities Act claim (*i.e.* for purchasers of Series B Preferred Units) under statutory Securities Act claim language: the claimant's actual market loss, with the purchase price capped at the $25.00-per-unit offering price. Consistent with the Securities Act, Series B Preferred Units held through the September 26, 2019 filing of the Amended Complaint (the first Complaint to assert a Securities Act claim) were treated as though sold on the date of the Amended Complaint at the then closing price of $19.70 per unit.

16. At Lead Counsel's direction, Recognized Losses related to Exchange Act claims are discounted by 25% in the proposed Plan of Allocation, to account for the relative strength of the Securities Act claims, which have not been dismissed.

17. Settlement Class members that purchased the Series B Preferred Units (and therefore have both Securities Act and Exchange Act claims) are entitled to the greater of their Securities Act Recognized Loss or their Exchange Act Recognized Loss. In my opinion, given the levels of artificial price inflation and the actual market pricing throughout the relevant period, it is likely that the Securities Act Recognized Losses on Preferred B Units will be greater than Exchange Act Recognized Losses for Settlement Class members' investments in Series B Preferred Unit.

## IV.    Relevant Provisions of the PSLRA

18.    Sections 21(D)(e)(1) and 21(D)(e)(2) of the Private Securities Litigation Reform Act of 1995 ("PSLRA") sets forth the following limitations on damages.  These provisions state that:

> in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90 day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated;

> and

> in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the Plaintiffs' damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchase the security.

19.    Often referred to as the PSLRA 90-Day Lookback Period provisions, these are explicitly accounted for in the proposed Plan of Allocation.

20.    A copy of the proposed Plan of Allocation was included in the Notice provided to potential Settlement Class members and is attached hereto as Exhibit B, for reference.

## V.    Settlement Class Member Recovery Statistics

21.    I have also been asked by Lead Counsel to express my opinion as to the estimated recoveries of Settlement Class members in this action on a class-wide basis.  Calculation of these figures requires use of a trading model to estimate, *inter alia*, (1) the number of units purchased;

8

and (2) the distribution of purchases and subsequent resales (or holdings) within the Class Period. In this case, those distributions are of importance because of the three inflationary sub-periods described above.

22.     I estimated Settlement Class member damages on a daily basis through the use of a "multi-trader" model.   The model incorporates empirical and observable data regarding ownership and trading in Dynagas securities during the Class Period and 90 days thereafter, as well as parameters derived from published research.  My model allowed me to reliably estimate damages suffered by Settlement Class members, through the estimation of the number of shares purchased on each trading date as well as the disposition of those shares.

23.     I assumed, based upon empirical evidence, that Settlement Class members were reasonably divided into two trading categories.  The first category encompasses high activity traders, who accounted for 20% of ownership and account for 80% of trading.  The second category encompasses low activity traders, who accounted for 80% of ownership and account for 20% of trading.   Based on these parameters, high activity traders had a relative propensity to trade of 16. That is, high activity traders were 16 times more likely to trade than low activity traders. These parameters are consistent with publicly available research in this area.

24.     In the model, the number of shares held by potential Settlement Class members as of the beginning of the Class Period was set equal to the number of total Dynagas securities outstanding as of the beginning of the Class Period less shares owned by Company insiders at that point in time.   I made adjustments to this initial figure on a daily basis for potential additions/subtractions due to insider trading activity and reported changes in the short interest position.

9

25.    Based on these model inputs and parameters, the estimated average recovery per damaged share under the Plan of Allocation is: $0.165 per Common Unit, $0.241 per Series A Preferred Unit, $0.551 per Series B Preferred Unit and $2.821 per 6.25% Note.[2]

26.    Lead Counsel also asked me to express my opinion as to the maximum total recoverable damages in this action on an aggregate Class-wide basis.  In my opinion, the maximum total recoverable damages under the Securities Act claims (*i.e.,* the claims that have not been dismissed) is $13.4 million, or, if after-market purchases are excluded, $8.9 million.  If all claims were proven (including the claims that have been dismissed), applying defensible assumptions, the maximum total recoverable damages in this action would be $33.85 million.

