**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE DYNAGAS LNG PARTNERS LP SECURITIES LITIGATION | No. 19-cv-04512 (AJN) |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFFS'**
**MOTION FOR APPROVAL OF DISTRIBUTION OF NET SETTLEMENT FUND**

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.   FACTUAL BACKGROUND ........................................................................... 2

    A.   The Settlement ....................................................................................... 2

    B.   The Claims Administration ..................................................................... 3

        1.   The Claims Administrator Provided Notice and Claims Materials to the Class ................................................................................ 3

        2.   Claims Processing and the Deficiency Review ......................... 4

    C.   The Net Settlement Fund ......................................................................... 5

III.   THE CLAIMS ADMINISTRATOR'S ADMINISTRATIVE DETERMINATIONS SHOULD BE ACCEPTED ........................................................................... 6

    A.   The Claims Administrator's Determination of the Eligible Claims Should Be Accepted ......................................................................................... 6

    B.   The Valid Claims Submitted After the November 5, 2021 Claims Submission Deadline Do Not Materially Impact the Distribution to Authorized Claimants and Should Be Accepted ...................................... 7

    C.   The Ineligible Claims Should Be Rejected .............................................. 7

IV.   THE COURT SHOULD AUTHORIZE THE REQUESTED DISTRIBUTUION OF THE NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS ..................... 8

    A.   Disposition of Any Unclaimed/Uncashed Balance ................................. 9

    B.   Release of Claims .................................................................................. 10

V.   THE CLAIMS ADMINISTRATOR SHOULD BE PERMITTED TO DISCARD CERTAIN RECORDS FOLLOWING A REASONABLE TIME AFTER THE INITIAL DISTRIBUTION ......................................................................................... 11

VI.   CONCLUSION .......................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)..................................................................................................... 8

*In re Crazy Eddie Sec. Litig.*,
   906 F. Supp. 840 (E.D.N.Y. 1995) .......................................................................... 7

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................................... 2

Fed. R. Civ. P. 23(b)(3)................................................................................................. 2

Court-appointed Lead Plaintiffs FNY Partners Fund LP ("FNY"), Mario Epelbaum and Scott Dunlop (collectively, "Lead Plaintiffs") respectfully submit this memorandum in support of their Motion for Approval of Distribution of Net Settlement Fund (the "Motion").  For the reasons set forth herein and in the accompanying Declaration of Patty L. Nogalski in Support of the Motion (the "Nogalski Declaration" or "Nogalski Decl."), prepared on behalf of A.B. Data, Ltd. (the "Claims Administrator" or "A.B. Data"), Lead Plaintiffs respectfully request the Court enter the [Proposed] Order submitted concurrently herewith, permitting Lead Counsel and the Claims Administrator to, among other things, distribute the Net Settlement Fund to Authorized Claimants (the "Class Distribution Order").

## I.      PRELIMINARY STATEMENT

Since the time the Court entered its June 10, 2021 Order Preliminarily Approving Settlement and Providing For Notice (the "Preliminary Approval Order") (ECF No. 142), in which the Court preliminarily approved the Settlement,[1] which, among other things, included the settlement allocation plan (the "Plan of Allocation") and directed notice of the proposed Settlement to the members of the Class, Lead Counsel and the Claims Administrator have worked diligently to provide notice to the Class and to administer the Settlement consistent with the Stipulation, the Plan of Allocation and the Court's November 5, 2021 Judgment Approving Class Action Settlement and Order of Dismissal With Prejudice (ECF No. 160, the "Final Approval Order").  As a result of these efforts, Lead Counsel and the Claims Administrator are prepared to distribute the Net Settlement Fund to Authorized Claimants (the "Distribution"). Lead Plaintiffs, therefore, respectfully request that the Court enter the proposed Class Distribution Order submitted herewith.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meaning set forth in the Stipulation and Agreement of Settlement.  (ECF No. 135).