\*       \*       \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 22nd day of September, 2021, at Newtown, Pennsylvania.

Michael A. Marek

---

[2] Before consideration of application for fees, expenses and compensatory awards to Plaintiffs.

# EXHIBIT A

**MICHAEL A. MAREK, CFA**
100 North State Street
Newtown, PA 18940
Phone:  (215) 968-4142          Fax:  (215) 968-4183
e-mail: mmarek@fmavalue.com

**Professional Experience**

| | | |
|---|---|---|
| 09/13 – Present | **Financial Markets Analysis, LLC** | Newtown, PA |
| 05/01 – 08/13 | **Financial Markets Analysis, LLC** | Princeton, NJ |
| 12/97 - 04/01 | **Triumph Partners, LLC** | Princeton, NJ |

Founding Member
Provide financial analysis, valuation services and expert litigation support and testimony.  Areas of concentration include valuation of securities and businesses, securities law and economic issues.  Testimonial experience in securities class action litigation.  Clients include corporations, government agencies (SEC), law firms, institutional and individual investors.

| | | |
|---|---|---|
| 10/86 - 12/97 | **Princeton Venture Research, Inc.** | Princeton, NJ |

Vice President
Performed securities valuation and financial analysis in connection with investment banking, venture capital and securities law expert consulting operations.  Prepared company and industry research reports, valuations and fairness opinions.  Responsible for project management and supervision of financial analysts and research personnel.

| | | |
|---|---|---|
| 05/85 - 06/86 | **Sage Data, Inc.** | Princeton, NJ |

Research Analyst
Developed and maintained econometric models and business forecasting systems for Fortune 500 clients.  Created, produced and instructed customized PC hardware and software application seminars.

**Education**

| | |
|---|---|
| 1984 | **Wharton School of Finance, University of Pennsylvania** |

B.S. Economics
Double Major: Finance / Decision Sciences

**Professional Designations and Affiliations**

Chartered Financial Analyst (CFA)
Member, New York Society of Security Analysts (NYSSA)
Member, CFA Institute
Member, American Economic Association (AEA)

# Financial Markets Analysis, LLC

100 North State Street
Newtown, Pennsylvania 18940
Telephone: (215) 968-4142    •    Facsimile: (215) 968-4183

# Michael A. Marek, CFA

### List of Trial and Deposition Testimony

**In Re: Ross Cosmetics Securities Litigation**
United States District Court, District of South Carolina, Spartanburg Division;
Master File No. 7-92-1706-3.
Trial Testimony August 14, 1996

**In Re Buffets, Inc. Securities Litigation**
United States District Court, District of Minnesota;
Master File No. 3-94-1447.
Expert Report; Deposition Testimony January 7 and 8, 1999

**In Re Gaylord Container Corporation Securities Litigation**
In the Court of Chancery of the State of Delaware In and For New Castle County;
Consolidated Civil Action No. 14616
Expert Report; Deposition Testimony August 30, 1999

**In Re General Instrument Corp. Securities Litigation - Derivative Actions**
United States District Court, Northern District of Illinois, Eastern Division;
Master File No. 95 C 6007 (GMM)
Expert Report; Deposition Testimony March 8, 2000

**Freedman v. Value Health, Inc., et al.**
United States District Court, District of Connecticut;
Civil Action No. 3:95 CV 2038 (JCH)
Expert Report; Deposition Testimony November 22, 2000

**In Re Ribozyme Pharmaceuticals, Inc. Securities Litigation**
United States District Court, District of Colorado;
Civil Action No. 99-B-2235
Expert Report; Deposition Testimony November 6, 2001