## II.      FACTUAL BACKGROUND

### A.      The Settlement

Under the terms of the Settlement, as set forth in the Stipulation, four million, five hundred thousand dollars ($4,500,000.00) in cash (the "Settlement Amount") was paid into an interest-bearing escrow account for the benefit of the Class, in exchange for the dismissal of all claims brought against Defendants in this Action and a full release of claims.  The Settlement Fund (defined as the Settlement Amount, plus all interest earned thereon) has been used for the payment of Settlement notice and administration costs, Taxes and Tax Expenses, and such attorneys' fees, reimbursement of Litigation Expenses and Award for Lead Plaintiffs as the Court approved.  The cash remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members that are not otherwise excluded from the Class and that have submitted valid Proof of Claim and Release Forms (the "Proofs of Claim" or "Claims") to the Claims Administrator (consisting of both timely and late-filed Claims) – *i.e.*, Authorized Claimants.  Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the Plan of Allocation and the relationship that each Authorized Claimant's Claim bears to the total of all Authorized Claimants' Claims, as explained in the Notice.

To effectuate the Settlement set forth in the Stipulation, the Court entered the Preliminary Approval Order:  (i) preliminarily certifying the Class under Fed. R. Civ. P. 23(a) and (b)(3) for the purposes of the Settlement; (ii) preliminarily approving the Settlement as fair, reasonable and adequate pursuant to the terms and conditions of the Stipulation; (iii) approving the form, content and manner of giving notice of the proposed Settlement to Settlement Class Members; (iv) scheduling a hearing to consider final approval of the Settlement and Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses, and to consider whether the proposed Plan of Allocation was fair, reasonable and adequate (the "Fairness Hearing"); and

2

(v) authorizing the retention of the Claims Administrator.  ECF No. 142.  The Fairness Hearing was held on November 5, 2021.  On the same day, the Court entered Orders:  (i) approving the Plan of Allocation (ECF No. 159); (ii) approving the Settlement (ECF No. 160); and (iii) granting Lead Counsels' Motion for Attorney Fees, Reimbursement of Litigation Expenses and Compensatory Award for Lead Plaintiffs (ECF No. 161).

### B.    The Claims Administration

#### 1.    The Claims Administrator Provided Notice and Claims Materials to the Class

On July 8, 2021, the Claims Administrator began mailing packages including copies of the Court-approved Notice (containing the Plan of Allocation) and the Proof of Claim form (collectively, the "Claim Packet") to potential Class Members.  *See* ECF No. 153-5 at ¶ 5.  Moreover, pursuant to the Preliminary Approval Order, A.B. Data published the Publication Notice in *The Wall Street Journal* on July 15, 2021 and caused it to be released over *PR Newswire* on July 16, 2021.  *See id.* at ¶ 12.  In total, the Claims Administrator mailed 22,051 Claim Packets to potential Settlement Class Members, brokers and other nominees.  Nogalski Decl. at ¶ 5.

To help potential Class Members complete and submit Proof of Claim forms to participate in the Settlement, the Claims Administrator established a website and a toll-free interactive voice response system in which potential Class Members could request a Claim Packet, obtain general information about the Settlement or obtain general assistance in completing their Proof of Claim forms.  Potential Class Members were also able to leave a message requesting to speak with a representative of the Claims Administrator, and the Claims Administrator returned such calls promptly.  ECF No. 153-5 at ¶¶ 13-14.

### 2.    Claims Processing and the Deficiency Review

Pursuant to the Stipulation and the Preliminary Approval Order, all Class Members wishing to participate in the Settlement were required to submit completed Proof of Claim forms as well as the documentation required to substantiate the transactions set forth in their Claims. The Claims Administrator's work in receiving, reviewing, coding and categorizing Claims is described in detail in paragraphs 6 through 29 of the Nogalski Declaration.  To date, the Claims Administrator has received and processed 1,966 Claims.  *See* Nogalski Decl. at ¶ 33.