**Marilyn Cain, et. al. v. Healthtrust, Inc., et. al.**
United States District Court, Eastern District of Texas, Marshall Division;
Civil Action No. 2-96-CV-149
Expert Report; Deposition Testimony March 28, 2002; Trial Testimony August 26-27, 2002

**In Re Profit Recovery Group International, Inc. Securities Litigation**
United States District Court, Northern District of Georgia, Atlanta Division;
Master File No. 1:00-CV-1416-CC
Expert Report; Deposition Testimony April 10, 2002

**Steven Gutter, et. al. v. E.I. DuPont De Nemours and Company et. al.**
United States District Court, Southern District of Florida;
Case No. 95-2152-CIV-GOLD
Expert Report; Deposition Testimony September 27, 2002

**Fragrance Express Dot Com, Inc. (fka Growth Industries, Inc.) v. Standard & Poor s Corp.**
United States District Court, Southern District of New York;
Case No. 01-Civ. 0358 (GEL)
Expert Report; Deposition Testimony December 4, 2002

**Stanley Peltz,  et. al. v. Polyphase Corporation, et. al.**
United States District Court, District of Nevada;
Case No. CV-S-97-00791-HDM (RJJ)
Expert Report; Deposition Testimony January 15, 2003 and January 29, 2003

**In Re Envoy Corporation Securities Litigation**
United States District Court, Middle District of Tennessee, Nashville Division;
C.A. No. 3-98-0760; Judge Nixon/Griffin
Declaration, Affidavit, Expert Report; Deposition Testimony January 24, 2003

**In Re Cysive, Inc. Shareholders Litigation**
In the Court of Chancery of the State of Delaware In and For New Castle County;
Consolidated Civil Action No. 20341-NC
Expert Report; Deposition Testimony July 17, 2003; Trial Testimony July 24, 2003

**In Re Safety-Kleen Corp. Stockholders Litigation**
United States District Court, District of South Carolina, Columbia Division;
Civil Action No. 3:00-CV-736-17
Expert Report; Deposition Testimony October 2 and 3, 2003

**In re: EIS International, Inc. Securities Litigation**
United States District Court, District of Connecticut
Master File No. 3-97CV00813 (CFD)
Expert Report, Rebuttal Report, Supplemental Report;
Deposition Testimony September 14, 2005

**Daniel Abitbol vs. TradingScreen, Inc. et al.**
American Arbitration Association
Case No. 50 168 T 00219 05
Expert Report;
Testimony April 20, 2006

**In Re: Seitel, Inc. Securities Litigation**
United States District Court, Southern District of Texas, Houston Division
Consolidated Civil Action No. H-02-1566
Declaration, Reply Declaration
Deposition Testimony March 27, 2007

**In Re IMAX Corporation Securities Litigation**
United States District Court, Southern District of New York
Case No. 06-Civ. 6128 (NRB)
Declaration
Deposition Testimony January 23, 2009

**In Re Juniper Networks, Inc, Securities Litigation**
United States District Court, Northern District of California, San Jose Division
Case No. C06-04327-JW (PVT)
Declaration, Rebuttal Declaration
Deposition Testimony April 23, 2009

**CHRISTEL BILHOFER, on Behalf of Herself and All Others Similarly Situated, Plaintiff, vs. FLAMEL TECHNOLOGIES, SA, et al., Defendants.**
United States District Court, Southern District of New York
Civil Action No. 1:07-cv-09920-RWS
Declaration
Deposition Testimony November 9, 2010

**PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, vs. ARBITRON INC., et al., Defendants.**
United States District Court, Southern District of New York
Civil Action No. 1:08-cv-04063-JGK
Declaration
Deposition Testimony February 15, 2011

**IBEW LOCAL 90 PENSION FUND, on behalf of itself and all others similarly situated vs. DEUTSCHE BANK AG, et al., Defendants**
United States District Court, Southern District of New York
11 Civ. 4209 (KBF)
Declaration, Rebuttal Declaration
Deposition Testimony August 7, 2013
Hearing Testimony October 4, 2013