As the Claims Administrator received Claims, it performed a detailed review of each Claim, including the supporting documentation submitted therewith, for completeness.  *See id.* at ¶¶ 6-29.  In general, the Claims Administrator's review identified:  (i) fully supported and valid Claims; and (ii) Claims that were partially or wholly deficient ("Deficient Claims").  *See id.*  In reviewing Claims, the Claims Administrator implemented and executed several measures designed to assure the quality of the process and to detect any fraudulent Claims.  These administrative protections are discussed in detail in paragraphs 30 and 31 of the Nogalski Declaration.

As with the administration of most class action settlements, a significant portion of the time spent administering this Settlement was devoted to working with Claimants with wholly or partially defective Claims and providing them with sufficient notice and an opportunity to remedy such deficiencies (the "Deficiency Process").  *See id.* at ¶¶ 19-26.  Claim deficiencies typically result from missing documentation, incomplete transaction data, conflicting transaction data or the Claimant's failure to sign the Claim form.  The Claims Administrator sent a letter or email to each Claimant with a Deficient Claim depending on whether the Claims Administrator

determined the Claim to be either wholly or partially deficient (collectively, the "Deficiency Notices"). *See id*.

The Deficiency Notices provided Claimants with information concerning deficiencies detected within their Claims and an opportunity to cure the noted deficiencies. The Deficiency Notices also advised Claimants they could request judicial review of their Claims if they disagreed with the Claims Administrator's administrative determinations. *See id*. In connection with the Deficiency Process, no Claimants requested review by the Court of any determination by the Claims Administrator. *Id.* at ¶ 27.

### C.   The Net Settlement Fund

On August 2, 2021, the total $4,500,000.00 Settlement Amount was deposited into the Escrow Account in accordance with the Stipulation. To date, the Settlement Fund has earned approximately $5,324.16 in interest and dividends for the benefit of the Class.

On November 5, 2021, the Court issued its Order awarding Lead Counsel attorneys' fees of $1,125,000 or 25% of the Settlement Amount, plus the reimbursement of Litigation Expenses in the amount of $91,820.88 and a $2,500 compensatory award to each named plaintiff. ECF No. 161. On November 10, 2021, Lead Counsel withdrew the above-referenced amounts from the Settlement Fund.

The Claims Administrator's total cost of administration of the Settlement through distribution is $ 151,133.18. *See* Nogalski Decl. at ¶ 37. This amount comprises the $142,988.60 the Claims Administrator has been paid to date, and A.B. Data's fees and costs for the initial distribution, totaling $8,144.58. *Id*.

Lead Plaintiffs respectfully request that the Court authorize payment to A.B. Data for the balance of its above-referenced fees and expenses in connection with administering this

Settlement. Once payment of the balance of A.B. Data's fees and expenses is made, the Net Settlement Fund available for distribution to Authorized Claimants will be approximately $ 3,132,074.24.[2]

## III.   THE CLAIMS ADMINISTRATOR'S ADMINISTRATIVE DETERMINATIONS SHOULD BE ACCEPTED

As detailed in the accompanying Nogalski Declaration, the Claims Administrator has received 1,966 Proofs of Claim. Nogalski Decl. ¶ 6.

### A.   The Claims Administrator's Determination of the Eligible Claims Should Be Accepted

Following the extensive verification process described above and in the Nogalski Declaration (which, as noted, included substantial efforts to assist potential claimants in curing any potential deficiencies in their submissions), the Claims Administrator has determined that 1,191 filed Claims are eligible to participate in the Distribution. *Id*. at ¶ 34. A schedule of the timely accepted filed claims is attached as Exhibit D to the Nogalski Declaration. Exhibit E to the Nogalski Declaration lists all late-filed Claims that were otherwise eligible to share in the distribution.

Lead Plaintiffs and Lead Counsel respectfully request that the Court adopt the Claims Administrator's administrative determinations concerning accepted and rejected Claims, including the Claims Administrator's determination to include all late-filed, but otherwise eligible, Claims in the Distribution.