**LARRY BROWN, individually and on behalf of all others similarly situated, v. CHINA INTEGRATED ENERGY, INC., GAO XINCHENG, ALBERT C. PU, AND LI GAIHONG**
United States District Court, Central District of California
Case No. CV 11-2559 MMM  (PLAx)
Declaration
Deposition Testimony October 8, 2013
Hearing Testimony May 27, 2014

# EXHIBIT B

**Appendix A**
**Plan of Allocation**

1.  For Dynagas Units[8] purchased or otherwise acquired between December 21, 2017 and March 21, 2019:

    A.  For each Dynagas Unit held at the end of trading on June 19, 2019, the Exchange Act Recognized Loss shall be the lesser of:

        (1)   the applicable purchase date artificial inflation per unit figure, as found in Table A; or
        (2)   the difference between the purchase price per unit and the applicable average closing price between March 22, 2019 and June 19, 2019, as found in Table B.[9]

    B.  For each Dynagas Unit sold between March 22, 2019 and June 19, 2019, the Exchange Act Recognized Loss shall be the lesser of:

        (1)   the applicable purchase date artificial inflation per unit figure, as found in Table A; or
        (2)   the difference between the purchase price per unit and the sales price per unit; or
        (3)   the difference between the purchase price per unit and the applicable average closing price between March 22, 2019 and the date of sale, as found in Table B.[10]

---

[8] The following four securities are collectively referred to herein as "Dynagas Units": (1) Dynagas common units representing limited partnership interests (NYSE DLNG) (CINS: Y2188B108) ("common units"); (2) Dynagas Series A Fixed to Floating Rate Cumulative Redeemable Perpetual Preferred Units (NYSE DLNG PR A) (CINS: Y2188B116) ("Series A Preferred Units"); (3) Dynagas Series B Fixed to Floating Rate Cumulative Redeemable Perpetual Preferred Units (NYSE DLNG PR B) (CINS: Y2188B124) ("Series B Preferred Units"); and (4) Dynagas 6.25% Senior Unsecured Notes that matured October 2019 (CUSIP No. 26780TAA5) ("Dynagas 6.25% Notes").

[9] Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated.

[10] Pursuant to Section 21(D)(e)(2) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security."

C.    For each Dynagas Unit sold between December 21, 2017 and March 21, 2019, the Exchange Act Recognized Loss shall be the lesser of:

    (1)    the applicable purchase date artificial inflation per unit figure less the applicable sales date artificial inflation per unit figure, as found in Table A; or

    (2)    the difference between the purchase price per unit and the sales price per unit.

2.    For call options on Dynagas Units ("call options") purchased or otherwise acquired to initiate or increase a long position during the Class Period:

A.    For each call option[11] held at the end of trading on June 19, 2019, the Exchange Act Recognized Loss shall be the lesser of:

    (1)    the applicable purchase date per-option artificial inflation figure;[12] or

    (2)    the difference between the purchase price and the applicable average closing price between March 22, 2019 and June 19, 2019.

B.    For each call option sold[13] between March 22, 2019 and June 19, 2019, the Exchange Act Recognized Loss shall be the lesser of:

    (1)    the applicable purchase date per-option artificial inflation figure; or

    (2)    the difference between the purchase price per option and the sales price per option; or

    (3)    the difference between the purchase price and the applicable average closing price between March 22, 2019 and the date of sale.

C.    For call each option sold between December 21, 2017 and March 21, 2019, the Exchange Act Recognized Loss shall be the lesser of:

    (1)    the applicable purchase date per-option artificial inflation figure less the applicable sales date per-option artificial inflation figure; or

    (2)    the difference between the purchase price and the sales price.

3.    For put options on Dynagas Units ("put options") written or otherwise sold to initiate or increase a short position during the Class Period:

A.    For each put option open at the end of trading on June 19, 2019, the Exchange Act Recognized Loss shall be the lesser of:

---

[11] Per option figures for both call options and put options will be adjusted to reflect the number of Dynagas Units underlying each option.