---

[2] This figure is "approximate" because the Settlement Fund may earn additional interest and/or incur additional tax liability between the date of this filing and the date of distribution.

**B.    The Valid Claims Submitted After the November 5, 2021 Claims Submission Deadline Do Not Materially Impact the Distribution to Authorized Claimants and Should Be Accepted**

A total of 25 late-filed, but otherwise eligible, Claims were postmarked after the November 5, 2021 deadline for submitting Claims.  Nogalski Decl. ¶28.  No Claim was rejected because it was received after the Claims Submission Deadline (provided it was received by October 21, 2022) and no delay has resulted from the provisional acceptance of these late-filed, but otherwise eligible, Claims.  *Id*.  Accordingly, it is respectfully requested that the Court approve the administrative determination to accept late-filed, but otherwise eligible, Claims.  *Id.*  These claims are included in the list of Authorized Claimants.

Neither Lead Plaintiffs nor Lead Counsel wish to encourage the late submission of claims in class action settlements.  The Claims Administrator has assured Lead Counsel that the administration of the Settlement was not delayed as a result of the late-filed Claims.  For this reason, Lead Plaintiffs and Lead Counsel recommend that no Claim be rejected solely because it was transmitted to the Claims Administrator after the Claims Submission Deadline.

Ultimately, allowing Class Members who filed the late Claims to participate in the Settlement is an equitable determination that is within the Court's discretion.  *See, e.g.*, *In Re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 843 (E.D.N.Y. 1995); *see also* Stipulation at ¶ 18 (the Court has jurisdiction over Claims submitted in the Settlement).  Because the equities favor including the late-filed, but otherwise eligible, Claims in the Settlement, Lead Plaintiff and Lead Counsel respectfully request that the Court treat the late-filed, but otherwise eligible, Claims as Authorized Claims.

**C.    The Ineligible Claims Should Be Rejected**

The Claims Administrator has determined that 750 claims should be administratively rejected for the following reasons:

- 314 Proofs of Claim had no purchase(s) of Dynagas Securities during the Settlement Class Period;

- 409 Proofs of Claim did not result in a Recognized Claim under the Plan of Allocation;

- 15 Proofs of Claim were duplicates; and

- 12 Claims had uncured conditions of ineligibility.

*See* Nogalski Decl. ¶ 35.  Exhibit F to the Nogalski Declaration lists the rejected claims and shows the reasons for rejection.  Notably, the mailing of Claim Packets was overly inclusive by design; the process involved mailings to shareholders who could be identified as having held Dynagas Securities at any time over the Settlement Class Period of approximately 15 months. Yet, only those persons and entities that purchased Dynagas securities during the Settlement Class Period and held those shares during at least one of the alleged corrective disclosures (which were clustered within less than four months), were entitled to participate in the recovery, consistent with the approved Plan of Allocation and the Supreme Court's opinion in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  *See* ECF No. 159 at Appendix A, Table A.  Moreover, Claimants that were unsure whether their claim would result in a Recognized Claim were encouraged to submit a Proof of Claim.  Therefore, it is unsurprising that numerous Proofs of Claim were submitted which did not result in a Recognized Claim.  Lead Plaintiffs respectfully request that the Court accept the Claims Administrator's determination to reject the ineligible Claims.

## IV.   THE COURT SHOULD AUTHORIZE THE REQUESTED DISTRIBUTUION OF THE NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS

As set forth herein and in the Nogalski Declaration, Lead Counsel and the Claims Administrator have performed the work necessary to effectuate distribution of the Net Settlement Fund in a manner consistent with the Court's prior Orders and the Plan of Allocation.