[12] In accordance with the process used to estimate artificial price inflation for the Dynagas Units, artificial inflation per call option will be calculated by accumulating market price declines, if any, that occurred on each Corrective Disclosure Date.

[13] The sales price for call options that were exercised or expired without exercise is deemed to be zero.

21

(1)      the applicable sale date per-option artificial deflation figure;[14] or

(2)      the difference between the applicable average closing price between March 22, 2019 and June 19, 2019 and the sale price.

B.      For each put option repurchased[15] between March 22, 2019 and June 19, 2019, the Exchange Act Recognized Loss shall be the lesser of:

(1)      the applicable per-option sale date artificial deflation figure; or

(2)      the difference between the repurchase price and the sales price; or

(3)      the difference between the applicable average closing price between March 22, 2019 and the date of repurchase and the sale price.

C.      For each put option repurchased between December 21, 2017 and March 21, 2019, the Exchange Act Recognized Loss shall be the lesser of:

(1)      the applicable sale date per-option artificial deflation figure less the applicable purchase date per-option artificial deflation figure; or

(2)      the difference between the repurchase price and the sale price.

4.      For each Series B Preferred Unit purchased or otherwise acquired between October 16, 2018 and March 21, 2019, the Securities Act Recognized Loss shall be the difference between the purchase price per share (not to exceed $25.00) and:

A.      If sold prior to the end of trading on September 26, 2019, the sales price.

B.      If still held at the end of trading on September 26, 2019, $19.70.[16]

5.      For securities other than Series B Preferred Units,[17] a Claimant's Recognized Loss shall be 75% of the aggregate Exchange Act Recognized Loss as described in Paragraphs 1-3 above. For Series B Preferred Units, a Claimant Recognized Loss shall be the greater of (a) 75% of the aggregate Exchange Act Recognized Loss as described in Paragraphs 1-3 above; or (b) 100% of the aggregate Securities Act Recognized Loss as described in Paragraph 4 above. A Claimant's Total Recognized Loss shall be the total of his, her or its Recognized Loss on each Dynagas security.

---

[14] In accordance with the process used to estimate artificial price inflation for the Dynagas Units, artificial deflation per put option will be calculated by accumulating the put option price increases, if any, that occurred on each Corrective Disclosure Date.

[15] The repurchase price for put options that were assigned or expired without assignment is deemed to be zero.

[16] $19.70 was the closing price of the Series B Preferred Units on September 26, 2019, the date on which the Complaint asserting claims under the Securities Act was filed. As such, this Plan uses September 26, 2019 as the "…time such suit was brought" for purposes of establishing Plaintiffs' statutory measure of damages under the Securities Act.

[17] *i.e.* common units, Series A Preferred Units, 6.25% Notes, call options and put options.

**ADDITIONAL PROVISIONS**

**I.  FIFO Matching:**  All purchases/acquisitions and sales of Dynagas securities in the Class Period shall be matched on a First-In-First-Out ("FIFO") basis.  Sales of Dynagas securities between December 21, 2017 through March 21, 2019 and holdings as of the close of trading on March 21, 2019 will be matched first against any holdings of Dynagas securities at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

**II.      Purchase/Sale Dates:**  A purchase/acquisition or sale of Dynagas securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.

**III.      Gifts:** The receipt or grant by gift, devise or inheritance of Dynagas securities during the Class Period shall not be deemed to be a purchase, acquisition or sale of Dynagas securities for the calculation of an Authorized Claimant's Recognized Losses, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/sale unless (i) the donor or decedent purchased the security during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights to claims relating to the purchase or sale of Dynagas securities; and (iii) no Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to those shares of Dynagas securities.

**IV.      Short Sales:**  The date of covering a "short sale" is deemed to be the date of purchase or acquisition of Dynagas Securities. The date of a "short sale" is deemed to be the date of sale of Dynagas Securities.  Under the Plan of Allocation, however, the Recognized Loss on all "short sales" of Dynagas Units and call options is zero.