Once the Court authorizes the Distribution, the Claims Administrator will determine each Authorized Claimant's payment from the Net Settlement Fund (the "Settlement Payment") by calculating each Authorized Claimant's *pro rata* share of the Net Settlement Fund under the Plan of Allocation. Nogalski Decl. at ¶ 38(a). To do so, the Claims Administrator will calculate what percentage each Authorized Claimant's Recognized Claim constitutes of the total Recognized Claims and multiply that percentage by the total dollar value of the Net Settlement Fund at the time of distribution. *Id.* The Claims Administrator will then eliminate from the distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, recalculate the *pro rata* shares of the Net Settlement Fund for Authorized Claimants entitled to receive $10.00 or more, and mail a Settlement Payment to each Authorized Claimant. *Id.* In the Distribution, after deducting payments previously allowed and after payment of any taxes and administrative costs, the Claims Administrator will distribute 100% of the available balance of the Net Settlement Fund to the Authorized Claimants. *Id.*

### A.      Disposition of Any Unclaimed/Uncashed Balance

In order to encourage Authorized Claimants to cash their Distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, Lead Counsel and the Claims Administrator propose that all Distribution checks bear the notation "DEPOSIT PROMPTLY; VOID AND SUBJECT TO REDISTRIBUTION IF NOT NEGOTIATED BY [DATE 90 DAYS AFTER ISSUE DATE]." Nordskog Decl. at ¶ 36(b). In an effort to have as many Authorized Claimants as possible cash their checks, the Claims Administrator will follow up with Authorized Claimants who initially fail to cash their Distribution checks. *Id.* at n.3; ¶ 37.

If any funds remain in the Net Settlement Fund after the Distribution because of uncashed checks or other reasons, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their Distribution checks, any balance remaining in

the Net Settlement Fund no less than nine (9) months after the Distribution will be redistributed to Authorized Claimants who have cashed their Distribution checks and who would receive at least $10.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution and if it is economically feasible to do so.  Nogalski Decl. at ¶ 38(a)(iii).  Such redistributions shall recur at nine-month intervals until such time as Lead Counsel and the Claims Administrator determine that further redistribution is not cost-effective.  *Id.* at ¶ 38(c).  At that time, Lead Counsel and the Claims Administrator will determine if sufficient funds remain to warrant the processing of claims received or modified after September 19, 2022 that would have been eligible for payment or additional payment under the Plan of Allocation and, if so, may pay the distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants.  *Id.* at 38(e). If any funds remain in the Net Settlement Fund after such payments, then, after all costs of administration are paid, the balance shall be contributed to the American Red Cross.  *See id.* at ¶ 38(d).

       **B.**      **Release of Claims**

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation or any other aspect of processing of the Claims submitted herein, or otherwise involved in the administration, taxation or distribution

of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement, and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration, taxation or distribution of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized Claimants pursuant to the Distribution Plan.

## V. THE CLAIMS ADMINISTRATOR SHOULD BE PERMITTED TO DISCARD CERTAIN RECORDS FOLLOWING A REASONABLE TIME AFTER THE INITIAL DISTRIBUTION

Lead Plaintiffs and Lead Counsel respectfully request that the Class Distribution Order provide that: (i) the Claims Administrator may discard paper copies of Proof of Claim forms one year after the Second Distribution, or if there is no Second Distribution, two years after the initial Distribution; and (ii) the Claims Administrator may discard copies of such materials maintained in electronic form one year after all funds are distributed from the Net Settlement Fund.

## VI. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the [Proposed] Order Granting Lead Plaintiffs' Motion for Approval of Distribution of Net Settlement Fund.

DATED: October 28, 2022                    Respectfully Submitted,

                                           */s/ Andrew J. Entwistle*
                                           Andrew J. Entwistle
                                           **ENTWISTLE & CAPPUCCI LLP**
                                           500 W 2nd Street
                                           Suite 1900
                                           Austin, TX 78701

Telephone:  (512) 710-5960
Facsimile: (212) 894-7272
aentwistle@entwistle-law.com

-and-

Robert N. Cappucci
Brendan J. Brodeur
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272
rcappucci@entwistle-law.com
bbrodeur@entwistle-law.com

*Counsel for Lead Plaintiffs FNY Partners
Fund LP, Mario Epelbaum and Scott
Dunlop and Lead Counsel for the Class*