**V.      Dynagas Securities Purchased/Sold Through the Exercise of Options:** Option contracts on Dynagas Units are eligible to participate in the Settlement.  With respect to Dynagas Units purchased or sold through the exercise or assignment of an option, the purchase/sale date of the Dynagas Unit is the exercise or assignment date of the option and the purchase/sale price of the Dynagas Unit is the exercise price of the option.

**VI.      Calculation of Market Loss/Gain:** For each Claimant, the Claims Administrator shall determine the difference between (i) the Total Purchase Amount[18] and (ii) the sum of the Total Sales Proceeds[19] and Total Holding Value.[20]  This difference will be deemed a Claimant's

---

[18] The "Total Purchase Amount" is the total amount the Claimant paid (excluding commissions and other charges) for Dynagas securities purchased or acquired during between December 21, 2017 through March 21, 2019.

[19] The Claims Administrator shall match any sales of Dynagas securities between December 21, 2017 through March 21, 2019, first against the Claimant's opening position in Dynagas securities (the proceeds of those sales will not be considered for purposes of calculating market gains or losses).  The total amount received (excluding commissions and other charges) for sales of Dynagas securities between December 21, 2017 through March 21, 2019 shall be the "Total Sales Proceeds."

23

Market Loss with respect to his, her, or its overall purchases/acquisitions of Dynagas Securities and options on Dynagas Securities, during the Class Period.

**VII.    Calculation and Cap of Claimant Total Recognized Loss:** For each Claimant, the Claimants' Total Recognized Loss will be the lesser of (i) the aggregate Recognized Loss associated with all Class Period purchases or acquisitions of Dynagas Securities or (ii) the Claimant's Market Loss.  A Claimant with a negative Market Loss (*i.e.* a gain) with respect to all of his, her or its transactions in Dynagas Securities and options on Dynagas Securities between December 21, 2017 and March 21, 2019 will have a Total Recognized Loss of $0, and will not be eligible for any distribution.

**VIII. Determination of Distribution Amount:**  The total net funds available for distribution in this Action as a result of the Settlement Amount and all interest earned thereon, less taxes, notice and administration costs, attorneys' fees and litigation expenses awarded (the Net Settlement Fund) will be allocated *pro rata* based on each Authorized Claimant's proportional share of the Net Settlement Fund as determined by his, her or its Total Recognized Loss as compared to the aggregate Total Recognized Losses of all Authorized Claimants. This proportional share is the Authorized Claimant's "Distribution Amount." The Distribution Amount for Authorized Claimants with a Total Recognized Loss of $0.00 will be $0.00.  Such Claimants will in any event be bound by the Settlement.

**IX.    *De Minimis* Limitation**: If an Authorized Claimant's Distribution Amount calculates to less than $10.00, no distribution will be made to that Authorized Claimant.  Those funds will be included in the distribution to other Authorized Claimants.

**X.    Redistribution of Unclaimed Funds:** If any funds remain after the final distribution of recoveries in the Action *(i.e.*, if the Net Settlement Fund less distributions is positive) because of uncashed distributions or other reasons, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, any balance remaining nine months after the final distribution of such funds shall be redistributed to Authorized Claimants who have cashed their initial distribution and who would receive at least $10.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the funds, including for such redistribution. Additional redistributions to Authorized Claimants who have cashed their prior distribution checks and who would receive at least $10.00 on such additional redistributions, subject to the conditions previously noted, may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determine that additional redistribution, after the deduction of any additional fees and expenses that would be incurred with respect to such redistributions, is cost-effective. At such time as it is determined that the redistribution of funds remaining is not cost-effective, the remaining balance (the Net

---

[20] When calculating Total Holding Value, the Claims Administrator shall ascribe a holding value based on each security's March 22, 2019 closing price: $2.38 per share of Dynagas Common Unit held as of the close of trading on March 21, 2019, $19.43 per Series A Preferred Unit held as of the close of trading on March 21, 2019, $19.26 per Series B Preferred Unit held as of the close of trading on March (21, 2019, and $960.00 per 6.25% Note held as of the close of trading on March 21, 2019.  For call options still held or put options still short as of the close of trading on March 21, 2019, the Claims Administrator shall apply the same methodology based on the closing price of each option on March 22, 2019 or the next nearest trading date.

Case 1:19-cv-04512-AJN    Document 153-6    Filed 10/01/21    Page 23 of 26

Settlement Fund less distributions) shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Counsel and approved by the Court.

**XI.    Release:** Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all Authorized Claimants.  No Person shall have any claim against Plaintiffs, Lead Counsel, the Claims Administrator or any other agent designated by Lead Counsel, or the Released Defense Parties and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court. Plaintiffs and Defendants, and their respective counsel, and Plaintiffs' damages expert and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation approved by the Court, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

**XII.    Approval and Modification:** The Plan of Allocation set forth herein is the plan that is being proposed by Plaintiffs and Lead Counsel to the Court for approval.  The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class.  Any Orders regarding a modification of the Plan of Allocation will be posted on the settlement website, DynagasSecuritiesLitigation.com.

**TABLE A**

**Estimated Artificial Inflation from December 21, 2017 through and including
March 21, 2019**

| Transaction Date | Artificial Inflation Per Common Unit | Artificial Inflation Per Series A Preferred Unit | Artificial Inflation Per Series B Preferred Unit | Artificial Inflation Per $1,000 6.25% Note |
|---|---|---|---|---|
| December 21, 2017    -    November 15, 2018 | $ 2.32 | $ 4.00 | $ 2.98 | $ 33.26 |
| November 16,2018    -    January 25, 2019 | $ 1.24 | $ 3.61 | $ 2.30 | $ 22.73 |
| January 26, 2019    -    March 21, 2019 | $ 0.28 | $ 1.12 | $ 0.39 | $  4.29 |

**TABLE B**

**Average Closing Price between 03/22/2019 and Date of Sale per Dynagas Unit**

| Date of Sale | Common Unit | Series A Preferred Unit | Series B Preferred Unit | 6.25% Note |
|---|---|---|---|---|
| 03/22/2019 | $2.38 | $19.43 | $19.26 | $960.00 |
| 03/25/2019 | $2.35 | $19.52 | $19.09 | $956.25 |
| 03/26/2019 | $2.34 | $19.53 | $19.04 | $955.67 |
| 03/27/2019 | $2.33 | $19.50 | $19.01 | $952.58 |
| 03/28/2019 | $2.30 | $19.49 | $19.01 | $951.66 |
| 03/29/2019 | $2.29 | $19.50 | $18.97 | $953.03 |
| 04/01/2019 | $2.28 | $19.50 | $18.95 | $953.14 |
| 04/02/2019 | $2.28 | $19.51 | $18.93 | $954.01 |
| 04/03/2019 | $2.29 | $19.57 | $18.94 | $954.12 |
| 04/04/2019 | $2.30 | $19.61 | $18.97 | $956.56 |
| 04/05/2019 | $2.31 | $19.67 | $19.00 | $958.33 |
| 04/08/2019 | $2.31 | $19.72 | $19.03 | $958.99 |
| 04/09/2019 | $2.32 | $19.76 | $19.05 | $961.19 |
| 04/10/2019 | $2.33 | $19.80 | $19.07 | $963.07 |
| 04/11/2019 | $2.33 | $19.83 | $19.10 | $963.65 |
| 04/12/2019 | $2.34 | $19.83 | $19.11 | $964.42 |
| 04/15/2019 | $2.34 | $19.86 | $19.14 | $964.16 |
| 04/16/2019 | $2.33 | $19.88 | $19.17 | $964.75 |
| 04/17/2019 | $2.33 | $19.89 | $19.18 | $965.27 |
| 04/18/2019 | $2.32 | $19.89 | $19.19 | $965.66 |
| 04/22/2019 | $2.32 | $19.91 | $19.21 | $965.27 |
| 04/23/2019 | $2.32 | $19.92 | $19.22 | $965.84 |
| 04/24/2019 | $2.32 | $19.94 | $19.23 | $966.56 |
| 04/25/2019 | $2.31 | $19.95 | $19.23 | $966.81 |
| 04/26/2019 | $2.31 | $19.98 | $19.24 | $967.13 |
| 04/29/2019 | $2.31 | $20.01 | $19.25 | $965.24 |
| 04/30/2019 | $2.31 | $20.05 | $19.28 | $965.63 |
| 05/01/2019 | $2.32 | $20.08 | $19.31 | $965.76 |
| 05/02/2019 | $2.31 | $20.11 | $19.32 | $965.35 |
| 05/03/2019 | $2.32 | $20.11 | $19.33 | $965.67 |
| 05/06/2019 | $2.32 | $20.11 | $19.35 | $965.81 |
| 05/07/2019 | $2.31 | $20.10 | $19.36 | $965.94 |
| 05/08/2019 | $2.31 | $20.09 | $19.37 | $965.48 |
| 05/09/2019 | $2.31 | $20.08 | $19.38 | $964.99 |
| 05/10/2019 | $2.31 | $20.07 | $19.39 | $964.44 |
| 05/13/2019 | $2.31 | $20.05 | $19.39 | $964.51 |
| 05/14/2019 | $2.31 | $20.04 | $19.38 | $964.53 |
| 05/15/2019 | $2.30 | $20.03 | $19.37 | $964.12 |
| 05/16/2019 | $2.30 | $20.02 | $19.37 | $964.21 |
| 05/17/2019 | $2.30 | $20.01 | $19.36 | $964.29 |
| 05/20/2019 | $2.29 | $19.94 | $19.30 | $963.87 |
| 05/21/2019 | $2.28 | $19.89 | $19.25 | $963.77 |
| 05/22/2019 | $2.28 | $19.83 | $19.20 | $963.31 |
| 05/23/2019 | $2.27 | $19.75 | $19.13 | $963.01 |
| 05/24/2019 | $2.25 | $19.68 | $19.06 | $962.87 |
| 05/28/2019 | $2.24 | $19.62 | $19.01 | $962.32 |
| 05/29/2019 | $2.23 | $19.58 | $18.97 | $961.74 |
| 05/30/2019 | $2.22 | $19.56 | $18.95 | $961.26 |
| 05/31/2019 | $2.21 | $19.53 | $18.93 | $960.62 |
| 06/03/2019 | $2.20 | $19.51 | $18.92 | $960.26 |

27

| | | | |
|---|---|---|---|
| 06/04/2019 | $2.20 | $19.49 | $18.91 | $959.77 |
| 06/05/2019 | $2.19 | $19.45 | $18.87 | $959.48 |
| 06/06/2019 | $2.18 | $19.40 | $18.82 | $959.49 |
| 06/07/2019 | $2.17 | $19.34 | $18.77 | $959.22 |
| 06/10/2019 | $2.16 | $19.29 | $18.72 | $959.05 |
| 06/11/2019 | $2.15 | $19.25 | $18.68 | $958.98 |
| 06/12/2019 | $2.15 | $19.22 | $18.65 | $958.82 |
| 06/13/2019 | $2.14 | $19.18 | $18.61 | $958.80 |
| 06/14/2019 | $2.13 | $19.14 | $18.57 | $958.99 |
| 06/17/2019 | $2.12 | $19.11 | $18.53 | $959.15 |
| 06/18/2019 | $2.11 | $19.07 | $18.50 | $959.37 |
| 06/19/2019 | $2.10 | $19.04 | $18.46 | $959.60 |

28